LAW OFFICE OF
# MICHAEL K. BACHRACH
224 WEST 30TH STREET, SUITE 302
NEW YORK, N.Y. 10001
--------------
TEL. (212) 929-0592 • FAX. (866) 328-1630

MICHAEL K. BACHRACH *                                                                             http://www.mbachlaw.com
\* admitted in N.Y., MN and D.C.                                                                michael@mbachlaw.com

July 5, 2023

**By ECF**

The Hon. Indira Talwani
United States District Judge
District of Massachusetts
1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210

                                      *Re: United States v. Jack Douglas Teixeira,*
                                      *23-cr-10159-IT*

Dear Judge Talwani:

        In anticipation of the parties' pretrial conference scheduled for July 10, 2023, at 9:30 a.m., pursuant to Section 2 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. Art. III, Defendant Jack Douglas Teixeira, by and through counsel, submits this letter to assist the Court in navigating the classified information issues that are implicated in this case. This letter is intended as a supplement to the Government's motion, dated, June 23, 2023, which, with defense consent, sought the appointment of a Classified Information Security Officer ("CISO"). This letter is not being submitted in opposition to the Government's motion; it is merely to provide some added background that the defense believes might be useful to this Court's preparation for the July 10, 2023, pretrial conference, and any future proceedings, specifically with respect to the Government's discovery obligations in cases involving classified information.

        Judge Learned Hand noted long ago, "Few weapons in the arsenal of freedom are more useful than the power to compel a government to disclose the evidence on which it seeks to forfeit the liberty of its citizens." *United States v. Coplon*, 185 F.2d 629, 638 (2d Cir. 1950). As such, *ex parte* proceedings are exceedingly disfavored. The Sixth Circuit cautioned, "Democracies die behind closed doors," *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002), and the Ninth Circuit observed, "[E]x parte proceedings are anathema in our system of justice," *Guenther v. Commissioner of Internal Revenue*, 889 F.2d 882, 884 (9th Cir. 1989).

        In enacting CIPA, therefore, Congress warned that "the defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without the Act." S.Rep.No. 96-823 at 9 (1980); *see also*, *e.g.*, *United States v. Poindexter*, 698 F.Supp. 316, 320 (D.D.C. 1988). As a result, in cases involving classified information, to balance the need for secrecy with the defendant's right to Due Process, Congress enacted CIPA with the express purpose of protecting sensitive national security information while at the same time not impeding

The Hon. Indira Talwani
July 5, 2023
Page 2 of 6

a defendant's rights.  *See United States v. Stewart*, 590 F.3d 93, 130 (2d Cir. 2009); *see also American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1069 (9th Cir. 1995) (in a civil case involving classified information, "[T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error."); *see also id.* at 1070 (noting "enormous risk of error" in use of classified evidence and explaining "the fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution."), *quoting*, *INS v Chadha*, 462 U.S. 919, 944 (1983).

To that end, courts have held that the Government's privilege under CIPA "must give way" when classified information is "relevant and helpful" to the defense. *United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008). "CIPA's fundamental purpose is to 'protect [] and restrict[] the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'  It is essentially a procedural tool that requires a court to rule on the relevance of classified information before it may be introduced," *United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005), *quoting*, *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002), *and citing*, *United States v. Wilson,* 901 F.2d 378, 379 (4th Cir. 1990).

Here, the Government has rightly taken the first step in applying to this Court for the appointment of a Classified Information Security Officer, and in directing the CISO to begin the process necessary to ensure that all defense counsel and necessary staff possess the security clearance required to review the classified discovery in this case.[1]  The Government has also indicated that it will provide classified discovery to defense counsel and in doing so it therefore does not dispute that defense counsel in this case possess a "need to know" classified information material and relevant to Mr. Teixeira's defense.  *See* Executive Order 13526 § 4.1(a)(3) ("A person may have access to classified information provided that … the person has a need-to-know the information."); *see also id.* § 6.1(dd) ("Need-to-know" is defined as "a determination within the executive branch … that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function.").   While there may be future disputes regarding how much – and what – information is discoverable to the defense, the parties appear in general agreement on the basic principles that control.

With respect to the discovery anticipated to follow, as in any criminal case, Mr. Teixeira is entitled to four basic categories of discoverable material from the Government: (1) Rule 16 material; (2) exculpatory material under *Brady v. Maryland* and its progeny; (3) impeachment material under *Giglio v. United States*; and (4) prior statements of witnesses that are relevant to the subject matter of their testimony, pursuant to the Jencks Act, 18 U.S.C. § 3500.

---

[1]  The Government has confirmed that the undersigned defense counsel, Michael K. Bachrach, possesses the requisite security clearance needed to gain access to the classified information in this case; all other defense attorneys and members of the defense team are still awaiting approval.

The Hon. Indira Talwani
July 5, 2023
Page 3 of 6

As expressly provided by CIPA, the fact that discoverable information may be classified does not relieve the Government of its obligation to disclose the material to the defendant. *See United States v. Poindexter*, 725 F. Supp. 13, 32 (D.DC 1989) ("[T]he protection of the rights of the defendant is paramount under the statutory scheme."). While CIPA is intended as a procedural tool that does not itself modify the defendant's substantive rights or the Government's discovery obligations, *see* U.S. Department of Justice, Justice Manual (hereinafter cited as, "Justice Manual") § 2054 (available at https://www.justice.gov/archives/jm/criminal-resource-manual-2054-synopsis-classified-information-procedures-act-cipa); *see also United States v. El-Hanafi*, No. S5 10 CR 162 KMW, 2012 WL 603649, at *2 (SDNY Feb. 24, 2012) ("CIPA does not expand or restrict established principles of discovery."), a wealth of caselaw and the Justice Department's own policy acknowledge that in a case involving classified information the Government's discovery obligations often implicate classified information in possession of the broader United States Intelligence Community ("IC") and thus directs prosecutors to conduct a prudential search for such information that is relevant and helpful to the defense. *See* Justice Manual § 2052 (available at https://www.justice.gov/archives/jm/criminal-resource-manual-2052-contacts-intelligence-community-regarding-criminal-investigations.).[2]

It is well-settled that the Government has a duty to search the files within the prosecutor's own office for evidence that is material and favorable to the defense. *See Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. In addition, the Government's duty to search for discoverable material extends to other agencies acting on the Government's behalf even if the prosecutor has no personal knowledge of the existence of such material. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Brooks*, 966 F.2d 1500, 1503 (DC Cir. 1992); *see also United States v. Ghailani*, 687 F.Supp.2d 365, 370-372 (SDNY 2010) (imputing the term "the government" under Rule 16(a)(1)(E) to "include[] individuals at DoJ who participated in advising on or making the decisions regarding [the defendant's] prosecution," even if they were not otherwise " 'intimately involved' with federal prosecution of the charged conduct").[3] In such cases, "[k]nowledge of

---

[2] The United States Intelligence Community is comprised of 18 organized agencies that each focus on a different aspect of a common mission. In turn, it is subject to oversight by several governmental groups and also partners with numerous other external groups which include domestic, international, military, law enforcement and private sector partners. *See* Office of the Director of National Intelligence, "How the IC Works" (available at https://www.intelligence.gov/how-the-ic-works).

[3] In *Ghailani* the parties agreed at oral argument that the term "the government" included, *inter alia*, "the prosecutors working on Ghailani's prosecution, the Criminal Division of the USAO and any USAO Civil Division personnel who are or were working with the Criminal Division on this case, the Assistant United States Attorneys on [a prior related trial], FBI or other law enforcement agents now or previously assigned to the prosecution team, and members of 'Main Justice' who have been involved with this prosecution." *Ghailani*, 687 F.Supp.2d at 370. The dispute that remained was regarding whether other members of, *inter alia*, "Main Justice", who were not "*intimately* involved" with Ghailani's prosecution, were nevertheless encompassed

The Hon. Indira Talwani
July 5, 2023
Page 4 of 6

material information may be imputed to the prosecutor when that information is possessed by others on the prosecution team." *United States v. Velissaris*, No. 22CR105 (DLC), 2022 WL 2392360, at *1 (SDNY July 3, 2022) (internal quotations omitted).

Here, Mr. Teixeira's indictment expressly refers to matters of national security that reasonably implicate the equities of multiple IC agencies. The Government's obligation thus extends to a search of IC files for discoverable material where, as here, the IC may be presumed to have been involved in the investigation of a particular matter:

> When an IC component has actively participated in a criminal investigation or prosecution – that is, has served in a capacity that exceeds the role of providing mere tips or leads based on information generated independently of the criminal case – it likely has aligned itself with the prosecution and its files are subject to the same search as would those of an investigative law enforcement agency assigned to the case.

Justice Manual § 2052(B)(1).

Even where the IC had no active involvement in the criminal investigation, the Government's search "must extend to sources that are readily available to the government and that, because of the known facts and nature of the case, should be searched as a function of fairness to the defendant." Justice Manual § 2052(B)(2). Here, one can reasonably assume that members of the IC are in possession of information that falls within the four fundamental categories of discoverable information or, as *Aref* asserts, is relevant and helpful to the preparation of Mr. Teixeira's defense. *See Aref*, 533 F.3d at 80.

Courts have held that the Government must conduct a search of its files if the defendant has made an explicit request for files and there is a non-trivial prospect that the examination of those files might yield material exculpatory information. *See Brooks,* 966 F.2d at 1504. Even absent an explicit request, a prosecutor is nevertheless required to search if there exists any reliable indication suggesting that files contain evidence that meets the *Brady* standard of materiality. *See* Justice Manual § 2052(B)(1); *see also Kyles*, 514 U.S. at 433 ("[R]egardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.") (internal quotations omitted).

Moreover, as previously referenced, courts have adopted a lesser standard than *Brady* in cases involving classified information in the possession of the IC, requiring disclosure of information that is "relevant and helpful" to the defense. *Aref*, 533 F.3d at 80 ("[I]nformation can be helpful without being 'favorable' in the *Brady* sense.") (brackets in original citation omitted);

---

within the prosecution's discovery obligations.  The court held that they were, and additional discovery was thereafter ordered to be disclosed.

*see also, e.g.*, *United States v. Yunis*, 867 F.2d 617, 622 (DC Cir. 1989) (employing "relevant and helpful" standard for determining whether classified information must be withheld or disclosed under CIPA); *United States v. Rosen*, 557 F.3d 192, 195 n.4 (4th Cir. 2009) (same). By this letter, and to avoid any later confusion, the defense specifically requests disclosure of all information "relevant and helpful" to the defense including, but not limited to, all classified Rule 16 material, *Brady*, *Giglio*, and, at the appropriate time, Jenks Act material.

As this Court might likely assume, certain types of cases are especially likely to present issues related to national security and/or classified information, and thus require a prosecutor to search IC files for discoverable information. Cases, as here, involving alleged violations of the Espionage Act, as well as those brought against a defendant previously granted authorization to access classified material, implicate these concerns. *See* Justice Manual § 2052(B)(2); *see also United States v. Chichakli*, No. S3 09CR1002, 2014 WL 5369424, at *2 (SDNY Oct. 16, 2014) (discussing disclosure of potentially discoverable classified materials in an alleged IEEPA conspiracy); *United States v. Libby*, 429 F.Supp.2d 1, 4 (D.DC 2006) (requiring search of classified materials in possession of the White House and CIA in case against the former Assistant to the Vice President for National Security Affairs); *United States v. Sterling*, 724 F.3d 482, 516-17 (4th Cir. 2013) (affirming District Court's decision to disclose to the defense the true names of the Government's CIA operatives prior to their testimony in an Espionage Act case prosecuted under 18 U.S.C. §§ 793(d) & (e)).

In the present case there is a high likelihood – if not certainty – that the IC possesses information that is relevant and helpful to the preparation of the defense. The Indictment charges violations of the Espionage Act based upon alleged actions taken by Mr. Teixeira during his employment with the United States Air Force, 102nd Intelligence Wing of the Massachusetts Air National Guard. Moreover, the Indictment makes specific reference to classified information that was previously in the possession of the IC, to which Mr. Teixeira had access by virtue of his security clearance and position as an Airman First Class serving active duty under Title 10 of the United States Code as a Cyber Defense Operations Journeyman. The nature of these charges strongly suggests that that the IC, including but not limited to the FBI, the CIA, and the Department of Defense, possess additional classified information that is relevant and helpful to the preparation of the defense. Accordingly, the Government has a duty to search for such information and disclose it to the defense pursuant to the procedures established by CIPA, and to satisfy the Court that it has done so in a manner that is sufficient to discharge its constitutional obligations.

None of this is meant to imply that we anticipate the Government failing to obtain all such discoverable material, but we raise the scope of these obligations here at the outset of these proceedings to ensure that the Court is aware of the defendant's general position prior to this Court's review of any *ex parte* CIPA applications presumably forthcoming from the Government.

We look forward to the opportunity to discuss the parties' respective obligations under CIPA further and to ensure that both the Government's interest in protecting classified information and Mr. Teixeira's constitutional rights are protected during the pendency of these proceedings.

The Hon. Indira Talwani
July 5, 2023
Page 6 of 6

                                                Respectfully submitted,

                                                */s/ Michael K. Bachrach*

                                                Michael K. Bachrach
                                                Brendan Kelley
                                                Allen Franco
                                                *Attorneys for Jack Douglas Teixeira*

cc:      All parties of record (by ECF)