**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 23-CR-10159 |
| | ) | |
| JACK DOUGLAS TEIXEIRA | ) | |

<u>**DEFENDANT JACK DOUGLAS TEIXEIRA'S**</u>
<u>**DETENTION APPEAL**</u>

**Exhibit 9**

**Government's Sentencing Memorandum**

**United States v. Robert Birchum**

**23-CR-32-KKM-TGW**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

     v.                             CASE NO. 8:23-cr-32-KKM-TGW

ROBERT BIRCHUM

## <u>UNITED STATES' SENTENCING MEMORANDUM</u>

For most of his 29 years of active duty in the United States Air Force, the Defendant served as an intelligence officer with a Top Secret clearance, entrusted with some of the nation's most sensitive secrets. Toward the end of his career, he was assigned to work with the United States Special Operations Command and the Office of the Director of National Intelligence at MacDill Air Force Base in Tampa, where he was given access to highly classified information from various intelligence agencies about sensitive military operations and intelligence collection.

The United States placed exceptional trust in the Defendant for a very long time. And for over a decade, the Defendant betrayed that trust. He repeatedly and deliberately engaged in conduct that put the nation's secrets—and the safety of his fellow servicemembers and citizens—at risk by removing more than 300 classified documents and files, including Top Secret information, from secure locations and storing them in his residence, in a storage pod parked in his driveway, and in his overseas quarters. The Defendant's motive for engaging in this illegal, unauthorized, and dangerous behavior remains unclear. What is clear is that his conduct was not a

DEFENDANT
EXHIBIT
9

mistake or accident; the Defendant fully understood the potential damage to which he was exposing his country and its military and intelligence apparatus, yet he selfishly chose to continue mishandling classified information year after year, with no discernable regret until his criminal acts were eventually brought to light.

Because the Defendant committed a serious offense that endangered the national security of the United States, a meaningful sentence of imprisonment is warranted based on a consideration of all the sentencing factors. The United States therefore recommends a low-end guideline sentence of 78 months' imprisonment, a term of supervised release of 3 years, and a fine of $25,000.

## **PROCEDURAL BACKGROUND**

On February 21, 2023, the Defendant pleaded guilty, pursuant to a plea agreement, to an information charging him with one count of unlawful retention of national defense information (NDI), in violation of 18 U.S.C. § 793(e). Docs. 1, 6, 13. In the plea agreement, the parties agreed to jointly recommend that the applicable guidelines included USSG §2M3.3(a)(1), because the Defendant willfully retained NDI classified as Top Secret/Sensitive Compartmented Information (TS/SCI), and USSG §3B1.3, because the Defendant abused a position of public trust and used a special skill in a manner that significantly facilitated the commission and concealment of the offense. Doc. 6 at 3.

The Court accepted the Defendant's guilty plea and adjudicated him guilty of the offense on March 8, 2023. Doc. 19.

The Probation Officer prepared a presentence investigation report (PSR) and determined that, based on a total offense level of 28 and a criminal history category of I, the Defendant's advisory guideline imprisonment range is 78 to 97 months. PSR, Doc. 21 at ¶ 90.

## FACTS

The plea agreement sets outs a detailed recitation of the facts in this case, as does the PSR, which the United States hereby incorporates. Doc. 6 at ¶¶ 16-24; PSR, Doc. 21 at ¶¶ 10-31. The Defendant served in the Air Force for a total of 29 years, ultimately retiring at the rank of Lieutenant Colonel in 2018. Doc. 6 at 16. He worked in various jobs in the field of military intelligence, and his duties required him to work with classified information at the Joint Special Operations Command, United States Special Operations Command (USSOCOM), and the Office of the Director of National Intelligence (ODNI). *Id.*

During his career, the Defendant was entrusted with the highest levels of classified information, including Top Secret/Sensitive Compartmented Information (TS/SCI). *Id.* Information is classified as "Top Secret" where unauthorized disclosure of that information could be expected to cause "exceptionally grave damage" to that national security. *Id.* at 17; Executive Order 13526. Because of the especially sensitive positions the Defendant occupied, he was also given access to even more closely held intelligence information safeguarded under "Alternative Compensatory Control Measures," or ACCM. *Id.* at 18. For example, the Defendant was given access to information concerning Department of Defense locations

3

throughout the world, detailed explanations of the Air Force's capabilities and vulnerabilities, and the methods that the Air Force uses to gather, transmit, and exploit intelligence obtained by various Intelligence, Surveillance, and Reconnaissance (ISR) platforms. Doc. 6 at 20.

The intelligence community—and the military—take certain precautions to protect classified NDI from falling into the wrong hands. One precaution is to require those who are granted access to execute a Non-Disclosure Agreement (NDA). Doc. 6 at 19. The defendant signed several such NDAs during his career. For example, he executed a "Sensitive Compartmented Information Nondisclosure Agreement" in August 2008 when he was assigned to USSOCOM at MacDill AFB in Tampa. *Id.* at 19. In the 2008 NDA, attached hereto as part of Exhibit 1, the Defendant acknowledged that "unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation." Doc. 6 at 19; Exhibit 1 at 1, ¶ 3. At that time, the Defendant had already been promoted to the rank of Major, which is considered a "field-grade" officer in the military. The Defendant also signed a form in August 2008 entitled "Individual Reporting Responsibilities," in which he acknowledged that he was required to report any adverse information, including "unwillingness to comply with rules and regulations or to cooperate with security processing," and "apparent mental or emotional disorders." Doc. 21 at ¶ 15; attached hereto as Exhibit 2.

In addition to signing the NDAs and associated forms, in October 2008, the Defendant signed a document entitled "Special Instructions for Couriers of SCI in

the Local Travel Area" attached as Exhibit 3. That form instructed him on the various measures he was expected to take whenever he transported SCI locally; for example, he was required to ensure that the material was wrapped, with a "locked briefcase or pouch" serving as an outer wrapper, and opaque envelopes or paper serving as inner wrappers, with proper security classifications on both sides of the innermost wrapper. *Id.* at ¶ 2(a). He was also specifically instructed to ensure that the material remained in his personal possession and under constant surveillance at all times. *Id.* at ¶ 2(b). He was not authorized "to carry SCI material to [his] home or office for personal convenience." *Id.* at ¶ 4.

On January 24, 2017, agents from the Air Force's Office of Special Investigations (AFOSI) lawfully searched the Defendant's home after they obtained information indicating that classified information was improperly stored there. Doc. 6 at 21. During that search, agents seized a Thumb Drive, a Dell hard drive, and numerous paper documents containing classified NDI. Doc. 6 at 21, 23. The thumb drive contained 135 files with classified NDI, including 31 Top Secret files, some with ACCM information and 102 Secret files, some with ACCM information. *Id.* Among the Top Secret files were two electronic documents containing presentations from the National Security Agency (NSA) summarizing the NSA's capabilities and methods of collection and identifying targets' vulnerabilities. *Id.* at 22.

About a week later, on January 30, 2017, AFOSI agents lawfully seized a personal Iomega hard drive that the Defendant possessed in his overseas temporary quarters; this space was not a secure facility equipped to store classified NDI. Doc. 6

at 23. The hard drive contained 117 additional files with classified NDI; 12 of those

files were marked as Top Secret, some with ACCM, 98 files were marked as Secret,

some with ACCM, and 7 were marked as Confidential. *Id.* at 23-24.

Finally, on February 3, 2017, AFOSI agents searched a storage pod located on

the Defendant's driveway at his home in Tampa. They seized 28 paper documents

that contained information marked as Secret. *Id.* at 24.

## **ARGUMENT**

In sentencing a criminal defendant, the court must consider the advisory

guidelines range and the factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*,

552 U.S. 38, 49-50 (2007); *United States v. Rosales-Bruno*, 789 F.3d 1249, 1253-54

(11th Cir. 2015). The Section 3553(a) analysis begin with the court's consideration of

the nature and circumstances of the offense and the history and characteristics of the

defendant. 18 U.S.C. § 3553(a)(1).  Moreover, the sentence imposed should (1)

adequately reflect the seriousness of the offense, (2) promote respect for the law, (3)

provide just punishment, (4) afford adequate deterrence, (5) protect the public from

future crimes of the defendant, and (6) provide the defendant with any necessary

training or treatment. 18 U.S.C. § 3553(a)(2). The court should also consider the

kinds of sentences available, any pertinent policy statement, and the need to avoid

unwarranted sentence disparities among defendants with similar records who have

been found guilty of similar conduct. *Id.* at (a)(3)-(6).

## a. The Nature and Circumstances of the Offense

The first factor in the Court's Section 3553(a) analysis weighs in favor of a guidelines sentence because the Defendant's criminal conduct was especially serious—it put the national security of the United States at great risk over a period of many years. Indeed, the Supreme Court has noted that "[i]t is 'obvious and unarguable' that *no governmental interest is more compelling* than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981) (citations omitted, emphasis added). The risk inherent in the mishandling of classified NDI is one of the reasons why Congress added the crime of willful retention to the Espionage Act in 1950. The Senate Report preceding that statute's enactment noted that the existing law provided no penalty for unauthorized possession of NDI unless a demand was made for it, stating:

> [t]he dangers surrounding the unauthorized possession of items enumerated in this statute are self-evident, and it is deemed advisable to require their surrender in such a case, regardless of demand, especially since their unauthorized possession *may be unknown to the authorities who would otherwise make the demand.*

S. Rep. No. 80-247, at 7 (1949) (emphasis added); *see also United States v. Ford*, 288 F. App'x 54, 57, 61 (4th Cir. 2008) (rejecting argument that section 793(e) does not criminalize retention, without transmittal, of classified information in case involving former NSA employee who removed classified information from his office without detection by supervisors). Precisely that danger manifested here. USSOCOM, ODNI, JSOC, and the USAF did not know that the Defendant was stashing

classified NDI in his home, storage pod, and overseas quarters until law enforcement discovered it.

What's more, many of the secrets that the Defendant deliberately removed from secure locations were of the greatest sensitivity—classified as Top Secret/Sensitive Compartmented Information (TS/SCI)—as well as items designated as ACCM, especially sensitive information that requires even greater protection than TS/SCI. The sentencing guidelines recognize that the unlawful retention of Top Secret information poses an especially serious threat to the national security, ascribing higher base offense levels to conduct involving Top Secret information. *See* USSG §§2M3.1-2M3.3. The commentary to §2M3.1 defines Top Secret information and emphasizes that "offense level distinctions in this subpart are generally based on the classification level of the information gathered or transmitted. This classification, in turn, reflects the importance of the information to national security." Cmt. n.1, background.

The Defendant is charged in the Information with unlawful retention of two Top Secret electronic documents. Doc. 1; Doc. 6 at 22; Doc. 21 ¶ 23. These documents summarized the NSA's capabilities, detailed methods of collection, and identified targets' vulnerabilities. Doc. 6 at 22. Despite their exceptional sensitivity, the Defendant downloaded and saved them on an unmarked personal thumb drive that agents later found in the Defendant's home and that was accessible to his wife and anyone else who happened to be in his home. *See* Doc. 6 at 22.

In addition to the especially sensitive nature of the information that the Defendant mishandled, the sheer volume of all the classified NDI at issue here is staggering, consisting of over 300 classified items, including both digital files and paper documents. *See* PSR, Doc. 21 at ¶¶ 21, 26, 28, 30. Furthermore, the evidence shows that the Defendant willfully removed and retained these documents over a long period of time. For example, he downloaded classified documents (including 31 Top Secret files) onto the thumb drive between approximately 2002 and 2008.[1] *Id.* at ¶ 22. He also willfully retained classified NDI (including Top Secret information) in his overseas quarters in 2017, where, according to his military orders, he deployed on or about May 31, 2016. The Letter of Reprimand that the Defendant received from an Air Force Brigadier General in January 2018, attached hereto as Exhibit 4, details how the classified NDI seized from the Defendant is dated between 1998 and January 2017.[2]  Although the government cannot identify precisely when the Defendant removed these classified documents from his secure workplaces, it is likely that he did so over the course of more than a decade.  Equally troubling, the Defendant made no effort to safeguard or limit others' access to this classified

---

[1] A digital forensic report prepared by the Department of Defense Cyber Crime Center revealed that 1450 files on the thumb drive had last been accessed between December 17, 2016, and January 26, 2017.  The other 1267 files had last been accessed between January 25, 2003, and February 2, 2010. The thumb drive contained classified files as well as personal files, such as tax and credit card information.  The digital forensic report also noted that the classification markings from certain electronic documents had been removed. *Id.* at 15-16.

[2] The Defendant asked the Probation Officer to note in the final PSR that he had received this letter of reprimand for the same conduct as the instant offense. *See* Doc. 21, Addendum. The Probation Officer inserted that information in paragraph 48. Doc. 21 ¶ 28.

material after having removed it unlawfully—he kept both paper documents and electronic information in unsecured locations and on non-password-protected devices where others could (and did) access it.

The Probation Officer has noted in the PSR that, although USSG §2M3.3 is correctly applied to the Defendant's willful retention of NDI, this Court could consider varying downward from the stated guideline range because §2M3.3 also applies to an arguably (but not certainly) more serious violation of 18 U.S.C. § 793(e) involving the transmission of NDI. *See* Doc. 21 at ¶ 106. The United States responded to that contention in detail in its objections to the PSR. *See* Doc. 21 Addendum. There is, however, no dispute that § 2M3.3 is the appropriate guideline for unlawful retention of NDI, and, as discussed above, the evidence in this case shows that the Defendant's offense conduct in this case is an *egregious* example of willful retention, not one that is borderline or outside the heartland of retention cases. Moreover, this is *not* a case involving the Defendant's mere negligence or innocent human error. The Defendant was a highly trained intelligence officer who, over the course of many years and many assignments, violated his core responsibility to safeguard classified information. He removed highly classified NDI, in paper and electronic format, from secure locations and stored it in wholly unsecure locations, where it potentially could be accessed (either in person or, in the case of the digital media, remotely) by unauthorized persons.

Furthermore, although §2M3.3—which provides for a lower base offense level than §2M3.2 (entitled "Gathering National Defense Information")—does not

10

explicitly mention the act of willful retention in its title or background commentary, it does specifically list 18 U.S.C. § 793(e) as one of the statutes it covers.[3] The Sentencing Commission explained in the commentary to §2M3.3 that the higher guidelines in §2M3.2 should be applied where the defendant communicated *intangible* NDI with reason to believe that it could be used to hurt the United States or help a foreign nation. USSG §2M3.3, cmt. n.2.; *see United States v. Aquino*, 555 F.3d 1224, 130-31 (3rd Cir. 2009) (discussing USSG §§2M3.3 and 2M3.2 and holding that §2M3.3 applied to defendant's willful retention of two classified documents).[4] Thus, for other violations of § 793(e), including the willful retention of electronic or paper documents, the more lenient guidelines in §2M3.3 should apply.[5] In any event, because the Defendant's conduct here fits squarely into the heartland of willful retention cases, a variance below the agreed-upon guideline based on the generic definition of offense conduct in the guideline would yield a sentencing disparity among defendants convicted of retention.

---

[3] Section 793(e) sets forth different means by which an individual can violate that statute, including the willful communication or transmission of NDI to any person not entitled to receive it, which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of a foreign nation, as well as the willful retention of that NDI. 18 U.S.C. § 793(e).

[4] *See also, United States v. Harold Martin*, 1:17-cr-00069-RDB (D. Md.), Doc. 204 (plea agreement specifying that, in case involving willful retention of Top Secret/SCI NDI, the parties agreed that USSG § 2M3.3 applied to offense conduct. The district court ultimately imposed a sentence of 108 months. *Id.*, Doc. 219.

[5] The Sentencing Commission has explained that the "hundreds of overlapping and duplicative statutory provisions that make up the federal criminal law forced the Commission to write guidelines that are descriptive of generic conduct *rather than guidelines that track purely statutory language*." USSG Manual, Chapter One, at 6 (Nov. 1, 2021).

For all these reasons, a variance based on the nature and circumstances of the Defendant's criminal conduct is not appropriate or warranted.

**b.  The History and Characteristics of the Defendant**

Despite the Defendant's lengthy service in the military and his lack of criminal history, his "history and characteristics" do not weigh in favor of leniency, for several reasons. First and foremost, the evidence in this case shows that the Defendant repeatedly, and over the course of many years, violated the special trust that the military had bestowed on him. Although he attended and completed "multiple intelligence operations courses," Doc. 21 at ¶ 78, and earned separate master's degrees in National Security Studies and Intelligence Studies, *id.* at 75-76, he willfully violated this trust and put his fellow service members at risk. Even as he was promoted to the lofty rank of Lieutenant Colonel and afforded the privileges and responsibilities of a "field-grade" intelligence officer, he continued to flout basic rules designed to protect the sensitive information about special operations missions and intelligence collection methods.

The General Officer Letter of Reprimand sums up the Defendant's conduct as follows:

> Your actions are disgraceful and have potentially seriously compromised national security. You have also compromised your integrity and character as an officer. As a field grade officer in the U.S. Air Force you are to demonstrate an internalized understanding of core Air Force values. You have engaged in an inexcusable manner that is not only irresponsible, but blatantly disregards our Service values.

Exhibit 4 at 3.

The Defendant's actions following the agents' discovery of classified information in his home and overseas quarters also counsel against leniency. On January 30, 2017, Air Force OSI agents interviewed the Defendant at Bagram Air Force Base in Afghanistan about mishandling classified information. The Defendant responded indignantly in writing, insisting that he had not "willingly" mishandled classified information. Doc. 21 at ¶ 29; Exhibit 5. He claimed that he had undergone "countless training on handling classified information and always applied safeguards necessary to handle it." *Id.* Continuing, he stated that he had participated in "special operations units" where he had been required to travel with classified information, but he had "applied all security safeguards to it." *Id.* He explained that he had worked on "many classified projects and always kept unclassified information separate from the classified." *Id.* Remarkably, the Defendant made these assertions at the very same time that law enforcement was discovering that he had improperly stored classified information—including 12 Top Secret files—on the removable hard drive in his overseas barracks room. Doc. 21 at ¶ 28.

Later, in December 2017—eleven months after the classified NDI was discovered in the Defendant's home and overseas quarters—AFOSI agents discovered that he had brought a loaded firearm in his personal backpack to his duty station at MacDill Air Force Base. PSR, Doc. 21 at ¶¶ 46-48, 53. At the time, the Defendant was assigned to the Public Affairs Office, where he was tasked with organizing historical hard copy documents and photographs—a job that did not require him to access classified material via computer. *Id.* In addition to the loaded

gun, agents also found 100 official Air Force Polaroid photographs inside the rear compartment of the backpack. *Id.* His supervisor reported that he should not have had that Air Force property in his personal backpack. *Id.*

As a result of this conduct, the Defendant was banned from entering MacDill AFB for three years. *Id.* At ¶ 47. In a second Letter of Reprimand that the Defendant received for carrying a concealed weapon and failing to obey a general order, his Commander wrote that he had unlawfully possessed a privately owned firearm with a full magazine and a live round in the chamber at his workplace. Exhibit 6; *see* PSR, Doc. 21 at ¶ 48. The Commander further wrote that the "[a]ccording to statements you made to your supervisor, you routinely possessed a firearm on the installation despite the fact that you were not authorized to do so." *Id.* The Defendant's conduct "violated the trust" placed in him and he was a "threat to the safety and security of the installation." *Id.* Despite knowing that he was under scrutiny due to the pending classified-information investigation, the Defendant flouted Air Force regulations and, again, potentially endangered his fellow service members by bringing a loaded firearm onto base and into his workspace.

Moreover, the Defendant's admission that he abused a position of public trust and used a special skill in a manner that significantly facilitated the commission and the concealment of the offense, *see* Doc. 21 at ¶¶ 6, 34, 39, underscores that this Court should not grant him leniency based on his history and characteristics, and particularly his military service. Indeed, the Eleventh Circuit has stated that "the reasoning behind §3B1.3 is that defendants who abuse a position of trust deserve

more severe punishment, not less." *United States v. Howard*, 28 F. 4th 180, 212 (11th Cir. 2022) (finding that district court had abused its discretion in granting substantial downward variance based, in part, on defendant's loss of medical license after conviction for healthcare fraud); *see also United States v. Steele,* 178 F.3d 1230, 1239 (11th Cir. 1999) (holding that it was an abuse of discretion for district court to grant downward departure based on the loss of a pharmacist license when that departure would negate an enhancement imposed for defendant's abuse of his position as a pharmacist); *see also United States v. Ford*, 288 F. App'x 54, 61 (4th Cir. 2008) (district court did not err in applying abuse-of-trust enhancement because defendant, an NSA employee, would not have been able to remove classified documents from his office without detection if he had not held top secret security clearance).

The PSR notes that the Defendant's military service might warrant a downward departure pursuant to USSG §5H1.11. This section provides that military service may be relevant in determining whether a departure is warranted "if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." *Id.* Although it is undisputed that the Defendant served in the Air Force for 29 years, was promoted to the rank of Lieutenant Colonel, and received numerous awards for his service, he betrayed the military's trust in him again and again. And he did so by mishandling some of the nation's most sensitive secrets. His extensive service, and the training that the Air Force provided him, are

the only reasons he was given access to the classified information that he flagrantly mishandled.

In *United States v. Theunick*, 651 F.3d 578, 592 (6th Cir. 2011), the defendant, a former Chief of Police and Vietnam veteran who had been convicted of firearms offenses, sought a departure under §5H1.11 in light of his public and military service. The district court characterized the defendant's request as "ironic" given that "the essence of the criminal activity in which the defendant was convicted [was] inextricably tied up with the official law enforcement position." *Id.* The court explained that "the crime wouldn't have been able to have been committed in the way in which it was had it not been for the position of public authority and public trust that the defendant occupied as chief of police." *Id.* The Sixth Circuit, in turn, characterized the defendant's request as "without merit." *Id.*

Like the defendant's request in *Theunick*, a downward departure or variance based on Defendant Birchum's military service is unwarranted and would be inappropriate. His military service did nothing to mitigate the consequences of his actions. If anything, the Defendant's criminal conduct demonstrated his willingness to endanger his fellow servicemembers while deployed overseas in combat zones— an aggravating factor, if anything.  A within-guidelines sentence is wholly appropriate under these facts.

Nor is a variance or departure from the advisory guideline range warranted based on the Defendant's struggle with several mental health conditions. Doc. 21 at ¶¶ 69-72. The Defendant suffered from PTSD, which was related to his service in

16

combat zones, and he ultimately received a service-related disability retirement. *Id.* at ¶¶ 70-72. He had experienced the PTSD and other conditions since approximately 2009. *Id.* These conditions, however, do not appear to be directly relevant to the offense conduct. Indeed, in the Defendant's letter January 30, 2017, handwritten letter, he insisted that understood his obligations to safeguard classified information and that he had always "applied a high standard to security." *See* Exhibit 5.

### c.  General Deterrence

The section 3553(a) factors that the court must consider encompass both specific and general deterrence. *See United States v. Howard*, 28 F.4th 180, 208 (11th Cir. 2022). Because the Defendant will likely never lawfully access classified information again, specific deterrence plays a secondary role in this case. General deterrence, however, is a very serious concern.

Numerous recent cases highlight the importance of deterring the mishandling of classified information. Just last month, the FBI arrested a 21-year-old enlisted Airman in the Massachusetts Air National Guard who was charged with making unauthorized disclosures of classified NDI and unlawfully removing and retaining classified documents. *See United States v. Jack Douglas Texeira*, No. 23-MJ-4293-DHH (D. Mass 2023), Doc. 3-1 (Complaint affidavit); Doc. 19 (Government's detention memo). This case and other incidents involving classified information have received significant media attention, and rightly so. As the Supreme Court has recognized, "no governmental interest is more compelling than the security of the Nation." *Haig*

*v. Agee*, 453 U.S. at 307. It follows that general deterrence plays a critical role in sentencing in national security cases.

General deterrence is also a particularly compelling factor under the facts of this case because the Defendant was a highly trained professional who abused his professional privileges and special access to commit his crime. *See Howard*, 28 F. 4th at 208. In *Howard*, the Eleventh Circuit pointedly rejected the district court's reasoning that effectively disregarded the consideration of general deterrence for a defendant who was a doctor and had perpetrated a massive healthcare fraud kickback scheme. *Id.* The district court had stated at sentencing that, if the prospect of losing one's medical license and becoming a felon was not enough to deter the defendant from committing such crimes, the threat of a prison sentence could not deter him either. *Id.* Although the applicable guideline range for that defendant was 78 to 97 months, the district court sentenced the defendant to no imprisonment at all, only 36 months of probation, with one year to be served in home detention. *Id.* at 187, 201.

The Eleventh Circuit responded that, if the district court's ruling were approved, it would "tell judges not to consider general deterrence when sentencing any criminals who used their professional license or privilege to commit their crime." *Id.* The court emphasized that "the Congress, the United States Sentencing Commission, and this Court" had all decided that general deterrence is a critical factor in sentencing defendants, including those who "wear white collars and practice a profession." *Id.*, citing *United States v. Martin*, 455 F.3d 1227, 1240 (11th

Cir. 2006) ("[T]he Congress that adopted the § 3553 sentencing factors emphasized the critical deterrent value of imprisoning serious white collar criminals, even where those criminals might themselves be unlikely to commit another offense.").

Admittedly, the Defendant here, unlike most white-collar criminals, did not appear to have a financial motive to remove and hoard the classified NDI. Regardless of motive, however, the special privileges and trust that he violated, and the fact that he endangered the national security of the United States, similarly call for special scrutiny regarding this sentencing factor.

Moreover, because the Defendant was a high-level commissioned military officer assigned to work on the most sensitive military operations, the sentence imposed in this case will very likely reverberate through the ranks of the Department of Defense, particularly the Special Operations and Military Intelligence communities at USSOCOM and CENTCOM. As the Eleventh Circuit opined in *Howard*, when a conviction is obtained in certain kinds of cases, "one of the primary objectives of the sentence is to send a message to others who contemplate such schemes that their crime is a serious one that carries with it a correspondingly serious punishment." 28 F.4th at 209 (quotation marks and citation omitted).

### d. The Need to Avoid Unwarranted Sentence Disparities

A guidelines sentence in this case would be consistent with sentences imposed in similar cases. Thankfully, there are a limited number of such cases. But, for example, in *United States v. Harold Martin*, the defendant, a former contractor with the NSA, pleaded guilty to violating § 793(e) for unlawfully retaining Top Secret

information over the course of his long career. No. 1:17-cr-69-RDB, Doc. 204, (D. Md. July 19, 2019). The court sentenced Martin to 108 months' imprisonment—the top of his guidelines range, as stipulated in his plea agreement. *Id.,* Doc. 204 at 5, ¶ 9. In *United States v. Ngia Pho*, the defendant took classified information home from his NSA workplace, claiming that he hoped to make use of the information in the course of his performance evaluation. No. 1: 17-CR-631-GLR, Doc. 9, Doc. 19 at 6, Doc. 30 (D. Md. Sept. 25, 2018).[6] The court sentenced the defendant to 66 months' imprisonment. *Id.*, Doc. 30. Similarly, in *United States v. Kenneth Ford*, the defendant admitted to agents that he had unlawfully retained classified documents on the last day of work at the NSA, claiming that the materials would help him with his new job. No. 8:05-cr-98-PJM (D. Md.), *aff'd* 288 Fed. App'x 54 (4th Cir. 2008).[7] The court sentenced Ford to 72 months' imprisonment. No. 8:05-cr-98, Doc. 57.

Here, in the Middle District of Florida, U.S. District Judge Susan Bucklew recently sentenced Jeremy Brown, a retired Army Special Forces Master Sergeant, to a guidelines sentence of 87 months' imprisonment for offenses including the violation of 18 U.S.C. § 793(e). *United States v. Brown*, 8:21-cr-348-SCB-SPF (M.D. Fl.), Doc. 357. In that case, a jury found Brown guilty of willfully retaining one "Secret" classified document that he had obtained while he was serving in the Army.

---

[6] Scott Shane, *He Took Home Documents to Catch Up on Work at the N.S.A. He Got 5½ Years in Prison.*, N.Y. TIMES (Sept. 25, 2018), https://www.nytimes.com/2018/09/25/us/politics/nghia-pho-nsa-prison-sentence.html.

[7] Federal Bureau of Investigation (Mar. 31, 2006), https://archives.fbi.gov/archives/news/stories/2006/march/ford033106.

*See id.,* Doc. 344 at 10-11. Brown was also convicted of several other offenses relating to his possession of unregistered firearms and two grenades. *See id.*, Doc. 357 at 1. Although the facts of Brown's case differ from the Defendant's, the guidelines for the willful retention of classified information played a significant role in the calculation of the final advisory guideline range of 87 to 108 months' imprisonment. *See id.*, Doc.354, 357.

Finally, the "kinds of sentence and sentencing range established for" this offense, 18 U.S.C. § 3553(a)(4), further support a substantial term of imprisonment in this case. The statutory maximum penalty established by Congress for a violation of 18 U.S.C. § 793(e) is ten years. A sentence of 78 months, at the low end of the advisory guidelines range, is well below that potential maximum sentence.

### e.    The Imposition of a Fine is Required and Warranted

This Court must impose a fine unless the Defendant can demonstrate that he is unable to pay. *See United States v. McGuinness*, 451 F.3d 1302, 1307 (11th Cir. 2006). The relevant statutory maximum fine is $250,000, and the guideline range is $25,000 to $250,000. Doc. 21 at ¶¶  97, 99; 18 U.S.C. § 3571(b); USSG §5E1.2(c)(3). According to undisputed facts in the PSR, the Defendant has the ability to pay a fine. Doc. 21 at ¶ 89.

The Defendant's income and financial resources support imposition of a fine. His net worth is at least $537,393. *See* 18 U.S.C. § 3572(a)(1); USSG §5E1.2(d)(2). This estimate includes a conservative valuation of the Defendant's real property, using the tax appraiser's taxable value of $666,268. Doc. 21 at p. 16-17. According,

to online real estate marketplace Zillow, however, the fair market value of the property may be closer to $835,000.[8] The Defendant's assets also include $30,000 in a personal savings account and $230,000 between two investment accounts—his Thrift Savings Plan account and an Individual Retirement Account. *Id.* In addition to real property, the Defendant has a vehicle, a motorcycle, and a motorhome; his wife has her own camper vehicle as well. *Id.* The Defendant receives over $12,000 per month in retirement income. *Id.* And private counsel represents him in this case.

In determining whether to impose a fine and the amount of the fine, one factor the Court shall consider is the expected cost to the government of any term of probation or term of imprisonment and term of supervised release imposed. USSG §5E1.2(d)(7) and 18 U.S.C. § 3572(a)(6). The Defendant's guideline range of imprisonment is 78 to 97 months. Doc. 21 at ¶ 91. The cost to the government for imprisonment within this range would be between $287,664 and $357,736. *See* Doc. 21 at ¶ 100.

The facts here also demonstrate that imposing a fine within the guideline range would not unduly burden the Defendants' dependents, based on his assets, net worth, and household income streams. *See* 18 U.S.C. § 3572(a)(2); USSG §5E1.2(d)(3). The Defendant is married and has one minor child. Doc. 21 at ¶ 63.

---

[8] The United States accessed the Zillow website on April 28, 2003, and the fair market value reflected was $835,600. The link is not included here to protect the location of the Defendant's residence.

His wife is employed and earns significant income of $12,000 per month. *Id.* at ¶¶ 63, 88. [9]

The court shall also consider the need for the combined sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence. *See* USSG §5E1.2(d)(1). As set forth above, the relevant sentencing factors warrant a within-guidelines fine.

Because the Defendant has the ability to pay, and considering the factors outlined in 18 U.S.C. § 3572, the Court should impose a fine. The United States requests that this Court order the Defendant pay a fine of at least $25,000. In light of his assets, the fine should be payable within 30 days of entry of the judgment.

---

[9] Restitution is not a relevant factor in this case. *See* 18 U.S.C. § 3572(a)(4).

## CONCLUSION

For all the reasons set forth above, the United States respectfully requests that the Court sentence the Defendant to 78 months of imprisonment, to be followed by 3 years of supervised release. The United States also requests that the Court impose a low-end guidelines-range fine of $25,000.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

*/s/ Cherie L. Krigsman*
Cherie L. Krigsman
Assistant United States Attorney
Florida Bar No. 0048764
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Cherie.Krigsman@usdoj.gov

*/s/ Evan N. Turgeon*
Evan N. Turgeon, Trial Attorney
Counterintelligence and Export
Control Section
National Security Division
U.S. Department of Justice

**U.S. v. Birchum**                              **Case No. 8:23-cr-32-KKM-TGW**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 8, 2023, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

<div style="margin-left:40%">

*/s/ Cherie L. Krigsman*
Cherie L. Krigsman
Assistant United States Attorney
Florida Bar No. 0048764
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Cherie.Krigsman@usdoj.gov

</div>

# Exhibit 1

SFN _

## SENSITIVE COMPARTMENTED INFORMATION NONDISCLOSURE AGREEMENT

An Agreement Between    Robert L. Birchum    and the United States
(Name - Printed or Typed)

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to information or material protected within Special Access Programs, hereinafter referred to in the Agreement as Sensitive Compartmented Information (SCI). I have been advised that SCI involves or derives from intelligence sources or methods and is classified or is in process of a classification determination under the standards of Executive Order 12958 or other Executive Order or statue. I understand and accept that by being granted access to SCI, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SCI, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information or material have been approved access to it, and I understand these procedures. I understand that I may be required to sign subsequent agreements upon being granted access to different categories of SCI. I further understand that all my obligations under this agreement continue to exist whether or not I am required to sign such subsequent agreements.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government department or agency (hereinafter Department or Agency) that authorized my access to SCI. I understand that it is my responsibility to consult with appropriate management authorities in the Department or Agency that last authorized my access to SCI, whether or not I am still employed by or associated with that Department or Agency or a contractor thereof, in order to ensure that I know whether information or material within my knowledge or control that I have reason to believe might be SCI, or related to or derived from SCI, is considered by such Department or Agency to be SCI. I further understand that I am obligated by law and regulation not to disclose any classified information or material in an unauthorized fashion.

4. In consideration of being granted access to SCI and of being assigned or retained in a position of special confidence and trust requiring access to SCI, I hereby agree to submit for security review by the Department or Agency that last authorized my access to such information or material, any writing or other preparation in any form, including a work of fiction, that contains or purports to contain any SCI or description of activities that produce or relate to SCI or that I have reason to believe are derived from SCI, that I contemplate disclosing to any person not authorized to have access to SCI or that I have prepared for public disclosure. I understand and agree that my obligation to submit such preparations for review applies during the course of my access to SCI and thereafter, and I agree to make any required submissions prior to discussing the preparation with, or showing it to, anyone who is not authorized to have access to SCI. I further agree that I will not disclose the contents of such preparation with anyone who is not authorized to have access to SCI until I have received written authorization from the Department or Agency that last authorized my access to SCI that such disclosure is permitted.

5. I understand that the purpose of the review described in paragraph 4 is to give the United States a reasonable opportunity to determine whether the preparation submitted pursuant to paragraph 4 sets forth any SCI. I further understand that the Department or Agency to which I have made a submission will act upon it, coordinating within the Intelligence Community when appropriate, and make a response to me within a reasonable time, not to exceed 30 working days from date of receipt.

6. I have been advised that any breach of this Agreement may result in my termination of my access to SCI and removal from a position of special confidence and trust requiring such access, as well as the termination of my employment or other relationships with any Department or Agency that provides me with access to SCI. In addition, I have been advised that any unauthorized disclosure of SCI by me may constitute violations of United States criminal laws, including provisions of Sections 793, 794, 798, and 952, Title 18, United States Code, and of Section 783(b), Title 50, United States Code. Nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

7. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement. I have been advised that the action can be brought against me in any of the several appropriate United States District Courts where the United States Government may elect to file the action. Court costs and reasonable attorneys fees incurred by the United States Government may be assessed against me if I lose such action.

8. I understand that all information to which I may obtain access by signing this Agreement is now and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. Subject to such determination, I do not now, nor will I ever, possess any right, interest, title, or claim whatsoever to such information. I agree that I shall return all materials that may have come into my possession or for which I am responsible because of such access, upon demand by an authorized representative of the United States Government or upon the conclusion of my employment or other relationship with the United States Government entity providing me access to such materials. If I do not return such materials upon request, I understand that this may be a violation of Section 793, Title 18, United States Code.

9. Unless and until I am released in writing by an authorized representative of the Department or Agency that last provided me with access to SCI, I understand that all conditions and obligations imposed on me by this Agreement apply during the time I am granted access to SCI, and at all times thereafter.

10. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect. This Agreement concerns SCI and does not set forth such other conditions and obligations not related to SCI as may now or hereafter pertain to my employment by or assignment or relationship with the Department or Agency.

11. I have read this Agreement carefully and my questions, if any, have been answered to my satisfaction. I acknowledge that the briefing officer has made available Sections 793, 794, 798 and 952 of Title 18, United States Code, and Section 783(b) of Title 50, United States Code, and Executive Order 12958, as amended, so that I may read them at this time, if I so choose.

FORM
2-97

**4414**

(Replaces Form 4355
which is obsolete and
will not be used)

12. I hereby assign to the       States Government all rights, title and interest   .ll royalties, remunerations, and emoluments that have resulted, will result, or may result from any disclosure, publication, or revelation not consistent with the terms of this Agreement.

13. These restrictions are consistent with and do not supersede conflict with or otherwise alter the employee obligations rights or liabilities created by Executive Order 12958; Section 7211 of Title 5, United States Code (governing disclosures to Congress); Section 1034 of Title 10, United States Code, as amended by the Military Whistleblowers Protection Act (governing disclosures to Congress by members of the Military); Section 2302(b)(8) of Title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosure of illegality, waste, fraud, abuse, or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 USC 421 et seq.) (governing disclosures that could expose confidential Government agents), and the statutes which protect agent disclosure which may compromise national security, including Section 641, 793, 794, 798, and 952 of Title 18, United States Code, and Section 4(b) of the Subversive Activities Act of 1950 (50 U.S.C. 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

14. This Agreement shall be interpreted under and in conformance with the law of the United States.

15. I make this Agreement without any mental reservation or purpose of evasion.

Signature _____  Date 27 Aug 08

The execution of this Agreement was witnessed by the undersigned who accepted it on behalf of the United States Government as a prior condition of access to Sensitive Compartmented Information.

WITNESS and ACCEPTANCE: _____ Signature   Date 27 Aug 08

## SECURITY BRIEFING / DEBRIEFING ACKNOWLEDGMENT

G        HCS

(Special Access Programs by Initials Only)

SSN (See Notice Below)    Printed or Typed Name: Robert L. Birchum    Organization: SCSO-224-R

| BRIEF  DATE: 27 Aug 08 | DEBRIEF  DATE: |
|---|---|
| I hereby acknowledge that I was briefed on the above SCI Special Access Program(s): | Having been reminded of my continuing obligation to comply with the terms of this Agreement, I acknowledge that I was debriefed on the above SCI Special Access Program(s): |
| Signature of Individual Briefed | Signature of Individual Debriefed |

I certify that the briefing presented by me on the above date was in accordance with the relevant SCI procedures.

| Signature of Briefing/Debriefing Officer | SSN (See Notice Below) |
| KURRE, NANCY L. / SHUMAN, JOHN L. | HQ USSOCOM, MACDILL AFB, FL |
| Printed or Typed Name | Organization (Name and Address) |

NOTICE: The Privacy Act, 5 U.S.C. 522a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397. Your SSN will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above, 2) determine that your access to the information has terminated, or 3) certify that you have witnessed a briefing or debriefing. Although disclosure of your SSN is not mandatory, your failure to do so may impede such certifications or determinations.

## SENSITIVE COMPARTMENTED INFORMATION
### INDOCTRINATION MEMORANDUM

This memorandum records the fact that I was briefed on this date on the following Sensitive Compartmented Information (SCI) Special Access Program(s) (Use Unclassified Indicators Only):

SI / TK

Authority (optional):

The need for special protection of this material was made known to me, and I was reminded that my access to this material is governed by the terms of the SCI Nondisclosure Agreement that I signed.

| | |
|---|---|
| Signature | Organization SCSO JJ24R |
| Printed/Typed Name (Last, First, Middle Initial) Birchum, Robert L | SSN (See Notice Below) |
| Rank/Grade 04 / May / 11 SAF | Date of Indoctrination 2008 08 27 (YY, MM, DD) | Billet Number |

I certify that the above briefing presented by me was in accordance with relevant SCI procedures.

| | |
|---|---|
| Signature of Authorized Briefer | Organization HQ USSOCOM SSO |
| Printed/Typed Name (Last, First, Middle Initial) | Date of Briefing (YY, MM, DD) 08 27 |

Notice: The Privacy Act, 5 U.S.C. 552a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397. Your SSN will be used to identify you precisely when it is necessary to certify that you have access to the information indicated above. Although disclosure of your SSN is not mandatory, your failure to do so may delay the processing of such certification.

DD FORM 1847, JAN 83 (EG)     Previous Editions Obsolete     Designed using Perform Pro, WHS/DIOR, Jan 94

## SENSITIVE COMPARTMENTED INFORMATION NONDISCLOSURE STATEMENT

### PRIVACY ACT STATEMENT

| | |
|---|---|
| **AUTHORITY:** | EO 9397, November 1943 (SSN). |
| **PRINCIPAL PURPOSE(S):** | The information contained herein will be used to precisely identify individuals when it is necessary to certify their access to sensitive compartmented information. |
| **ROUTINE USE(S):** | Blanket routine uses, as published by Defense Intelligence Agency in the Federal Register. |
| **DISCLOSURE:** | Voluntary; however, failure to provide requested information may result in delaying the processing of your certification. |

### SECTION A

An Agreement Between  Robert L. Birchum, USAF  and the United States.
(Printed or Typed Name)

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to information or material protected within Special Access Programs, hereinafter referred to in this Agreement as Sensitive Compartmented Information (SCI). I have been advised that SCI involves or derives from intelligence sources or methods and is classified or in the process of a classification determination under the standards of Executive Order 12356 or other Executive order or statute. I understand and accept that by being granted access to SCI, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SCI, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and I understand these procedures. I understand that I may be required to sign subsequent agreements upon being granted access to different categories of SCI. I further understand that all my obligations under this Agreement continue to exist whether or not I am required to sign such subsequent agreements.

3. I have been advised that unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government department or agency (hereinafter Department or Agency) that last authorized my access to SCI. I understand that it is my responsibility to consult with appropriate management authorities in the Department or Agency that last authorized my access to SCI, whether or not I am still employed by or associated with that Department or Agency or a contractor thereof, in order to ensure that I know whether information or material within my knowledge or control that I have reason to believe might be SCI, or related to or derived from SCI, is considered by such Department or Agency to be SCI. I further understand that I am also obligated by law and regulation not to disclose any classified information or material in an unauthorized fashion.

4. In consideration of being granted access to SCI and of being assigned or retained in a position of special confidence and trust requiring access to SCI, I hereby agree to submit for security review by the Department or Agency that last authorized my access to such information or material, any writing or other preparation in any form, including a work of fiction, that contains or purports to contain any SCI or description of activities that produce or relate to SCI or that I

4. *(Continued)* have reason to believe are derived from SCI, that I contemplate disclosing to any person not authorized to have access to SCI or that I have prepared for public disclosure. I understand and agree that my obligation to submit such preparations for review applies during the course of my access to SCI and thereafter, and I agree to make any required submissions prior to discussing the preparation with, or showing it to, anyone who is not authorized to have access to SCI. I further agree that I will not disclose the contents of such preparation to any person not authorized to have access to SCI until I have received written authorization from the Department or Agency that last authorized my access to SCI that such disclosure is permitted.

5. I understand that the purpose of the review described in paragraph 4 is to give the United States a reasonable opportunity to determine whether the preparation submitted pursuant to paragraph 4 set forth any SCI. I further understand that the Department or Agency to which I have made a submission will act upon them, coordinating within the Intelligence Community when appropriate, and make a response to me within a reasonable time, not to exceed 30 working days from date of receipt.

6. I have been advised that any breach of this Agreement may result in the termination of my access to SCI and removal from a position of special confidence and trust requiring such access, as well as the termination of my employment or other relationships with any Department or Agency that provides me with access to SCI. In addition, I have been advised that any unauthorized disclosure of SCI by me may constitute violations of United States criminal laws, including the provisions of Sections 793, 794, 798, and 952, Title 18, United States Code, and of Section 783(b), Title 50, United States Code. Nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

7. I understand that the United States Government may seek any remedy available to it to enforce this Agreement, including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement. I have been advised that the action can be brought against me in any of the several appropriate United States District Courts where the United States Government may elect to file the action. Court costs and reasonable attorneys' fees incurred by the United States Government may be assessed against me if I lose such action.

8. I understand that all information to which I may obtain access by signing this Agreement is now and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a

**DD FORM 1847-1, DEC 91 (EG)**   PREVIOUS EDITIONS ARE OBSOLETE.   Designed using Perform Pro, WHS/DIOR, Jun 94

8. *(Continued)* court of law. Subject to such determination, I do not now, nor will I ever, possess any right, interest, title or claim whatsoever to such information. I agree that I shall return all materials that may have come into my possession or for which I am responsible because of such access, upon demand by an authorized representative of the United States Government or upon the conclusion of my employment or other relationship with the United States Government entity providing me access to such materials. If I do not return such materials upon request, I understand this may be a violation of Section 793, Title 18, United States Code.

9. Unless and until I am released in writing by an authorized representative of the Department or Agency that last provided me with access to SCI, I understand that all the conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to SCI, and at all times thereafter.

10. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect. This Agreement concerns SCI and does not set forth such other conditions and obligations not related to SCI as may now or hereafter pertain to my employment by or assignment or relationship with the Department or Agency.

11. These restrictions are consistent with and do not supersede conflict with or otherwise alter the employee obligations, rights, or liabilities created by Executive Order 12356; Section 7211 of Title 5, United States Code (governing disclosures to Congress); Section 1034 of Title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the military); Section 2302(b)(8) of Title 5, United States Code, as amended by the Whistleblower Protection Act

11. *(Continued)* (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 USC 421 et seq.) (governing disclosures that could expose confidential Government agents), and the statutes which protect against disclosure that may compromise the national security, including Section 641, 793, 794, 798, and 952 of Title 18, United States Code, and Section 4(b) of the Subversive Activities Act of 1950 (50 USC Section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this agreement and are controlling.

12. I have read this Agreement carefully and my questions, if any, have been answered to my satisfaction. I acknowledge that the briefing officer has made available Sections 793, 794, 798, and 952 of Title 18, United States Code, and Executive Order 12356, as amended, so that I may read them at this time, if I so choose.

13. I hereby assign to the United States Government all rights, title and interest, and all royalties, remunerations, and emoluments that have resulted, will result, or may result from any disclosure, publication, or revelation not consistent with the terms of this Agreement.

14. This Agreement shall be interpreted under and in conformance with the laws of the United States.

15. I make this Agreement without any mental reservation or purpose of evasion.

| 16. TYPED OR PRINTED NAME (Last, First, Middle Initial) | 17. GRADE/RANK/SVC | 18. SOCIAL SECURITY NO. | 19. BILLET NO. *(Optional)* |
|---|---|---|---|
| Birchum, Robert L. | O-4 / Maj/USAF | | |
| 20. ORGANIZATION | 21. SIGNATURE | | 22. DATE SIGNED *(YYMMDD)* |
| SCSO J24 R | | | 2008/08/27 |

FOR USE BY MILITARY AND GOVERNMENT CIVILIAN PERSONNEL

## SECTION B

The execution of this Agreement was witnessed by the undersigned, who accepted it on behalf of the United States Government as a prior condition of access to Sensitive Compartmented Information.

| 23. TYPED OR PRINTED NAME (Last, First, Middle Initial) | 24. ORGANIZATION |
|---|---|
| KURRE, NANCY L. or SHUMAN, JOHN L. | HQ USSOCOM |
| 25. SIGNATURE | 26. DATE SIGNED *(YYMMDD)* |
| | 08 08 27 |

FOR USE BY CONTRACTORS/CONSULTANTS/NON-GOVERNMENT PERSONNEL

## SECTION C

The execution of this Agreement was witnessed by the undersigned.

| 27. TYPED OR PRINTED NAME (Last, First, Middle Initial) | 28. ORGANIZATION |
|---|---|
| | |
| 29. SIGNATURE | 30. DATE SIGNED *(YYMMDD)* |
| | |

## SECTION D

This Agreement was accepted by the undersigned on behalf of the United States Government as a prior condition of access to Sensitive Compartmented Information.

| 31. TYPED OR PRINTED NAME (Last, First, Middle Initial) | 32. ORGANIZATION |
|---|---|
| | |
| 33. SIGNATURE | 34. DATE SIGNED *(YYMMDD)* |
| | |

DD FORM 1847-1, DEC 91 (BACK)

## CLASSIFIED INFORMATION NONDISCLOSURE AGREEMENT

AIC                                    338 CCTS

An Agreement Between __Robert S. Burkum__ and the United States
(Name - Printed or Typed)

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to classified information. As used in this Agreement, classified information is information that is either classified or classifiable under the standards of Executive Order 12356, or under any other Executive order or statute that prohibits the unauthorized disclosure of information in the interest of national security. I understand and accept that by being granted access to classified information special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of classified information, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and that I understand these procedures.

3. I have been advised and am aware that direct or indirect unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause irreparable injury to the United States or could be used to advantage by a foreign nation. I hereby agree that I will never divulge such information unless I have officially verified that the recipient has been properly authorized by the United States Government to receive it or I have been given prior written notice of authorization from the United States Government Department or Agency (hereinafter Department or Agency) last granting me a security clearance that such disclosure is permitted. I further understand that I am obligated to comply with laws and regulations that prohibit the unauthorized disclosure of classified information.

4. I have been advised and am aware that any breach of this Agreement may result in the termination of any security clearances I hold; removal from any position of special confidence and trust requiring such clearances; and the termination of my employment or other relationships with the Departments or Agencies that granted my security clearance or clearances. In addition, I have been advised and am aware that any unauthorized disclosure of classified information by me may constitute a violation or violations of United States criminal laws, including the provisions of Sections 641, 793, 794, 798, and 952, Title 18, United States Code, the provisions of Section 783(b), Title 50, United States Code, and the provisions of the Intelligence Identities Protection Act of 1982. I recognize that nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

5. I hereby assign to the United States Government all royalties, remunerations, and emoluments that have resulted, will result or may result from any disclosure, publication, or revelation not consistent with the terms of this Agreement.

6. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement.

7. I understand that all information to which I may obtain access by signing this Agreement is now and will forever remain the property of the United States Government. I do not now, nor will I ever, possess any right, interest, title, or claim whatsoever to such information. I agree that I shall return all materials which have, or may have, come into my possession or for which I am responsible because of such access, upon demand by an authorized representative of the United States Government or upon the conclusion of my employment or other relationship with the Department or Agency that last granted me a security clearance. If I do not return such materials upon request, I understand that this may be a violation of Section 793, Title 18, United States Code, a United States criminal law.

8. Unless and until I am released in writing by an authorized representative of the United States Government, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to classified information, and at all times thereafter.

9. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect.

10. I have read this Agreement carefully and my questions, if any, have been answered to my satisfaction. I acknowledge that the briefing officer has made available to me Sections 641, 793, 794, 798, and 952 of Title 18, United States Code, Section 783(b) of Title 50, United States Code, the Intelligence Identities Protection Act of 1982, and Executive Order 12356, so that I may read them at this time, if I so choose.

11. I make this Agreement without mental reservation or purpose of evasion.

| SIGNATURE | DATE | SOCIAL SECURITY NO. (See notice below) |
|---|---|---|
| Robert S. Burkum | 1 Dec 86 | |
| ORGANIZATION | | |
| 338 SBTS | | |

The execution of this Agreement was witnessed by the undersigned, who, on behalf of the United States Government, agreed to its terms and accepted it as a prior condition of authorizing access to classified information.

WITNESS AND ACCEPTANCE:

| SIGNATURE | DATE |
|---|---|
| Sandra K. Shaw | 1 Dec 86 |
| ORGANIZATION | |
| 338 SBTS | |

NOTICE: The Privacy Act, 5 U.S.C. 552a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397. Your SSN will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above or 2) determine that your access to the information indicated has terminated. Although disclosure of your SSN is not mandatory, your failure to do so may impede the processing of such certifications or determinations.

NSN 7540-01-162-1049                    189-101                    STANDARD FORM 189 (8-83)
                                                                    Prescribed by GSA/ISOO
189-101 * 1986 O - 495-605                                          32CFR 2003; E.O. 12356

## CLASSIFIED INFORMATION NONDISCLOSURE AGREEMENT

AN AGREEMENT BETWEEN     BIRCHUM ROBERT L.     AND THE UNITED STATES

(Name of Individual – Printed or typed)

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to classified information. As used in this Agreement, classified information is marked or unmarked classified information, including oral communications, that is classified under the standards of Executive Order 12356, or under any other Executive order or statute that prohibits the unauthorized disclosure of information in the interest of national security; and unclassified information that meets the standards for classification and is in the process of a classification determination as provided in Sections 1.1 and 1.2(e) of Executive Order 12356, or under any other Executive order or statute that requires protection for such information in the interest of national security. I understand and accept that by being granted access to classified information, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of classified information, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and that I understand these procedures.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause damage or irreparable injury to the United States or could be used to advantage by a foreign nation. I hereby agree that I will never divulge classified information to anyone unless: (a) I have officially verified that the recipient has been properly authorized by the United States Government to receive it; or (b) I have been given prior written notice of authorization from the United States Government Department or Agency (hereinafter Department or Agency) responsible for the classification of the information or last granting me a security clearance that such disclosure is permitted. I understand that if I am uncertain about the classification status of information, I am required to confirm from an authorized official that the information is unclassified before I may disclose it, except to a person as provided in (a) or (b), above. I further understand that I am obligated to comply with laws and regulations that prohibit the unauthorized disclosure of classified information.

4. I have been advised that any breach of this Agreement may result in the termination of any security clearances I hold; removal from any position of special confidence and trust requiring such clearances; or the termination of my employment or other relationships with the Departments or Agencies that granted my security clearance or clearances. In addition, I have been advised that any unauthorized disclosure of classified information by me may constitute a violation, or violations, of United States criminal laws, including the provisions of Sections 641, 793, 794, 798, and *952, Title 18, United States Code, *the provisions of Section 783(b), Title 50, United States Code, and the provisions of the Intelligence Identities Protection Act of 1982. I recognize that nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

5. I hereby assign to the United States Government all royalties, remunerations, and emoluments that have resulted, will result or may result from any disclosure, publication, or revelation of classified information not consistent with the terms of this Agreement.

6. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement.

7. I understand that all classified information to which I have access or may obtain access by signing this Agreement is now and will remain the property of, or under the control of the United States Government unless and until otherwise determined by an authorized official or final ruling of a court of law. I agree that I shall return all classified materials which have, or may come into my possession or for which I am responsible because of such access: (a) upon demand by an authorized representative of the United States Government; (b) upon the conclusion of my employment or other relationship with the Department or Agency that last granted me a security clearance or that provided me access to classified information; or (c) upon the conclusion of my employment or other relationship that requires access to classified information. If I do not return such materials upon request, I understand that this may be a violation of Section 793, Title 18, United States Code, a United States criminal law.

8. Unless and until I am released in writing by an authorized representative of the United States Government, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to classified information, and at all times thereafter.

9. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect.

10. These restrictions are consistent with and do not supersede, conflict with or otherwise alter the employee obligations, rights or liabilities created by Executive Order 12356; Section 7211 of Title 5, United States Code (governing disclosures to Congress); Section 1034 of Title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the military); Section 2302(b)(8) of Title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 U.S.C. 421 et seq.) (governing disclosures that could expose confidential Government agents), and the statutes which protect against disclosure that may compromise the national security, including Sections 641, 793, 794, 798, and 952 of Title 18, United States Code, and Section 4(b) of the Subversive Activities Act of 1950 (50 U.S.C. Section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

( Continue on reverse.)

11. I have read this Agreement carefully and my questions, if any, have been answered. I acknowledge that the briefing officer has made available to me the Executive Order and statutes referenced in this Agreement and its implementing regulation (32 CFR Section 2003.20) so that I may read them at this time, if I so choose.

| SIGNATURE | DATE | SOCIAL SECURITY NUMBER (See Notice below) |
|---|---|---|
| Birch | 22 Mar 99 | |

ORGANIZATION (IF CONTRACTOR, LICENSEE, GRANTEE OR AGENT, PROVIDE: NAME, ADDRESS, AND, IF APPLICABLE, FEDERAL SUPPLY CODE NUMBER) (Type or print)

13 IS/ DOM
5793 e. St.
Beale AFB CA 95903-6367

| WITNESS | ACCEPTANCE |
|---|---|
| THE EXECUTION OF THIS AGREEMENT WAS WITNESSED BY THE UNDERSIGNED. | THE UNDERSIGNED ACCEPTED THIS AGREEMENT ON BEHALF OF THE UNITED STATES GOVERNMENT. |

| SIGNATURE | DATE | SIGNATURE | DATE |
|---|---|---|---|
| SSgt Ronald Harris II | 22 Mar 99 | | 22 Mar 99 |

| NAME AND ADDRESS (Type or print) | NAME AND ADDRESS (Type or print) |
|---|---|
| RONALD HARRIS II., SSGT, USAF 48 IS/SF Assistant Unit Security Manager 5793 C. ST. BEALE AFB. CA. 95903-6367 BUILDING 23260 | MARK A. MINIEAR, MSGT, USAF 48 IS/SF Unit Security Manager 5793 C. ST. BEALE AFB. CA. 95903-6367 BUILDING 23260 |

## SECURITY DEBRIEFING ACKNOWLEDGEMENT

I reaffirm that the provisions of the espionage laws, other federal criminal laws and executive orders applicable to the safeguarding of classified information have been made available to me; that I have returned all classified information in my custody; that I will not communicate or transmit classified information to any unauthorized person or organization; that I will promptly report to the Federal Bureau of Investigation any attempt by an unauthorized person to solicit classified information, and that I (have) (have not) (strike out inappropriate word or words) received a security debriefing.

| SIGNATURE OF EMPLOYEE | DATE |
|---|---|
| | |

| NAME OF WITNESS (Type or print) | SIGNATURE OF WITNESS |
|---|---|
| | |

NOTICE: The Privacy Act, 5 U.S.C. 552a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397. Your SSN will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above or 2) determine that your access to the information indicated has terminated. Although disclosure of your SSN is not mandatory, your failure to do so may impede the processing of such certifications or determinations, or possibly result in the denial of your being granted access to classified information.

\* NOT APPLICABLE TO NON-GOVERNMENT PERSONNEL SIGNING THIS AGREEMENT.

STANDARD FORM 312 BACK (REV. 1–91)

# Exhibit 2

# INDIVIDUAL REPORTING RESPONSIBILITIES

In accordance with Director of Central Intelligence Directive (DCID) 6/4, *Personnel Security Standards*, as part of individual responsibilities for being briefed for Sensitive Compartmented Information (SCI) access, I understand that it is my responsibility to report any adverse or derogatory information, to include, but not limited to the following:

**Initial Next**
**to Each Item**

- Involvement in activities or sympathetic association with person which/who unlawfully practice or advocate the overthrow or alteration of the United States government by unconstitutional means

- Foreign national contacts other than casual

- Foreign citizenship or foreign monetary interests

- Sexual behavior that is criminal or reflects a lack of judgment or discretion

- Unwillingness to comply with rules and regulations or to cooperate with security Processing

- Apparent mental or emotional disorder(s)

- Engagement in outside activities which could cause conflict of interest

- Misuse information technology systems

- Any drug involvement

- Driving While Impaired (DWI) or Driving Under the Influence (DUI)

- Misuse/abuse of alcohol

- Bankruptcy

- Financial difficulties to include late payments of 120 days or more

- Wage garnishments

- Significant moving violations (fine in excess of $100)

- Any and all arrests

- Report foreign travel 30 days in advance (form must be completed and signed)

- Change in marital status (including marriage and/or divorce and co-habitation)

Robert L. Birchum, Maj, USAF
**PRINTED NAME**

**SIGNATURE**                                          27 Aug 08
                                                       **DATE**

**WITNESS**                                            27 Aug 08
                                                       **DATE**

# Exhibit 3

# FOR OFFICIAL USE ONLY

Sensitive Compartmented Information Administrative Security Manual
DoD 5105.21-M-1                                          August 1998

## SPECIAL INSTRUCTIONS FOR COURIERS OF SCI IN THE LOCAL TRAVEL AREA

1. You have been designated as an official courier for SCI material. You are responsible for the protection of the material in your custody. You must avoid all places, situations and circumstances which could compromise your ability to protect the documents.

2. The following information is provided to enable you to carry out your duties:

    a. Ensure all SCI material is wrapped. A locked briefcase or pouch should serve as the outer wrapper. Affix a courier tag to the outer envelope of each envelope containing classified information. Do not affix a courier tag to the outside of a briefcase, attaché case, etc., or to a carton or container being escorted, as this would draw attention to the classified material. The inner wrappers must be marked or labeled as follows:
        IF FOUND, DO NOT OPEN, IMMEDIATELY NOTIFY SSO (name of Organization and mailing address)
        TELEPHONE; DSN:
        AFTER DUTY HOURS TELEPHONE:
Opaque envelopes or kraft wrapping paper may be used for inner wrappers; all seams are to be taped with reinforced paper or plastic tape. Bulky material may be packaged in durable fiberboard, cardboard, or wooden boxes. Place proper security classification and SCI caveats on both sides of the innermost wrapper. A list of all SCI material being transported must be left at the controlling facility and the office of the courier. SCI documents will not be left with or signed over to another individual without prior approval or instructions from the (organization SSO)

    b. Ensure material remains in your personal possession and under your constant surveillance at all times. Do not leave SCI material in locked automobiles, quarters, hotel rooms, train compartments, etc. or stored in automobile trunks or in any detachable storage compartment.

    c. Couriers will use the most direct route feasible. If a courier is unable to follow the itinerary or if the material is lost, stolen or otherwise subjected to compromise enroute, the courier will immediately report the circumstances to (organization SSO) by the most rapid means available.

    d. SCI will not be read, studied, displayed, discussed or used in any manner in public conveyances or places. Do not discuss SCI except in secure areas officially approved for such discussion. Ensure that all personnel having access to or viewing the material is authorized the appropriate level of SCI access.

    e. Envelopes containing SCI should not be used to carry or convey personal items, communications, or other similar objects.

4. The courier appointment does not authorize the bearer to carry SCI material to their home or office for personal convenience.

5. Noncompliance with the foregoing may be grounds for disciplinary action under the provisions of UCMJ and/or Section 798, Title 18, U.S.C.

PRINT NAME: Robert Birchum    SOCIAL SECURITY #: ████████

SIGNATURE: _____    DATE: 10 Oct 08

## FOR OFFICIAL USE ONLY

# Exhibit 4



**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS EIGHTEENTH AIR FORCE (AMC)**

JAN 0 5 2018

MEMORANDUM FOR LIEUTENANT COLONEL ROBERT L. BIRCHUM

FROM: 18 AF/CV

SUBJECT: Letter of Reprimand

1. Investigation revealed that you improperly handled and took, without authority, large volumes of classified information. On 24 January 2017, the Air Force Office of Special Investigations (AFOSI) was notified that you had a thumb drive at your Tampa (FL)-area residence containing classified materials. Further investigation, to include a search of that residence, revealed that you had removed this material without authority and subsequently failed to safeguard significant quantities of classified materials over an extended period of time.

   a. On 24 January 2017, AFOSI seized several other pieces of hardware and hundreds of pages of documents from your residence. One seized thumb drive contained over 900 megabytes of classified documents, all of which were marked as such. A review of the thumb drive documents suggested a majority were created between 2002 and 2008. You had no authority to possess these documents, and you additionally failed to safeguard these materials.

   b. In early 2017, you were deployed to Bagram AB, Afghanistan. A search of your dorm room there, following the search of your residence in Florida, revealed several other personal electronic devices which contained classified information. Investigators seized hundreds of pages of classified documents in addition to the personal electronic devices. The classification of these items ranged from SECRET, SECRET// Alternate Compensatory Control Measures (ACCM), and Top Secret (TS)// ACCM. The documents you wrongfully took and failed to safeguard were from not only the Department of Defense, but also from other agencies in the Intelligence Community (IC). In addition to the above classifications, the information in your personal possession in Afghanistan had multiple Sensitive Compartmentalized Information (SCI) caveats, ACCM program names, and other extensive portion control markings. You had no authority to possess these documents, and you additionally failed to safeguard these materials.

   c. Upon your redeployment to MacDill AFB, you elected to correspond with the USCENTCOM Commander regarding your decision to take and fail to safeguard classified information. Your correspondence was misleading; you wrote that you may have "accidently packed classified information when [you] left JSOC" which mischaracterized the quantity, nature, and duration of the information breach. In other correspondence, you admitted that you improperly took and failed to safeguard classified information beginning in 2004 while you were stationed at Ft. Bragg, North Carolina, working at USSOCOM as the Chief of the Combat Intelligence Division.

d. A review of your assignment history and Officer Performance Reports (OPRs) revealed that you have been assigned to various locations in which you had access to the classified information discovered in your possession.

1. In 1998 as a First Lieutenant assigned to Beale AFB, you were responsible for collection of time sensitive U-2 derived intelligence and you also represented 12th Air Force in U-2 mission planning issues at joint AF and other IC exercises. The classified information found at your home included U-2 data that was developed during this time frame. You had no authority to possess these documents, and you additionally failed to safeguard these materials.

2. In 2000, as a Captain, you had responsibility for near real time U-2 derived imagery and signals intelligence collection, exploitation, and dissemination. During 2001-2003, as a Captain, you were the Chief of Air Force Intelligence, Surveillance and Reconnaissance (ISR) Readiness. The classified information found at your home included materials developed during this time frame. You had no authority to possess these documents, and you additionally failed to safeguard these materials.

3. In 2003-2004, also as a Captain, you were assigned to the Directorate of ISR, Deputy Chief of Staff, Air and Space Operations at the Pentagon, where you assisted in preparing the Air Force ISR program for CSAF, SecAF, HAF and the IC. The classified information found at your home included materials developed during this time frame. You had no authority to possess these documents, and you additionally failed to safeguard these materials.

4. In 2004 as a Captain, you were assigned as the Chief of the Combat Intelligence Division. In that position you directed all intelligence activities for Aviation Tactics Evaluation Group (AVTEG) in support of SECDEF contingencies and exercises. I would note that in this position, you worked in the Air Component Command for the Joint Special Operations Command (JSOC), the entity whose classified information you admitted to possessing. In 2005, while still in that position you pinned on the rank of Major. The classified information found at your home included materials developed during this time frame. You had no authority to possess these documents, and you additionally failed to safeguard these materials.

5. In 2008, as a Major, you were assigned to USSOCOM where you had access to information pertaining to Special Operations Forces (SOF) ISR processing, exploitation, and dissemination. In 2010, while still assigned at USSOCOM, you pinned on Lieutenant Colonel. The classified information found at your home included materials developed during this time frame. You had no authority to possess these documents, and you additionally failed to safeguard them.

6. As a Lieutenant Colonel, you were assigned to be the USSOCOM representative at the Office of the Director of National Intelligence (ODNI) where you had access to information from other entities within the IC. In that position, you had IC information pertaining to various DoD and other sensitive special operations missions, and intelligence pertaining to unconventional warfare operations. Finally, as a Lieutenant Colonel, you were deployed to Afghanistan in 2017. During this deployment, your dorm room was searched and several personal electronic devices that contained classified information were seized, as mentioned above. The classified information

found at your home included U-2 data that was developed during this time frame. You had no authority to possess these documents, and you additionally failed to safeguard these materials.

e. Executive Order No. 13526 explains the seriousness by which we classify information to protect our national security interests. The Order identifies matters as TS when "unauthorized disclosure would cause exceptionally grave damage to the national security." Within TS, there are also additional levels, such as Sensitive Compartmented Information (SCI) and Special Access Programs (SAP). TS-SCI is for intelligence sources and methods, and TS-SAP involves sensitive policies, projects and programs. The classification of items you took without authority ranged from SECRET, SECRET// ACCM, and TS//ACCM, as such your unauthorized disclosure of these documents could cause exceptionally grave damage to our national security. A review of your official military record revealed that you have signed multiple non-disclosure agreements, which clearly defined your responsibilities pertaining to classified information. You also signed and acknowledged that you received a security indoctrination concerning the nature and protection of classified information. By signing these documents, you were also put on notice that unauthorized disclosure, retention, or negligent handling of classified information could cause damage or irreparable injury to the United States.

2. You are hereby reprimanded! Your actions are criminal under Article 92 (3), *Uniform Code of Military Justice* (UCMJ), Dereliction of Duty, and Article 133, UCMJ, Conduct Unbecoming of an Officer, for wrongfully taking and failing to properly safeguard classified information. You have improperly handled and taken large volumes of classified information that was clearly marked as such. Your failure to properly safeguard Secret and TS information is irresponsible and causes me to question your judgment. Your actions are disgraceful and have potentially seriously compromised national security. You have also compromised your integrity and character as an officer. As a field grade officer in the U.S. Air Force you are to demonstrate an internalized understanding of Air Force core values. You have engaged in an inexcusable manner that is not only irresponsible, but blatantly disregards our Service values. Your despicable actions reflect poorly on yourself. This type of behavior will not be tolerated, and these actions seriously bring into question your ability to serve as an officer in the U.S. Air Force. Any future violations of this nature may result in more severe action against you.

3. AUTHORITY: 10 U.S.C. 8013. PURPOSE: To obtain any comments or documents you desire to submit (on a voluntary basis) for consideration concerning this action. ROUTINE USES: Provides you an opportunity to submit comments or documents for consideration. If provided, the comments and documents you submit become part of this action. DISCLOSURE: Your written acknowledgment of receipt and signature are mandatory. Any other comments or documentation you provide is voluntary.

4. In accordance with AFI 36-2907, *Unfavorable Information File (UIF) Program*, LORs must be filed in an officer's UIF. Should I decide to maintain this LOR, your senior rater will also make the decision whether to place the LOR in your Officer Selection Record (OSR) pursuant to AFI 36-2608, *Military Personnel Records System*.

5. You will acknowledge receipt and return this letter to me within three (3) duty days of your receipt. Your signature on this document is solely for receipt purposes and is not an admission of guilt. Any comments or documents you wish to be considered concerning this LOR and its inclusion in your OSR must be included with your response.

DARREN V. JAMES
Brigadier General, USAF
Vice Commander

2 Attachments:
1. Affidavit by SA Kiernan, dated 21 December 2017
2. Non-Disclosure Agreements

1st Ind, Lt Col Robert L. Birchum, Letter of Reprimand, 5 January 2018

MEMORANDUM FOR 18 AF/CV

I acknowledge receipt of the Letter of Reprimand (LOR) at _0955_ (time) hours on _11 January 2018_ (date). I understand I can submit a response, and that the response will be due within three (3) duty days, by _17 January 2018_ I (will) (will not) submit a response. I also understand that an LOR is a mandatory UIF entry.

ROBERT L. BIRCHUM, Lt Col, USAF

4

# Exhibit 5

Birchum    30 Jan 17

Today I was interviewed by AFOSI on an allegation of mishandling classified information. I swear today that at no time in my 28 year career that I willingly mishandled classified information. I've had access to high level classified information and always understood the safeguards needed to protect intelligence or special operations information. I have taken countless training on handling classified information and always applied safeguards necessary to handle it. I have been involved in special operations units where it required to travel with classified information but applied all security safeguards to it. In my multiple deployments with SOF, we traveled with classified systems and safeguarded them appropriately in storage containers and paper material in storage transfer. I have worked on many classified projects and always kept unclassified information separate from the classified. I do not know if there may have been classified information in my residence, but I am reasonably sure that during my travels I protected all classified information I traveled with. As an officer, I knew how to protect sensitive information and have always applied a high standard to security.

                            Lt Col Robert Birchum

End of statement                    page 3 of 3

# Exhibit 6



**DEPARTMENT OF THE AIR FORCE**
**6TH AIR MOBILITY WING (AMC)**
**MACDILL AIR FORCE BASE, FLORIDA**

**JAN 2 9 2018**

MEMORANDUM FOR LIEUTENANT COLONEL ROBERT L. BIRCHUM

FROM: 6 AMW/CC

SUBJECT: Letter of Reprimand

1. It has come to my attention that on or before 22 December 2017 you unlawfully transported one or more privately owned firearms onto MacDill Air Force Base, Florida, and that on 22 December 2017 you unlawfully possessed a privately owned firearm—a Bersa Thunder .380-caliber pistol, with a full magazine of ammunition inserted in the firearm and a live round in the chamber—at your work center in the Wing Historian Office, Building 299, 6th Air Mobility Wing Headquarters. According to statements you made to your supervisor, you routinely possessed and/or carried a firearm on the installation despite the fact you were not authorized to do so.

2. YOU ARE HEREBY REPRIMANDED! Your actions are criminal under federal law, 18 U.S.C. 930 and Article 134, UCMJ, conduct prejudicial to good order and discipline. You violated the trust placed in you, and you identified yourself as a threat to the safety and security of the installation. Your criminal actions raise serious concerns about your integrity and character, and about your continued service as an Air Force officer. Future misconduct may result in more severe action against you. In accordance with AFI 36-2907, LORs must be filed in an officer's UIF. Should I decide to maintain this LOR, your senior rater will also make the decision whether to place the LOR in your Officer Selection Record (OSR) pursuant to AFI 36-2608.

3. **AUTHORITY:** 10 U.S.C. 8013. **PURPOSE:** To obtain any comments or documents you desire to submit (on a voluntary basis) for consideration concerning this action. **ROUTINE USES:** Provides you an opportunity to submit comments or documents for consideration. If provided, the comments and documents you submit become part of this action. **DISCLOSURE:** Your written acknowledgment of receipt and signature are mandatory. Any other comments or documentation you provide is voluntary.

4. You will acknowledge receipt and return this letter to me within three (3) duty days of your receipt. Your signature on this document is solely for receipt purposes and is not an admission of guilt. Any comments or documents you wish to be considered concerning this LOR and its inclusion in your OSR must be included with your response.

APRIL D. VOGEL, Colonel, USAF
Commander

Attachment:
Memorandum for Record, Lt Col Brandon Leifer, dated 29 January 2018

**MISSION FOCUSED...VALUED AIRMEN**



**DEPARTMENT OF THE AIR FORCE**
**6TH AIR MOBILITY WING (AMC)**
**MACDILL AIR FORCE BASE, FLORIDA**

**JAN 2 9 2018**

MEMORANDUM FOR LT COL ROBERT L. BIRCHUM
    6 AMW DS
    MacDill AFB FL 33621

FROM: 6 AMW/CC
    8208 Hangar Loop Drive, Suite 1
    MacDill Air Force Base FL 33621-5502

SUBJECT: Order Not to Enter or Reenter Military Installation

1. It has come to my attention that you have engaged in criminal conduct detrimental to good order and discipline on MacDill Air Force Base, Florida. Specifically, investigation shows you unlawfully had a firearm in your possession in your workcenter on MacDill Air Force Base.

2. Based on the information provided, I consider your presence on this installation to be detrimental to the maintenance of good order and discipline. Effective immediately, you are ordered not to enter MacDill Air Force Base to include, but not limited to, base housing, the golf course, the Brandon Clinic, and any property under MacDill Air Force Base jurisdiction for a period of:

    [ ] One year    [X] Three years    [ ] Seven years    [ ] Ten years    [ ] Other: _____

3. If you fail to comply with this order, you will be subject to prosecution under Title 18, United States Code, Section 1382, which reads in part:

    "Whoever reenters or is found within any installation, after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof, shall be fined under this title or imprisoned not more than six months, or both."

                                    and or

    "If you fail to comply with the order, you may also be subject to prosecution under 50 USC 797, which states 'whoever will fully violate any defense property security regulation shall be fined under Title 18 or imprisoned not more than one year or both'."

4. Should you reenter MacDill Air Force Base in violation of this order, you will be subject to detention or apprehension by Security Forces for delivery to the appropriate civilian or military authorities.

5. As an exception to this debarment order, if you are entitled to medical treatment by the MacDill Air Force Base Clinic, you may be authorized to enter MacDill Air Force Base for the sole purpose of using said facility. To do so, you must present this letter to the entry controller at the installation entry point and obtain the appropriate visitor pass. Additionally, you may only enter the installation if you are escorted by Security Forces or other personnel authorized by the 6 AMW Director of Staff (DS), the 6 CPTS leadership or higher command authority. You may not enter the installation without an authorized escort (for example., your dependent family members, who may have base access of their own, are not authorized to serve as escort). With your escort(s), you will travel directly to the medical facility by entering through the Dale Mabry Gate to Zemke Ave, then to the 6th Medical Group facility. You may not deviate from this route for any reason on your way to or from the medical facility. You are:

**MISSION FOCUSED...VALUED AIRMEN**

[X]  Authorized Installation Access for Medical Treatment
[ ]  Authorized Medical Treatment at Brandon Clinic
[ ]  Not Authorized Installation Medical Treatment or Brandon Clinic

In order to address your healthcare benefits, please contact the 6th Medical Support Squadron Commander at (813) 827-9526. 6 MDSS/CC will set up a time for you to discuss healthcare support throughout your barment along with other options you might consider.

6.  As an additional exception to this debarment order, if you are entitled to legal assistance from the military defense counsel, you may be authorized to enter the installation for the purpose of consulting your defense counsel by appointment. You are subject to the same restrictions regarding having an authorized escort as described in paragraph 5 above. You are not authorized access to any other installation facility not connected with these appointments.

7.  Under extraordinary circumstances, requests for temporary access to other facilities on MacDill Air Force Base may be granted. Such requests should be made in advance and in writing through the Chief, Security Forces, and include the reason(s) why access should be granted. If time does not permit, such a request must be made to the Base Defense Operations Center (BDOC) at (813) 828-3322. The controller will then notify the appropriate officials and convey your request.

8.  This order will remain in effect for the period prescribed in paragraph 2, unless otherwise modified or revoked in writing by the Installation Commander. If a compelling reason exists which you believe should be sufficient to justify modification or termination of this order, you may submit your justification to me, in writing, through the 6th Security Forces Squadron, Administration and Reports Section, requesting authorization to reenter the base.

X _____

APRIL D. VOGEL, Colonel, USAF
Commander

Cc:
6 SFS Administration & Reports Section

1st Ind, Lt Col Robert L. Birchum

MEMORANDUM FOR 6 AMW/CC

This is to certify that I, the undersigned, have received the forgoing order in writing and have read and fully understand the same. I understand that entry upon MacDill Air Force Base, in violation of this order, may result in civilian prosecution pursuant to 18 U.S.C. 1382. I further understand that in the event of a conviction, the maximum penalty prescribed may be imposed.

Received and signed the ___1st___ day of ___February___, 20_18_.

_____
ROBERT L. BIRCHUM, Lt Col, USAF