UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:23-cr-10159 |
| | ) | |
| JACK DOUGLAS TEIXEIRA | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF APPEAL OF MAGISTRATE JUDGE'S
ORDER ON DETENTION**

*/s/ Allen Franco*
Allen Franco
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061

*/s/ Brendan Kelley*
Brendan Kelley
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061

*/s/ Michael K. Bachrach*
Michael K. Bachrach
Law Office of Michael K. Bachrach
224 West 30th Street, Suite 302
New York, NY 10001
(212) 929-0592

*Attorneys for Defendant Jack Teixeira*

Dated: July 17, 2023

i

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT ....................................................................................................... 2

I.    The government is not entitled to a detention hearing under 18 U.S.C. § 3142(f)(2)(A) because Mr. Teixeira is not a serious risk of flight. ................................... 3

II.    The government is not entitled to a detention hearing under 18 U.S.C. § 3142(f)(2)(B) because Mr. Teixeira is not a serious risk of obstruction of justice. ........................... 8

III.    The detention factors favor Mr. Teixeira's release. ................................... 9

    a.   Release conditions exist to reasonably assure Mr. Teixeira's presence at trial. .... 10

        i.   Nature and circumstances of the offense. ................................... 11

        ii.   Weight of the evidence. ........................................................... 14

        iii.   History and characteristics of Mr. Teixeira. ............................... 15

        iv.   Nature and seriousness of the danger to any person or the community. ... 18

    b.   There are release conditions sufficient to mitigate the risk to the community that any future obstruction of justice might cause. ................................... 21

        i.   The Magistrate Judge's decision misapplied both case law and the plain language of the BRA. ........................................................... 22

        ii.   Nature and circumstances of the offense. ................................... 24

        iii.   Weight of the Evidence. ........................................................... 24

        iv.   History and Characteristics of Mr. Teixeira. ............................... 25

        v.   Nature and Seriousness of the danger to any person or the community. ... 25

CONCLUSION ................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Pages**

*United States v. Acevedo-Ramos*, 755 F.2d 203 (1st Cir. 1985) ..................................... 22, 23, 24

*United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992) .................................... 1, 2, 11, 19

*United States v. Demmler*, 523 F.Supp.2d 677 (S.D. Ohio 2007) ............................... 21

*United States v. Edson*, 487 F.2d 370 (1st Cir. 1973) ........................................... 14, 15

*United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985) ................................................ 10

*United States v. Friedman*, 837 F.2d 48 (2nd Cir. 1988) ................................................ 2

*United States v. Gamble*, 810 Fed.Appx. 7 (D.C. Cir. 2020) ...................................... 22

*United States v. Himler*, 797 F.2d 156 (3rd Cir. 1986) ...................................... 10, 11, 19

*United States v. Honeyman*, 470 F.2d 473 (9th Cir.1972) ........................................... 14

*United States v. Jones*, No. 99-1682, 1999 WL 668516 (1st Cir. Aug. 9, 1999)
(unpublished)........................................................................................................ 21, 22, 24

*United States v. Lamar*, 600 F.Supp.3d 714 (E.D. Ky. 2022) ........................... 21, 22, 24

*United States v. Lizardi-Maldonado*, 275 F.Supp.3d 1284, 1292 (D. Utah 2017) ..................... 15

*United States v. Madoff*, 586 F.Supp.2d 240 (S.D.N.Y. 2009) ...................................... 8

*United States v. Mehanna*, 669 F.Supp.2d 160 (D. Mass. 2009) ................................. 21

*United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985) ........................................ 14

*United States v. Ploof*, 851 F.2d 7, 9 (1st Cir. 1988) ........................................... *passim*

*United States v. Portes*, 786 F.2d 758 (7th Cir. 1985) ................................................ 10

*United States v. Tortora*, 922 F.2d 880 (1st Cir. 1990) ......................................... 1, 10

**Introduction**

Jack Teixeira requests that this Court vacate the Memorandum and Order on Detention issued by the Magistrate Judge in this case and order his release. *See* 18 U.S.C. § 3145(b). The relevant background for Mr. Teixeira is articulated in his prior Memorandum in Support of Release. (Doc. No. 20).

**Argument**

Mr. Teixeira is entitled to pretrial release under the Bail Reform Act ("BRA") because (1) he is not a serious risk of flight or obstruction of justice and, in the alternative, (2) because there are release conditions available to reasonably assure his presence at trial and the safety of the community. The Magistrate Judge previously ordered that Mr. Teixeira be detained. (Doc. No. 37). However, a District Court judge conducts de novo review of a Magistrate Judge's bail determination on appeal. *See United States v. Tortora*, 922 F.2d 880, 884 n.5 (1st Cir. 1990). Therefore, this Court must make an independent determination of whether to release Mr. Teixeira.

The BRA generally mandates that a defendant be released pretrial subject to "the least restrictive conditions" that will "reasonably assure" the defendant's presence when required or the safety of any other person and the community. *See* 18 U.S.C. § 3142(b) & (c). The BRA prohibits the pretrial detention of a defendant unless "after a hearing . . . the [court] finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). Accordingly, a defendant may not be detained pretrial unless a detention hearing is held, and the court makes a proper finding under § 3142(e). *See e.g.*, *United States v. Ploof*, 851 F.2d 7, 9 (1st Cir. 1988); *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992).

The government is only entitled to a detention hearing in specific instances. *See* 18 U.S.C.

§§ 3142(f)(1) & (f)(2); *see also Ploof*, 851 F.2d at 11 ("Congress did not … authorize preventive detention unless … one of the § 3142(f) conditions for holding a detention hearing exits"). The first instance is cases which concern one of the enumerated offenses outlined in § 3142(f)(1). The second instance is when the defendant poses a "serious risk" of flight or obstruction of justice. *See* 18 U.S.C. §§ 3142(f)(2)(A) & (B). If one of the conditions set forth in (f)(1) or (f)(2) is found, a hearing is held "to determine whether any condition or combination of conditions … will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). However, if no (f)(1) or (f)(2) condition is found, the court may not hold a detention hearing and the defendant must be released. *See Byrd*, 969 F.2d at 109 ("A hearing can be held only if one of the six circumstances listed in (f)(1) and (f)(2) is present; detention can be ordered only after a hearing is held pursuant to § 3142(f)").

Mr. Teixeira is not charged with an enumerated offense under (f)(1). Therefore, the government is not entitled to a detention hearing unless it proves by a preponderance of the evidence that Mr. Teixeira poses a serious risk of flight or obstruction of justice under (f)(2)(A) or (f)(2)(B); *see also United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988).  Then, even if the government proves that it is entitled to a hearing, detention is still only warranted if "no condition or combination of conditions will reasonably assure the appearance of [Mr. Teixeira] as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).

Mr. Teixeira is entitled to pretrial release because he is not a serious risk of flight or obstruction of justice under (f)(2)(A) or (B). Because no right to seek detention has been triggered under (f)(2), the BRA mandates that Mr. Teixeira be released subject to the least restrictive conditions. However, if the Court finds that the government is entitled to a detention hearing under (f)(2), Mr. Teixeira is still entitled to pretrial release because there are conditions available that

will reasonably mitigate any risk of flight and reasonably assure the safety of the community.

**I.     The government is not entitled to a detention hearing under 18 U.S.C. § 3142(f)(2)(A) because Mr. Teixeira is not a serious risk of flight.**

The evidence presented plainly demonstrates that Mr. Teixeira is not a serious risk of flight. According to the government's Complaint, Mr. Teixeira was already presented with his most compelling opportunity to flee. (Doc. No. 3-1, ¶ 27). Prior to his arrest, Mr. Teixeira believed that his apprehension was imminent. If Mr. Teixeira was inclined to flee from law enforcement and his country, he would have done so at that time. Instead, without any judicial restraints or obligations, Mr. Teixeira chose to stay at his mother's house, reading, expecting law enforcement to arrest him. (Exhibit 1, Arrest Photos, Doc. No. 77-1). Mr. Teixeira submitted to arrest without incident. Accordingly, Mr. Teixeira, through his own actions, has demonstrated he has no interest in fleeing.

Mr. Teixeira's is also not a serious risk of flight because he lacks the means necessary for escape. Mr. Teixeira is only 21-years old, lives at home with his mother, and made only $3,898 per month, before expenses. Other than basic training, Mr. Teixeira has never lived anywhere other than with either of his parents in North Dighton. Also, Mr. Teixeira is now an individual in the national consciousness. His pictures, videos, on-line conversations, and court appearances have all been the subject of widespread national reporting. There is nowhere for him to flee that he will not be subject to near immediate detection.

These circumstances reveal that Mr. Teixeira poses no serious risk of flight. A 21-year-old, with a modest income, who has never lived anywhere other than his parents' home, does not have the means or capacity to flee from a nationally recognized prosecution. Mr. Teixeira has no real-world connections outside of Massachusetts, and he lacks the financial ability to sustain himself if he were to flee. Thus, even if Mr. Teixeira had shown any inclination to become an infamous fugitive, which he expressly has not, he simply has nowhere to go. Accordingly, the risk of flight

advanced by the government cannot be taken seriously for the purposes of (f)(2)(A) because Mr. Teixeira lacks the inclination or ability to flee.

The government nevertheless speculates that Mr. Teixeira could be induced to flee by a foreign nation or adversary of the United States. However, the government's speculation that a foreign entity will seek to orchestrate Mr. Teixeira's clandestine escape from North Dighton is not a risk the Court can take seriously.

For the government's hypothetical to merit finding a serious risk of flight, it must establish that Mr. Teixeira is of sufficient importance to an adversarial entity that it would be willing to orchestrate an extreme act of espionage to smuggle him out of the country. Moreover, there need also be evidence suggesting that Mr. Teixeira would accept such help and be willing to live the rest of his life in this unidentified country as an international fugitive. The government fails to demonstrate a serious risk that this spy novel level of espionage is likely to occur.

For one, the government has not demonstrated that there is a serious risk that Mr. Teixeira would be willing to aid a foreign government to the detriment of the United States. The government does not allege that he shared national security information with the intent to harm the United States or benefit a foreign adversary because of some ideology. Instead, the government alleges that Mr. Teixeira shared national security information amongst members of private online communities, many of whom were teenagers. Thus, the argument that Mr. Teixeira is now willing to engage with a foreign adversary to harm the United States is unduly speculative and without support in the record. Moreover, there is no evidence showing that Mr. Teixeira is willing to abandon the United States, and his community of North Dighton, in order to become a lifelong international fugitive in an unidentified foreign country. Without any evidence demonstrating that Mr. Teixeira is willing to aid a foreign adversary, or abandon the United States as a fugitive, the

government cannot establish that he is a serious risk of being recruited by a foreign adversary.

The government also baselessly speculates that Mr. Teixeira could still have access to top-secret documents or that he could be valuable to a foreign government simply by virtue of what he knows. Regarding documents, the government has not presented any evidence to justify its assertion that Mr. Teixeira may still have access to documents or information. Instead, the government seized electronic devices and conducted a thorough search of his mother and father's residences, which failed to produce any evidence demonstrating that a trove of top-secret information might still exist.

Additionally, the speculation that Mr. Teixeira is a flight risk by virtue of what he knows is squarely undermined by the government's reasoned decision not to seek pretrial detention in other espionage cases, including most recently for either former President Donald Trump or his personal aid, Waltine Nauta, both charged with, among other things, mishandling classified national security information and conspiracy to obstruct justice. (Exhibit 3, Trump Indictment, Doc. No. 77-3; Exhibit 4, Trump Arraignment Transcript, Doc. No. 77-4). There, the government specifically acknowledged that former President Trump had "access to the most sensitive classified documents and national defense information gathered and owned by the United States government[.]" (Doc. No. 77-3, ¶ 1). The government alleges that "after his presidency [former President] Trump retained classified documents originated by … multiple [United States Intelligence Community] members and other executive branch departments and agencies[.]" (Doc. No. 77-3, ¶ 21). Additionally, the government alleges that Nauta obstructed justice by concealing classified documents from a federal grand jury and provided false statements to the FBI during its investigation of his conduct (Doc. No. 77-3, ¶¶ 33-36, 38), and that in doing so he was aware the documents were classified. (*e.g.*, Doc. No. 77-3, ¶ 31). Accordingly, former President Trump and

Nauta, who worked for Trump both in the White House and after his presidency (Doc. No. 77-3, ¶ 9), have knowledge of the most sensitive national security information. This information would be invaluable to any foreign adversary. Nevertheless, the government—without any suggestion that the information known to them could make them a serious risk of flight—determined that their retained knowledge did not pose a serious risk of flight and advocated for their release on personal recognizance and without restriction. (Doc. No. 77-3, ¶¶ 13-22).

Additionally, former President Trump and Nauta also possess extraordinary means to flee the United States. Former President Trump and The Trump Organization own properties in multiple foreign countries, and former President Trump has access to a private plane. Yet, the risk of flight posed by their knowledge of national security information, and their abnormal ability to flee, didn't even result in a request that either surrender their passport. The government's disparate approach to pretrial release in these cases demonstrates that its argument for Mr. Teixeira's pretrial detention based on knowledge he allegedly retains is illusory.

The reasoned approach to release in the former president's case is not alone. In *United States v. Kendra R. Kingsbury* (4:21-cr-00101-SRB (W.D. Mo)), the defendant, Kendra Kingsbury, was a former FBI Agent who retained over 20,000 documents in her personal residence that originated from either the FBI or some other government agency—386 of which were classified. (Exhibit 5, Kingsbury Sentencing Memorandum, Doc. No. 77-5, pgs. 3-4). The documents included "sensitive … classified national defense information[.]" (Doc. No. 77-5, pg. 3). The government claimed that during the twelve years Kingsbury held a security clearance, she "initiated searches in classified FBI databases utilizing information obtained from the sensitive and classified government materials discovered in [Kingsbury's] residence." (Doc. No. 77-5, pg. 4). The government makes similar claims against Mr. Teixeira here. (Doc. No. 19, pgs. 10, 12).

6

However, unlike Mr. Teixeira, Kingsbury was also alleged to have made repeated and unexplained contacts with the subjects of FBI counterterrorism investigations, and that on one occasion, she had contact with a foreign national under circumstances that led her to believe her laptop had been compromised. (Doc. No. 77-5, pgs. 5-7). Despite the national security information still known to Kingsbury, and her unexplained contact with counterterrorism suspects, the government did not seek pretrial detention at her Rule 5 hearing. (*See* Doc. No. 2, at docket number 6:21-mj-06081-KGG (D. Kan.); Exhibit 6, Kingsbury Pretrial Conditions, Doc. No. 77-6).

The government also recently declined to seek pretrial detention for Robert Birchum (Docket Number 8:23-cr-00032-KKM-TGW-1 (C.D. Fla.), a twenty-nine-year veteran of the Air Force who was convicted for retaining more than three hundred classified documents and files at his residence. (Exhibit 7, Birchum Release Conditions, Doc. No. 77-7; Exhibit 8, Birchum Plea Agreement, Doc. No. 77-8). According to the government, Birchum "worked in various jobs in intelligence, including as an Intelligence Officer and, ... [as] Chief of Combat Intelligence for a certain Air Force group." (Doc. No. 77-8, pg. 17). The government suggested that the amount of information possessed by Birchum was both "staggering" and "of the greatest sensitivity" to national security. (Exhibit 9, Birchum Sentencing Memorandum, Doc. No. 77-9, pgs. 9-10). Yet, the government did not believe that the information known to Birchum made him a serious risk of flight by virtue of what he knows. If the vast information known to Birchum does not make him a serious risk of flight, neither does any information known to Mr. Teixeira, who, unlike Birchum, has never served as an Intelligence Officer or the Chief of any intelligence group within the Air Force.

Based on the foregoing, the government's argument for detention under (f)(2)(A) fails to establish that he is a serious risk of flight. The government has not presented sufficient evidence

to demonstrate that Mr. Teixeira is likely to flee the country and become an international fugitive. Instead, it has crafted a hypothetical scenario in which it speculates that an unidentified adversary might smuggle Mr. Teixeira out of the country. Considering that there is actual evidence demonstrating that Mr. Teixeira has neither the desire nor the ability to become an international fugitive, there is simply no basis to find that Mr. Teixeira is a serious risk of flight in this case.

## II.   The government is not entitled to a detention hearing under 18 U.S.C. § 3142(f)(2)(B) because Mr. Teixeira is not a serious risk of obstruction of justice.

To justify a detention hearing under (f)(2)(B), the government must prove that there is a "serious risk" that the defendant "will obstruct or attempt to obstruct justice[.]" 18 U.S.C. § 3142(f)(2)(B). This requires proof that there is a serious risk that the defendant will obstruct the present judicial proceeding if released. *See Ploof*, 851 F.2d at 11 (holding that the BRA was not intended to "safeguard a ... proceeding unconnected to the federal proceeding that has given rise to defendant's bail hearing"); *see also United States v. Madoff*, 586 F.Supp.2d 240, 250 (S.D.N.Y. 2009) (holding that "[t]he statute[] ... is always looking forward" and that "the Government needs to show that there is a serious risk of [obstruction] ... going forward").

Mr. Teixeira poses no serious risk of obstructing justice. The government performed a thorough search of his mother and father's homes and seized electronic devices. Thus, there is no evidence that Mr. Teixeira has access to any computer, device, or hard drive that would have any bearing on the integrity of the government's investigation or this proceeding. Moreover, the government's seizure of Mr. Teixeira's computers means that he no longer has access to any member of his former online communities. Because of this, he has no legitimate means of influencing another's participation in this case. Finally, some of the witnesses involved here are Mr. Teixeira's superior officers in the Air National Guard. It would be illogical to suggest that Mr. Teixeira can interfere with their participation in this proceeding.

The government argues that Mr. Teixeira is a future risk of obstruction by alleging that he destroyed electronic devices prior to his arrest, and that he wrote to some in his online communities and told them not to talk to anyone who may ask about the national security information. However, the government has not presented sufficient evidence showing that Mr. Teixeira would engage in such behaviors moving forward, *or that he has the ability to do so*. Mr. Teixeira can no longer access the electronic devices seized by the government. Moreover, it is believed that many of the forums where Mr. Teixeira allegedly shared national security information have been shut down. Finally, as the complaint affidavit makes clear, it is reasonable to believe that any identified individual from these online forums with pertinent knowledge have already been contacted by law enforcement. Accordingly, the government cannot demonstrate that Mr. Teixeira poses any serious risk of engaging in any future obstructive acts like those it alleges have already taken place.

Again, the government's decision not to seek pretrial detention for former President Trump or Nauta undermines its argument that Mr. Teixeira poses a serious risk of obstruction here. Former President Trump and Nauta are both charged with obstruction of justice arising out of their attempts to disrupt their present judicial proceedings. (Doc. No. 77-3, ¶¶ 78-96). Yet, the obstructive acts alleged did not present a serious risk that either would attempt to obstruct justice moving forward. Instead, it was the magistrate—not the government—who raised the question of prohibiting witness contact. (Doc. No. 77-4, pgs. 14-15). Because there is no serious risk that former President Trump or Nauta will obstruct justice in their case, then there is no serious risk that Mr. Teixeira will attempt to obstruct justice here. Again, the disparate approach to pretrial release in these cases exposes that the government's argument for Mr. Teixeira's detention on this basis is illusory.

**III.      In the alternative, the detention factors favor Mr. Teixeira's release.**

If the government proves that it is entitled to seek detention under (f)(2), the Court may still only order pretrial detention if it finds "that no condition or combination of conditions will reasonably assure the appearance of [Mr. Teixeira] as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). In determining whether there are conditions of release that will reasonably assure a defendant's appearance and the safety of the community, courts must consider the factors enumerated under 18 U.S.C. § 3142(g), including the nature and circumstances of the offense charged, the weight of the evidence, the history and characteristics of the defendant, and the nature and seriousness of the danger that the defendant's release would pose.

The (g) factors do not apply equally when determining whether conditions will reasonably mitigate a serious risk of flight or a serious risk of obstruction. For one, dangerousness alone cannot justify pretrial detention for risk of flight. *See Himler*, 797 F.2d 156, 160 (3rd Cir. 1986). Additionally, while a "serious risk" of obstruction of justice may trigger the government's right to seek detention under § 3142(f)(2)(B), obstruction is not itself a ground for pretrial detention. *See* 18 U.S.C. § 3142(e) (authorizing detention only if no conditions will reasonably assure the appearance of the person or the safety of any person or the community). For this reason, the Court must conduct an independent analysis of the (g) factors to determine whether a set of conditions will reasonably mitigate the risk of flight under (f)(2)(A) or risk of obstruction under (f)(2)(B).

### a.  Release conditions exist to reasonably assure Mr. Teixeira's presence at trial.

The government must prove by a preponderance of the evidence that no set of conditions will "reasonably assure" Mr. Teixeira's presence when required. *See United States v. DiGiacomo*, 746 F.Supp. 1176, 1180-81 (D. Mass. 1990). The statute only requires a reasonable assurance that a person will appear, not a guarantee. *See United States v. Portes*, 786 F.2d 758, 764 n.7 (7th Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); *see also Tortora*, 922 F.2d at

884 (holding that the BRA does not require a guarantee when applied to public safety). Moreover, it is well established, and conceded by the parties (Doc. No. 37, pg. 19; Doc. No. 77-2, pg. 18, ¶¶ 7-9), that a defendant's danger to the community cannot alone justify pretrial detention on risk of flight grounds. *See Byrd*, 969 F.2d at 109-70; *Ploof*, 851 F.2d at 11; *Himler*, 797 F.2d at 160.

Mr. Teixeira proffers that a combination of the of the following conditions sufficiently mitigate any risk of flight that might be present: (1) release to Mr. Teixeira's father, Jack Teixeira Sr., as third-party custodian; (2) confinement to his residence unless in the presence of his father, mother, step-father, Air Force personnel, or counsel; (3) location monitoring; (4) no access to the internet or possession of any internet capable device that is not password protected from access to the internet except under the supervision of his father, Air Force personnel, or counsel; (5) no direct or indirect contact with any witnesses or potential witnesses, or any member or former member of Mr. Teixeira's online communities; and (6) a bond in an amount of $20,000 or bond secured by either or both homes owned by Mr. Teixeira's parents.

### i. Nature and circumstances of the offense.

The nature and circumstances of this case demonstrate that any alleged risk of flight can be mitigated through a combination of release conditions. The acts described in the Complaint consist of Mr. Teixeira's alleged removal and posting of documents to a private online community. There is no allegation in the record that Mr. Teixeira had any intent for these documents to become widely available across the internet or that he intended to cause injury to the United States or aid a foreign adversary. Thus, there is no evidence that, if released, Mr. Teixeira would have any ideological desire or ability to commit any act like those alleged by the government.

These circumstances illustrate that the conditions proposed would reasonably assure his presence at trial. Even if Mr. Teixeira had the ability to flee, which he does not, there is no evidence

11

showing that he has any ideological desire to undermine the Court's pretrial conditions and become a fugitive. Additionally, by not fleeing prior to his arrest, Mr. Teixeira evinced a willingness to submit to law enforcement without pretrial conditions. As such, the Court has ample reason to find that Mr. Teixeira will continue to appear for court when required, and the Court's ability to impose release conditions upon Mr. Teixeira only strengthens that assurance. And the Court can prohibit— as it does in cases where access to the internet is a concern—Mr. Teixeira from accessing the means (*i.e.*, the internet) through which the leaks allegedly occurred. The Court also can also prohibit him from contacting any person with whom the documents were allegedly shared.

Additionally, appointing Mr. Teixeira Sr. as third-party custodian would mean that the Court need not rely solely on Mr. Teixeira's word that he would appear for court. For Mr. Teixeira to flee in the sensational manner the government suggests, he would need access to a sophisticated means of communicating with a foreign adversary. Because of this, Mr. Teixeira would need to acquire an electronic device that established two-way communication with a foreign entity and ensure that neither his father, nor probation, discover that device for a period long enough to plan and execute a clandestine escape. Ordering that Mr. Teixeira be confined to his father's home is more than sufficient to mitigate any risk that such clandestine activity would occur. Mr. Teixeira Sr. is reasonably capable of monitoring his 21-year-old son to ensure that he does not engage in intricate acts of espionage from his childhood bedroom. This is particularly true here because Mr. Teixeira Sr.'s home is small, he maintains complete control over what internet capable devices can connect to the home's Wi-Fi network, and monitors his house 24/7 with Ring cameras (Exhibit 10, Exterior Photos of Ring Cameras, Doc. No. 77-10).

In addition, Mr. Teixeira's mother and father have both agreed to post their homes as a bond in this case. Mr. Teixeira is close with his parents and has lived with at least one of them for

nearly his entire life. Moreover, Mr. Teixeira's mother, father, stepfather, and other relatives, have all attended Mr. Teixeira's court appearances—demonstrating they are committed to supporting him through these proceedings. If Mr. Teixeira were to flee, he would destroy his parents' financial stability, rob them of their homes, and betray the support they have shown. Mr. Teixeira is not reasonably likely to force them to suffer financial ruin.

The government attempts to argue that Mr. Teixeira's alleged dishonesty means that he cannot be trusted to abide any set of pretrial conditions. However, the government's decision not to seek pretrial detention for Kingsbury and Birchum squarely undermines this argument. At the hearing before the Magistrate Judge, the government produced copies of the agreements Mr. Teixeira signed prior to obtaining his security clearance—arguing that his alleged violation of those agreements meant that no conditions could reasonably assure his compliance with the court's pretrial conditions. (Doc. No. 19, pg. 4; Doc. Nos. 19-1 through 19-3). However, in Kingsbury's case, the government similarly alleged that she "signed multiple employment agreement forms" regarding "the rules and policies that applied to … classified material[,]" and also that she lied to the FBI about her attempts to destroy documents during its investigation. (Doc. No. 77-5, pgs. 3, 6-7). Additionally, Birchum also signed non-disclosure agreement's relating to his security clearance (Doc. No. 77-8, pgs. 20-21; Doc. No. 77-9, pgs. 5-6), and the government alleged that "his execution of [the] NDAs' meant that he knew … he was not authorized to possess or retain those materials in his house." (Doc. No. 77-8, pgs. 22-23).[1] Because these alleged unkept promises

---

[1] The government also alleged that, as evidenced by his training and signature on NDAs, Birchum "fully understood the potential damages to which he was exposing his country and its military and intelligence apparatus, yet he selfishly chose to continue mishandling classified information year after year, with no discernable regret until his criminal acts were eventually brought to light." (Doc. No. 77-9). The government attempts to present a similar argument to advocate for Mr. Teixeira's pretrial detention. (Doc. No. 77-2, pgs. 21-23). If such alleged dishonesty was insufficient to detain Brichum pretrial, it is likewise insufficient to detain Mr. Teixeira here.

failed to establish that no set of pretrial conditions would reasonably assure Kingsbury or Birchum's presence at trial, the government cannot rely on similar allegations to argue that Mr. Teixeira will refuse to abide by conditions here.

The government also argues that the seriousness of the case further supports Mr. Teixeira's pretrial detention. However, the First Circuit has counseled that the seriousness of criminal allegations does not itself inform whether the circumstances of the offense justify pretrial detention. *See, e.g., United States v. Edson*, 487 F.2d 370, 372 (1st Cir. 1973) (discouraging an instance where "[t]he seriousness of the crime … may have distracted the magistrate's attention from the priorities established by Congress by the Bail Reform Act"). Instead, courts must consider whether the seriousness of the allegations indicate that a defendant poses a risk of flight that cannot be mitigated through release conditions.

Additionally, the seriousness of the offense also discredits the government's theory that Mr. Teixeira could be enticed to flee by a foreign adversary. The maximum penalty on any one count in the indictment is ten years. *See* 18 U.S.C. § 793. Although, if convicted, different counts may be ordered to run consecutive, it is overly speculative to suggest that Mr. Teixeira will receive the functional equivalent of a life sentence. It is therefore unreasonable to suggest that the seriousness of the offense could prompt Mr. Teixeira to abandon his home and family, for life, when the alternative presents less severe consequences.

### ii. Weight of the evidence.

Courts have recognized that the weight of the evidence is the least significant detention factor. *See United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (citing *United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972)). Additionally, to the extent that the weight of the evidence is relevant, it is only relevant if it shows whether a defendant is likely to make themselves

unavailable at trial. *See Edson*, 487 F.2d at 372 (holding that "[u]ntil a defendant has been convicted, the nature of the offense, as well as the evidence of guilt, is to be considered only in terms of the likelihood of his making himself unavailable for trial"); *see also United States v. Lizardi-Maldonado*, 275 F.Supp.3d 1284, 1292 (D. Utah 2017) ( "[t]he likelihood of conviction by itself has no bearing on the pretrial release decision").

Any characterization of the weight of the evidence alleged against Mr. Teixeira is both premature and irrelevant to whether he will make himself available at trial. Even if the government's assessment of the weight of the evidence is accurate, it fails to demonstrate that he is a legitimate flight risk because of that evidence.

### iii.  History and characteristics of Mr. Teixeira.

Under the factor, the BRA allows the Court to consider Mr. Teixeira's "present character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings[.]" 18 U.S.C. § 3142(g)(3)(A).

Mr. Teixeira is 21 years old, has no prior criminal history, modest financial resources, and is a lifelong resident of Massachusetts. These extensive community ties and lack of serious financial resources make it exceedingly likely that the proposed release conditions will reasonably assure Mr. Teixeira's presence at trial. Indeed, it is unreasonable to suggest that, given Mr. Teixeira's age and ties to Massachusetts, he would be willing to abandon his home and family to live as a fugitive in an unidentified foreign country. This is particularly true here because Mr. Teixeira's charges are not likely to result in lifelong estrangement from his family and country.

Additionally, Mr. Teixeira Sr.'s home is specially equipped to serve as the location for Mr. Teixeira's residence during pretrial proceedings. The home has three points of entry, each of which

is monitored 24/7 by a Ring camera. (Doc No. 77-10). Any movement at any door immediately alerts to Mr. Teixeira's Sr.'s cellphone and preserves a record of that activity. Additionally, the interior of the home contains a separate camera that Mr. Teixeira Sr. installed during Mr. Teixeira's adolescence to ensure he was home after school. The camera previously allowed Mr. Teixeira Sr. to check in on Mr. Teixeira while Mr. Teixeira Sr. was at work. It can again ensure that Mr. Teixeira Sr. is able to exercise his duties as third-party custodian at all times, even while at work. This, combined with any location monitoring ordered by this Court, renders Mr. Teixeira's home a uniquely suitable location for Mr. Teixeira's pretrial release.

Another condition that is particularly relevant here is that Mr. Teixeira can be prohibited from accessing any internet capable device. This limitation will prevent Mr. Teixeira from accessing the means through which he allegedly shared documents. It will also prevent him from contacting any member of his former online communities or some unidentified foreign adversary. Mr. Teixeira Sr. is again well equipped to ensure compliance with this special condition. Mr. Teixeira Sr. still possesses the same internet protocols he did when Mr. Teixeira was young, which include locks and controls on the house Wi-Fi. This allows Mr. Teixeira Sr. to monitor all internet activity in his home and prohibit any device that he does not control from accessing its network.

The government attempts to argue here that there is no guarantee that these pretrial conditions will ensure Mr. Teixeira will not access the internet, particularly because he is an IT specialist. However, the BRA does not demand guarantees, only reasonable assurances that a defendant will appear for court. Thus, even if Mr. Teixeira were to attempt to subvert network controls or obtain an internet capable device, the pretrial conditions all reasonably assure that those attempts will be discovered. Indeed, Mr. Teixeira Sr.'s home is small and affords Mr. Teixeira little to no privacy, even in his small bedroom. It is reasonably likely that Mr. Teixeira Sr. will

uncover any attempts by Mr. Teixeira to subvert his pretrial conditions under these circumstances. Finally, Mr. Teixeira's mother and father have also agreed to post their separate homes as security for whatever reasonable bond amount that the Court might require. This security provides the Court with additional assurance that Mr. Teixeira and his parents will make every effort to ensure that Mr. Teixeira complies with his pretrial release conditions, and Mr. Teixeira is not reasonably likely to destroy his family's financial stability by becoming a fugitive.

The government has also argued that Mr. Teixeira's modest financial resources could give him an incentive to accept payment and recruitment by a foreign adversary. (Doc. No. 19, pg. 11). However, the government relies solely on speculation and conjecture to suggest that some unknown entity would be willing to financially support Mr. Teixeira in exchange for information. There is no evidence showing that Mr. Teixeira is of such value that a foreign adversary would be willing to smuggle him out of the country and pay him for information. There is also no evidence to suggest that any financial incentive offered would be sufficient to convince Mr. Teixeira to abandon his home and financially ruin his family.

The government also attempts to argue that Mr. Teixeira poses a risk of flight because "there is nothing to suggest that—like others before him—[Mr. Teixeira] would not accept the opportunity to flee" if he were aided by a foreign adversary or "ideological supporter." (Doc. No. 19, pg. 12). However, the government bears the burden of proving that Mr. Teixeira poses an actual risk of flight, and that no combination of conditions will reasonably assure his appearance. The government's argument that nothing in the record shows that Mr. Teixeira *wouldn't* flee obfuscates that burden because it fails to establish that Mr. Teixeira is likely to flee in the first place. The government cannot justify pretrial detention by criticizing Mr. Teixeira for failing to prove that some imagined scenario will not occur.

Additionally, Mr. Teixeira's history and characteristics plainly distinguish him from "others before him." For one, the only "other" the government has referenced is Edward Snowden (Doc. No. 77-2, pg. 56, ¶¶ 1-4). Unlike Mr. Teixeira, Mr. Snowden had a long intelligence career, working for both the CIA and NSA. (Exhibit 11, Snowden Civil Complaint, Doc. No. 77-11, ¶¶ 1, 5, 16, 32). Moreover, Mr. Snowden explicitly considers himself a whistleblower, stating that he leaked national security information to inform citizens of the United States' mass surveillance programs. (Doc. No. 77-11, ¶¶ 58-67, 72). Finally, Mr. Snowden fled the country prior to his arrest, he was never subject to any detention hearing, and his flight involved a coordinated plan to seek asylum in other countries. *See* White House Daily Briefing, 6/24/2013 (accessible at https://obamawhitehouse.archives.gov/the-press-office/2013/06/24/daily-briefing-press-secretary-jay-carney-6242013).

In addition, courts have granted pretrial release for other defendants charged with serious allegations of violations of the Espionage Act. Mr. Teixeira submits a list of other cases in which courts have approved release or the government did not seek detention. (Exhibit 12, Espionage Act Cases, Doc. No. 77-12). In many instances, the defendants held a vast knowledge of classified information because of their work for the Department of Defense, Department of State, Central Intelligence Agency, Federal Bureau of Investigation, or the Executive Office of the President of the United States. These cases demonstrate that detention in espionage cases is not automatic, even though espionage defendants all could theoretically flee the United States to benefit a foreign adversary.

### iv. Nature and seriousness of the danger to any person or the community.

The government argues that Mr. Teixeira's release would endanger national security and the community in general. However, neither argument addresses whether Mr. Teixeira poses a risk

of flight, or whether conditions will reasonably assure his appearance at trial. Again, it is well established that dangerousness alone cannot justify pretrial detention when the government seeks detention for risk of flight. *See Byrd*, 969 F.2d at 109-70; *Ploof*, 851 F.2d at 11; *Himler*, 797 F.2d at 160. Therefore, Mr. Teixeira's alleged dangerousness must be viewed through the prism of whether such makes him a flight risk, and whether that risk can be mitigated through pretrial release conditions. The government has again failed to relate Mr. Teixeira's alleged dangerousness to the only question relevant under the BRA: whether Mr. Teixeira is a risk of flight that cannot be mitigated through release conditions. Because of this, the government has failed at the outset to prove that Mr. Teixeira's alleged dangerousness justifies his pretrial detention.

The government also greatly overexaggerates Mr. Teixeira's risk to national security. As outlined above, Mr. Teixeira does not pose a serious risk to national security because he lacks both the means and ideological desire to engage with a foreign adversary to harm the United States. In addition, the government's decision not to seek pretrial detention for former President Trump, Nauta, Kingsbury, or Birchum, also demonstrates that a person's potential risk to national security does not alone justify pretrial detention in Espionage Act cases. The material in these cases involved the most sensitive information our government possesses.[2] Despite this, each was released subject to adequate, often minimal, pretrial conditions. (Doc. Nos. 77-6, 77-7; Exhibit 13, Trump Bond Conditions, Doc. No. 77-13). If the grave risk to national security that the government

---

[2] *See* Doc. No. 77-3, ¶¶ 1, 3 (noting that "unauthorized disclosure of [the] classified documents" former President Trump allegedly retained "could put at risk the national Security of the United States, foreign relations, the safety of the United States military, and human sources and the continued viability of sensitive intelligence methods"); Doc. No. 77-5, pg. 4 (stating that the "classified information in [Kingsbury's] home" involved "some of the government's most important and secretive methods of collecting essential national security intelligence"); Doc. No. 77-9, pg. 9 stating "many of the secrets [Birchum] removed from secure locations were of the greatest sensitivity[.]"

alleged in these cases could be adequately mitigated by pretrial conditions, so too can the risk alleged posed by Mr. Teixeira.

The government also overstates Mr. Teixeira's risk to the community. The government relies heavily on online comments purportedly posted by Mr. Teixeira concerning war and guns to argue that he is a danger to the community generally. However, there is no evidence showing that Mr. Teixeira ever carried his online conversations into reality or ever endangered any person in his community. Additionally, these comments lack important context at this stage. Although some of Mr. Teixeira's reported online activity is concerning in the abstract, under the BRA framework, there are release conditions available that exceedingly mitigate any risk to the community that Mr. Teixeira's online activity may suggest.

The government also portrays Mr. Teixeira as a danger based upon a reported incident dating to his sophomore year in high school. (Doc. No. 19, pg. 16). This incident was thoroughly investigated, some of those interviewed disputed the accounts, and Mr. Teixeira returned to school within a handful of days, after completing a professional psychiatric evaluation. No similar incidents occurred during his remaining two years in high school.

The government's arguments regarding Mr. Teixeira's prior access to firearms are also misplaced. For one, law enforcement seized all of Mr. Teixeira's firearms, and Mr. Teixeira Sr. has removed his own lawfully owned firearms from his residence in anticipation of Mr. Teixeira's release (Doc. No. 77-2, pg. 7, ¶¶ 10-15, pg. 15, ¶¶ 1-17). Secondly, the government's previous exhibits regarding this point showed posed airsoft guns in his father's bedroom, not inappropriately stored firearms. (Doc. No. 19-6, pg. 2). Instead, Mr. Teixeira has demonstrated that he stored his own lawful firearms responsibly and in accordance with Massachusetts law. Therefore, the Court can be reasonably assured that Mr. Teixeira would have no access to firearms upon his release and

his previous lawful firearm possession does not inform whether there are release conditions sufficient to secure his presence when required.

### b. There are release conditions sufficient to mitigate the risk to the community that any future obstruction of justice might cause.

The government also moved for detention on the grounds that Mr. Teixeira is a serious risk of obstruction of justice. However, before addressing the 3142 (g) factors regarding obstruction, it must be noted that obstruction is not a basis upon which a defendant can be detained pretrial. Indeed, the plain language of the BRA only permits pretrial detention if there are "no condition or combination of conditions [that] will reasonably assure the appearance of the person" or "the safety of any other person and the community[.]" 18 U.S.C. § 3412(e). Therefore, although 18 U.S.C. § 3142(f)(2)(B) entitles the government to a *hearing* on the grounds that a person is a serious risk of obstruction, Mr. Teixeira is still entitled to pretrial release unless the nature of that obstruction is such that would endanger another or the community. *See United States v. Demmler*, 523 F.Supp.2d 677, 681 (S.D. Ohio 2007) ("This provision plainly requires consideration of the defendant's dangerousness, but focuses that inquiry not on the general risk of harm that he may pose to society, but on whether he will seek to subvert justice, through violent means or not").

Courts do not agree on what burden of proof the government must meet when seeking detention on obstruction of justice grounds. *See United States v. Lamar*, 600 F.Supp.3d 714, 721 (E.D. Ky. 2022) (collecting cases). The United States District Court for the District of Massachusetts has held, without analysis, that the standard on obstruction is a preponderance of the evidence. *See United States v. Mehanna*, 669 F.Supp.2d 160, 160 (D. Mass. 2009). However, other courts, including the First Circuit, have required the government to prove that obstruction of justice warrants detention by clear and convincing evidence. *See United States v. Jones*, No. 99-1682, 1999 WL 668516, *3 (1st Cir. Aug. 9, 1999) (unpublished) (concluding that there was "clear

21

and convincing" evidence of a serious risk that defendant would attempt to obstruct justice); *United States v. Acevedo-Ramos*, 755 F.2d 203, 209 (1st Cir. 1985) (affirming detention decision, concluding that "the evidence that that release of [the defendant] would have posed an unacceptable risk of obstruction of justice was 'clear and convincing.'"); *see also United States v. Gamble*, 810 Fed.Appx. 7, 8 (D.C. Cir. 2020) (holding that "the court did not adequately explain … why it found by clear and convincing evidence that [defendant] would obstruct justice").

This Court should apply the clear and convincing standard here and reject the "ostensibly minority view" that obstruction need only be proved by a preponderance of the evidence. *See Lamar*, 600 F.Supp.3d at 721 (alterations omitted). Indeed, although the standard of proof on obstruction of justice grounds is not well-explained in this Circuit, the First Circuit's precedent is to nonetheless require proof of the likelihood of obstruction by clear and convincing evidence. *See Acevedo-Ramos*, 755 F.2d at 209; *see also Jones*, No. 99-1682, 1999 WL 668516 at *3.

Despite the foregoing, the government argued before the Magistrate Judge that obstruction of justice need only be proved by a preponderance of the evidence. The government also argued that obstruction of justice provided an independent ground upon which detention could be ordered, regardless of whether that risk of obstruction posed a risk to the community. (Doc. No. 19, pg. 8). Mr. Teixeira did not argue this point before the Magistrate Judge. Thus, the Magistrate Judge adopted the government's arguments and held that obstruction of justice provided an independent ground for detention that need only be proven by a preponderance. (Doc. No. 37, pg. 6). However, this Court conducts a *de novo* review of the Magistrate Judge's bail decision and need not defer to the Magistrate's decision on any issue of law or fact. Nevertheless, Mr. Teixeira will briefly address the Magistrate Judge's decision in anticipation of the government's opposition.

   i. **The Magistrate Judge's decision misapplied both case law and the plain language of the BRA.**

The Magistrate Judge's decision involved two errors of law: (1) that risk of obstruction of justice is an independent ground upon which detention can be ordered; and that (2) detention based on obstruction of justice need only be proven by a preponderance of the evidence.

On the first point, the Magistrate Judge observed that, "by its plain terms, section 3142(g) does not include obstruction of justice" as a ground for detention. (Doc. No. 37, pg. 6). However, the Judge cited to *Acevedo-Ramos* (cited *supra*), without analysis, and held that obstruction of justice alone could justify pretrial detention. (Doc. No. 37, pgs. 6, 21-22). This conclusion was made in error and should be rejected here on *de novo* review.

The defendant in *Acevedo-Ramos* was detained pretrial because the district court concluded that "if released, he may try to tamper with his trial, by, for example, interfering with witnesses or jurors or otherwise obstructing justice[.]" *Acevedo-Ramos*, 755 F.2d at 204. However, that conclusion was based in part on evidence that the defendant had attempted to locate witnesses and kill them in prior judicial proceedings. *Id*. Because of this, the district court held that no "[c]ondition or combination of conditions [could] assure the safety of the government's witnesses and the community, or insure the proper administration of justice." *Id*. at 206.

The Magistrate Judge's reliance on *Acevedo-Ramos* was misplaced. Because the obstruction in *Acevedo-Ramos* specifically involved the safety of witnesses, it cannot be said that *Acevedo-Ramos* stands for the general proposition that obstruction provides an independent ground for pretrial detention. Moreover, in *Ploof*, decided after *Acevedo-Ramos*, the First Circuit held that the BRA involved a two-step analysis: whether "there is a serious risk defendant will engage or attempt to engage in [obstruction of justice] *and* that no condition or combination of conditions set forth in § 3142(c) will *reasonably* assure the safety of any other person and the community." *Ploof*, 851 F.2d at 12. Thus, under *Ploof*, it is established that obstruction of justice only justifies pretrial

detention if that obstruction poses a danger to the community.

The Magistrate's decision to adopt a preponderance of the evidence standard was also made in error. The First Circuit has clearly applied the clear and convicting standard when detention is sought on obstruction of justice grounds, *see Jones*, No. 99-1682, 1999 WL 668516, *3; *Acevedo-Ramos*, 755 F.2d at 209. Moreover, this position has been routinely adopted by other courts. *See Lamar*, 600 F.Supp.3d at 721 (collecting cases). Finally, this approach best comports with the plain language of the BRA. Indeed, since danger to the community is viewed under a "clear and convincing" standard, *see* 18 U.S.C. § 3142(f), so too must obstruction of justice—because obstruction itself is viewed through the prism of whether a defendant poses a future risk of danger.

With these proper standards in mind, Mr. Teixeira will now turn to the §3142(g) factors.

### ii.  Nature and circumstances of the offense.

The nature and circumstance of the alleged offense do not inform whether Mr. Teixeira will engage in obstruction in the future. Although the government alleges that Mr. Teixeira destroyed electronics and told members of his online community not to answer any questions, there is no indication that Mr. Teixeira will—or has the ability—to engage in any such activity moving forward. Additionally, these alleged obstructive acts fail to demonstrate that Mr. Teixeira is likely to obstruct justice through violent means or in a manner that endangers the community. Without this evidence, there is nothing to suggest that, even if Mr. Teixeira had the desire or ability to obstruct justice, he would do so through violent or dangerous means. Accordingly, there is no basis for the Court to find that Mr. Teixeira's alleged risk of obstruction poses a danger to any person or the community, and any danger to the community that arises out of this evidence is sufficiently mitigated by the proposed release conditions.

### iii.  Weight of the evidence.

24

For the reasons previously articulated, the weight of the evidence is insufficient to support detention, particularly if Mr. Teixeira is subject to stringent release conditions.

**iv.   History and characteristics of Mr. Teixeira.**

For the reasons previously articulated, the history and characteristics of Mr. Teixeira favor release.

**v.   Nature and seriousness of the danger to any person or the community.**

For the reasons previously articulated, the government is unable to meet its burden of proving by clear and convincing evidence that any "danger" Mr. Teixeira might pose to the community could not be sufficiently mitigated through the release conditions proposed herein.

## <u>Conclusion</u>

Based on the foregoing, Mr. Teixeira asks the Court to vacate the Memorandum and Order on Detention issued by the Magistrate Judge and order that he be released pretrial, subject to appropriate conditions.

Respectfully submitted,

JACK TEIXEIRA
by his attorneys

*/s/ Allen Franco*
Allen Franco

*/s/ Michael K. Bachrach*            */s/ Brendan Kelley*
Michael K. Bachrach                  Brendan Kelley
Law Office of Michael K. Bachrach
224 West 30th Street, Suite 302
New York, NY 10001                   Federal Public Defender Office
(212) 929-0592                       51 Sleeper Street, 5th Floor
                                     Boston, MA  02210
                                     (617) 223-8061

**<u>Certificate of Service</u>**

I, Allen Franco, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").


Date: <u>July 17, 2023</u>                                    <u>*/s/ Allen Franco*</u>
                                                                          Allen Franco