UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:23-cr-10159 |
| | ) | (Leave To File Granted 8/8/2023) |
| JACK DOUGLAS TEIXEIRA | ) | |

**REPLY MEMORANDUM IN SUPPORT OF**
**<u>APPEAL OF MAGISTRATE JUDGE'S ORDER ON DETENTION</u>**

*/s/ Allen Franco*
Allen Franco
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061

*/s/ Brendan Kelley*
Brendan Kelley
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061

*/s/ Michael K. Bachrach*
Michael K. Bachrach
Law Office of Michael K. Bachrach
224 West 30th Street, Suite 302
New York, NY 10001
(212) 929-0592

*Attorneys for Defendant Jack Teixeira*

Dated: August 10, 2023

i

# **TABLE OF CONTENTS**

Table of Authorities .................................................................................................................. iii

Preliminary Statement ................................................................................................................ 1

I.     Mr. Teixeira unambiguously argued before the Magistrate that he cannot be detained pretrial because he is not a serious risk of flight or obstruction. ......................................... 1

    a.    This Court conducts a *de novo* review of a contested detention order. .............................. 2

II.    The government's remaining arguments for detention should be rejected. ........................ 4

    a.    The proposed release conditions reasonably assure that Mr. Teixeira will be unable to obstruct justice moving forward. ...................................................................................... 5

    b.    The proposed release conditions reasonably assure national security. .............................. 6

    c.    The proposed release conditions reasonably assure public safety. ..................................... 9

# **TABLE OF AUTHORITIES**

**Pages**

*United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017) ........................................................ 7

*United States v. Delker*, 757 F.2d 1390 (3rd Cir. 1985) ................................................................. 4

*United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985) ................................................................... 3

*United States v. Hurtado*, 779 F.2d 1467 (11th Cir. 1985) ............................................................. 3

*United States v. Koening*, 912 F.2d 1190 (9th Cir. 1990) .............................................................. 3

*United States v. Leon*, 766 F.2d 77 (2nd Cir. 1985) ....................................................................... 4

*United States v. Maull*, 773 F.2d 1479 (8th Cir. 1985) .................................................................. 3

*United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015) ...................................................... 7

*United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988) ..................................................................... 1, 2

*United States v. Portes*, 786 F.2d 758 (7th Cir. 1985) ................................................................... 5

*United States v. Tortora*, 922 F.2d 880 (1st Cir. 1990) .................................................................. 3

**Preliminary Statement**

The government's Opposition engages in unreasonable speculation and plainly misstates Mr. Teixeira's prior legal arguments to sidestep the burdens it must meet to detain Mr. Teixeira pretrial. In particular, the government misrepresents that Mr. Teixeira unambiguously argued before the Magistrate that he cannot be detained pretrial because he is not a serious risk of flight or obstruction of justice. (Doc. No. 20, pg. 6). The government resorts to semantic arguments to avoid the fact that it cannot satisfy its burden to seek detention on these grounds. Additionally, as it has done throughout these proceedings, the government's Opposition crafts speculative and illusory arguments rather than demonstrate that no set of pretrial conditions will reasonably assure Mr. Teixeira's presence and the safety of the community. The government's failure to engage with the proper standards under the BRA, and its failure to present sufficient evidence to support its fear-stoking accusations, demonstrate that Mr. Teixeira cannot be detained pretrial.

**I.   Mr. Teixeira unambiguously argued before the Magistrate that he cannot be detained pretrial because he is not a serious risk of flight or obstruction.**

As continuously argued by Mr. Teixeira, he cannot be detained pretrial unless the government first establishes that he poses a "serious risk" of flight or obstruction of justice. *See* 18 U.S.C. §§ 3142(f)(2)(A)-(B). If such a finding is made, the Court *then* must determine whether any combination of pretrial conditions will reasonably assure Mr. Teixeira's appearance or the safety of the community. *See* 18 U.S.C. § 3142(e). It is beyond dispute that one of the § 3142(f) conditions must be present before Mr. Teixeira can be detained. *See United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) ("... the statute and its legislative history make it clear that Congress did not intend to authorize preventive dentition unless ... one of the § 3142(f) conditions for holding a

1

detention hearing exists").[1]

In his original bail memorandum (Doc. No. 20), Mr. Teixeira explicitly argued before the Magistrate, *in his introductory paragraph*, that "he is entitled to release pursuant to the least restrictive conditions because he is not currently a 'serious risk' of flight or obstruction." (Doc No. 20, pg. 1, *citing*, 18 U.S.C. § 3142(f)(2)(A)-(B)). Mr. Teixeira then dedicated an entire section of that memorandum to arguing this point (Doc. No. 20, pgs. 5-8) and his counsel repeated it at the hearing before the Magistrate. (Doc. No. 77-2, pgs. 31-32, 36-38). This is the same legal argument Mr. Teixeira presents here.

The government's suggestion that Mr. Teixeira is raising this argument now for the first time is untenable. Mr. Teixeira's position before the Magistrate was that he could not be detained pretrial because he is not a serious risk of flight or obstruction under § 3142(f)(2). Mr. Teixeira's position here is likewise that he cannot be detained pretrial because the government cannot meet its burden under (f)(2). The only difference now is that Mr. Teixeira has fully articulated the mechanics of *how* the government's failure to satisfy (f)(2) results in his inability to be detained—*i.e.*, that a detention hearing must be triggered under (f)(2) before detention may be sought and that no such right to seek detention has been triggered. *See Ploof*, 851 F.2d at 11.

The government's efforts to avoid the requirements of § 3142(f)(2) is both disingenuous and revealing. Regardless of immaterial nomenclature, it is beyond dispute that Mr. Teixeira argued before the Magistrate that he could not be detained on § 3142(f)(2) grounds. The government's attempt to exploit semantic differences distracts from the obvious conclusion that Mr. Teixeira is not a serious risk of flight or obstruction and thus he *cannot* be detained pretrial.

---

[1]  The government does not dispute that it cannot seek detention under 18 U.S.C. § 3142(f)(1).  As such, only subsection (f)(2) is at issue in this case.

### a. This Court conducts a *de novo* review of a contested detention order.

Even if the semantic differences between Mr. Teixeira's presentations means that he failed to preserve the issue of whether a "detention hearing" could be held, this Court still conducts a *de novo* review of whether Mr. Teixeira should be detained, which requires the Court to determine whether the government is entitled to seek detention under § 3142(f)(2). Indeed, the First Circuit has clearly held that "the proper approach is for the district court to engage in *de novo* review of [a] contested [detention] order." *United States v. Tortora*, 922 F.2d 880, 883 n.4 (1st Cir. 1990). For reasons fully articulated in his previous memorandum, Mr. Teixeira cannot be detained pretrial because he fails to satisfy either condition set forth in § 3142(f)(2) and the Court should vacate the Magistrate's Order on Detention on *de novo* review.

The government has cited various decisions in this District in an attempt to temper this *de novo* standard of review. However, Circuit Court authority, which was cited by the First Circuit in *Tortora*, best articulates the proper scope of this Court's review of a detention order. The Court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference. If the performance of that function makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate." *United States v. Koening*, 912 F.2d 1190, 1193 (9th Cir. 1990) (cited by *Tortora*, 922 F.2d at 883 n.4). Thus, "the ultimate determination of the propriety of detention is ... to be decided without deference to the magistrate's ultimate conclusion." *Id*.[2] To the extent

---

[2] *See also United States v. Hurtado*, 779 F.2d 1467, 1480 (11th Cir. 1985) ("... we hold that the district court must undertake an *independent* review of these cases, enter its own findings in writing, and set for the reasons supporting its decisions"); *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985) ("To engage in meaningful *de novo* review, the district court must have available the options open to the magistrate"); *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir.

that the government suggests that this Court's review is deferential, that argument should be rejected.

Additionally, the evidence presented in this appeal is almost the same evidence presented to the Magistrate. Based on the law outlined above, it is beyond dispute that this Court makes an independent determination of the propriety of detention based upon that evidence. The only additional evidence supplied by Mr. Teixeira is a summary of the government's interview with N.S.—which was not disclosed by the government prior to the Magistrate's Order on Detention— and a specific comparison between Mr. Teixeira and other espionage defendants.[3] This Court's independent review of the propriety of detention should include this newly developed evidence. While it is within the Court's discretion to determine *sua sponte* whether to hold an evidentiary hearing under § 3142(f)(2), because the government's Opposition fails to articulate *any* argument as to why either (f)(2) condition is satisfied, Mr. Teixeira submits that the government has failed to establish that pretrial detention is permissible in the first instance.

**II.     The government's remaining arguments for detention should be rejected.**

*In the alternative*, the government's factual arguments in favor of detention should be rejected because they rely on bare speculation to suggest that no condition or combination or conditions will reasonably assure Mr. Teixeira's presence or the safety of the community. As an

---

1985) (holding that "the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release"); *United States v. Leon*, 766 F.2d 77, 80 (2nd Cir. 1985) ("... a district court should fully reconsider a magistrate's denial of bail and in ruling on a motion for revocation or amendment of a detention order should not simply defer to the judgment of the magistrate, but reach its own independent conclusion"); *United States v. Delker*, 757 F.2d 1390, 1394-95 (3rd Cir. 1985) (adopting the *de novo* review standard and explaining that the district court may make findings without deference to the magistrate).

[3]     Mr. Teixeira notes that he previously submitted a list of Espionage Act cases to the Magistrate Judge as an exhibit but had not discussed them in the substance of his brief.

initial matter, the bulk of the government's claims argue that Mr. Teixeira's alleged actions and online activity make him a threat to public safety, and there is no guarantee that any pretrial conditions will alleviate that risk. However, what the government again fails to consider is that Mr. Teixeira's alleged dangerousness is not the sole question upon which pretrial detention turns. Instead, the principal question under the BRA is whether there are release conditions that will *reasonably assure* the presence of Mr. Teixeira and the safety of the community, *not guarantee it*. *See* 18 U.S.C. § 3142(e); *United States v. Portes*, 786 F.2d 758, 764 n.7 (7th Cir. 1985).

Mr. Teixeira's argument for why the complete package of proposed pretrial conditions (Doc. No. 83, pg. 14) reasonably assures his presence and the safety of the community are fully articulated in his previous memorandum. These proposed conditions go well beyond the conditions proposed by Pretrial Services when it recommended Mr. Teixeira's release. However, Mr. Teixeira feels it necessary to respond to certain specific claims made by the government in its Opposition.

    **a. The proposed release conditions reasonably assure that Mr. Teixeira will be unable to obstruct justice moving forward.**

Obstruction of justice alone cannot justify pretrial detention. (Doc. No. 83, pgs. 24-27). Instead, Mr. Teixeira's risk of obstruction must be viewed through whether he will attempt to obstruct justice through dangerous means. The government has presented no evidence suggesting that Mr. Teixeira's risk of obstruction poses a danger to the community. Thus, it has unequivocally failed to show that Mr. Teixeira can be detained on obstruction of justice grounds.

The government also presents nothing more than speculation to suggest that Mr. Teixeira may attempt to obstruct justice if he were released. The thrust of the government's argument is that it was unable to locate a hard drive from one of Mr. Teixeira's computers, and that Mr. Teixeira allegedly made efforts to conceal evidence prior to his arrest. (Doc. No. 87, pg. 5). The government then uses these allegations to stoke an unsupported fear that Mr. Teixeira will obstruct justice

5

moving forward. Yet, the government also argues that "it is not unreasonable to infer" that prior to his arrest, Mr. Teixeira "destroy[ed] not only digital evidence, but also much of the physical evidence linking him to his crimes." (Doc. No. 87, pg. 17). Moreover, the government disclosed to defense counsel that it obtained at least ten search warrants, covering Mr. Teixeira's vehicle, cellphone, computers, internet accounts (including communications dating to when Mr. Teixeira received his security clearance), and residences, most notably the proposed release address. The government has presented no evidence from any of these searches suggesting that an undiscovered trove of evidence exists from which Mr. Teixeira could obstruct justice.

### b. The proposed release conditions reasonably assure national security.

As Mr. Teixeira has previously recognized, dangerousness alone cannot justify his detention on risk of flight grounds. (Doc. No. 83, pg. 22). However, the government again spends most of its memorandum arguing that Mr. Teixeira's alleged risk to national security justify pretrial detention. The government's argument is best summarized to be that Mr. Teixeira poses a *hypothetical* risk to the public, and he should be detained because there is no *guarantee* that he will abide by any pretrial conditions. This argument fails both because it relies on bare speculation, and because there are release conditions that *reasonably assure* the safety of the community.

The government appears to concede that Mr. Teixeira lacks the resources necessary to subvert the Court's pretrial conditions. (Doc. No. 87, pgs. 18-9) ("The Defendant's argument that he could not flee focuses on the resources that would be available to the Defendant on pretrial release, but that is not the government's concern"). Instead, the government states it is concerned "about the resources available to a multitude of foreign adversaries that want what the Defendant possesses or knows." (Doc. No. 87, pg. 24). The government again, without presenting *any* evidence suggesting that Mr. Teixeira is valuable to a foreign adversary, stokes fear that the

6

resources of foreign adversaries "are effectively limitless." (*Id*.).

This argument asks the Court to assume, without evidence, that multiple facts have been established: (1) that a foreign adversary is interested in information to which Mr. Teixeira has knowledge; (2) that a foreign adversary's interest in that information is sufficient to cause it to smuggle Mr. Teixeira out of the country; and (3) that Mr. Teixeira would be willing to share information with whichever unidentified adversary that somehow smuggles him out of the country. The government not only asks the Court to make these unsupported assumptions, but also stokes an unsubstantiated fear that these assumptions implicate "the safety of us all." (Doc. No 87, pg. 19). Yet, on the issue of whether there are release conditions that reasonably mitigate these speculated harms, the government argues only that there is no guarantee that Mr. Teixeira will abide by the Court's pretrial conditions. The government is free to speculate about the national security harms that may result if Mr. Teixeira flees the country, but it still retains its burden to show that no set of pretrial conditions will reasonably mitigate that risk.

Based on the foregoing, Mr. Teixeira's speculated risk to national security cannot justify his pretrial detention because there are release conditions that reasonably mitigate that risk. Mr. Teixeira is not likely to betray and financially ruin his family to become a lifelong fugitive, all for the benefit of a foreign adversary, and Mr. Teixeira Sr. is reasonably capable of discovering whether Mr. Teixeira is attempting to flee the country. Mr. Teixeira Sr. also has every financial incentive to report any such activity to the government. Finally, to the extent that the government is arguing that a foreign adversary may kidnap Mr. Teixeira, regardless of his intent, it is established that the risk of flight that justifies pretrial detention must be volitional. *See e.g., United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017); *United States v. Santos-Flores*, 794 F.3d 1088, 1091-92 (9th Cir. 2015).

It is also notable that the government often declines to seek pretrial detention in other Espionage Act cases, and the government's Opposition fails to discuss this fact. Every espionage defendant, from the former President to Mr. Teixeira, poses a hypothetical risk to national security by virtue of what they know, and because foreign adversaries theoretically have "effectively limitless" (Doc. No. 87, pg. 24) resources to extract them from the United States. However, the government argues without explanation that any comparisons between Mr. Teixeira and other defendants are misleading. (Doc. No. 87, pg. 18).[4] The government's refusal to engage with other espionage cases demonstrates that its arguments for detention lack context. Indeed, the government could conjure limitless theoretical harms in any case involving national defense information. Yet, despite this potential for limitless speculation, other espionage defendants are granted pretrial release. Far from being "misleading," these cases demonstrate that to detain an espionage defendant, there must be evidence showing that their hypothetical risk to national security is legitimate and cannot be reasonably mitigated through release conditions. Accordingly, even though the BRA demands individualized determinations, the Espionage Act cases cited demonstrate that the government's speculative detention arguments are inconsistent and illusory.

The government's lack of context is also observed in other areas of its Opposition. Indeed, it claims that Mr. Teixeira argued that a ten-year maximum penalty is insufficient to incentivize him to flee. However, Mr. Teixeira's argument there was not specifically related to the maximum penalty, but rather that his flight from Court would result in his lifelong estrangement from his home and family. When viewed in context, particularly that Mr. Teixeira's family is close-knit and remains supportive of him, it is not likely that Mr. Teixeira would elect to flee the country and his

---

[4] Yet, the government takes no issue with continuing to compare Mr. Teixeira to Edward Snowden, despite their obvious dissimilarities. (Doc. No. 87, pg. 19).

home, for life, when the worst-case alternative would be less severe.

This context demonstrates precisely why there are pretrial conditions that reasonably assure Mr. Teixeira's presence when required and the safety of the community. The pretrial conditions proposed, when viewed in context of Mr. Teixeira as a whole, reasonably assure that he will not financially ruin his family or choose to suffer lifelong estrangement from them, particularly when he has no discernable ideological desire to do so.

### c. The proposed release conditions reasonably assure public safety.

The government, as it did before the Magistrate, again relies on Mr. Teixeira's online activity to argue that he is a danger to the community. However, the government now highlights that Mr. Teixeira does not deny that he made certain comments in online forums and argues that these comments are troubling when combined with the fact that he searched for reports of mass shootings on government databases. (Doc. No. 87, pgs. 19-20). However, the government's argument that these comments result in a danger to the community again relies solely on speculation and asks this Court to connect dots that it cannot link through specific evidence.

For one, Mr. Teixeira's online comments were shared primarily among teenagers on a forum dedicated to war/combat-based videogames. The government endeavors to stretch these comments to insinuate that Mr. Teixeira has a present desire to physically harm others. However, the government has failed to show that Mr. Teixeira has an actual ideological desire to harm others. If there was evidence of such an ideological motive, it would be presented here. However, the government has presented only excerpted and curated comments, designed to shock one's conscience, to distract from the clear standards of the BRA. The conspicuous lack of evidence demonstrating that Mr. Teixeira's online talk reveals a motive or plan to harm others demonstrates once again that the government's suggestion that Mr. Teixeira is a threat to the public is

9

unsupported for this determination.

Moreover, the government's argument on public safety again fails to meaningfully engage with the principal question presented: whether there are pretrial conditions that reasonably ensure Mr. Teixeira's presence and the safety of the community. Regardless of how one may view Mr. Teixeira's comments or interest in firearms, the Court can be reasonably assured that he will not have access to firearms upon his release and that any attempt by Mr. Teixeira to obtain one would be discovered. The government's fear of "what if" does not alter these reasonable assurances.

Finally, the extent to which the government is attempting to justify pretrial detention on dangerousness grounds, it must do so through the lens of whether Mr. Teixeira will attempt to obstruct justice through violent means, and it must prove such dangerousness by clear and convincing evidence. The Court should reject the government's thin attempt to trojan horse an argument that Mr. Teixeira should be detained on dangerousness grounds alone. Accordingly, the Court should vacate the Magistrate's Order on Detention and order that Mr. Teixeira be released subject to the least restrictive conditions it finds appropriate.

Respectfully submitted,
Jack Teixeira
by his attorneys

*/s/ Allen Franco*
*/s/ Brendan Kelley*
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
(617) 223-8061

*/s/ Michael K. Bachrach*
Michael K. Bachrach
Law Office of Michael K. Bachrach
224 West 30th Street, Suite 302
New York, NY 10001
(212) 929-0592

**Certificate of Service**

      I, Allen Franco, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

Date: August 10, 2023                                   */s/ Allen Franco*
                                                                         Allen Franco