```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3   _____

 4   UNITED STATES OF AMERICA,            )
                                          )
 5            Plaintiff,                   )
                                          )
 6         v.                             )    Criminal Action No.
                                          )    1:23-cr-10159-IT-1
 7   JACK DOUGLAS TEIXEIRA,               )
                                          )
 8            Defendant.                   )
                                          )
 9   _____

10

11        BEFORE THE HONORABLE INDIRA TALWANI, DISTRICT JUDGE

12
                          RULE 11 HEARING
13

14
                       Monday, March 4, 2024
15                         11:01 a.m.

16

17

18

19

20
     John J. Moakley United States Courthouse
21   Courtroom No. 9
     One Courthouse Way
22   Boston, Massachusetts

23
     Robert W. Paschal, RMR, CRR
24   Official Court Reporter
     rwp.reporter@gmail.com
25
```

```
 1                    A P P E A R A N C E S

 2
        On behalf of the Government:
 3
             UNITED STATES ATTORNEY'S OFFICE
 4           BY:   JASON A. CASEY
                   NADINE PELLEGRINI
 5                 JARED C. DOLAN
             One Courthouse Way
 6           Suite 9200
             Boston, MA  02210
 7           (617) 748-3264
             jason.casey2@usdoj.gov
 8           nadine.pellegrini@usdoj.gov
             jared.dolan@usdoj.gov
 9

10           UNITED STATES DEPARTMENT OF JUSTICE
             BY:  CHRISTINA A. CLARK
11           950 Pennsylvania Avenue NW
             Washington, DC  20530
12           (202) 307-5191
             christina.clark3@usdoj.gov
13


14
        On behalf of the Defendant:
15
             LAW OFFICE OF MICHAEL K. BACHRACH
16           BY:   MICHAEL K. BACHRACH
             224 West 30th Street
17           Suite 302
             New York, NY  10001
18           (212) 929-0592
             michael@mbachlaw.com
19

20           FEDERAL PUBLIC DEFENDER OFFICE
             BY:   BRENDAN O. KELLEY
21                 GENE ALLEN FRANCO
             51 Sleeper Street
22           5th Floor
             Boston, MA  02210
23           (617) 223-8061
             brendan_kelley@fd.org
24           allen_franco@fd.org

25
```

<pre>
 1                    P R O C E E D I N G S

 2              (In open court at 11:01 a.m.)

 3              THE DEPUTY CLERK:  United States District Court is

 4    now in session, the Honorable Judge Indira Talwani presiding.

 5              This is Case Number 23-cr-10159, United States v.

 6    Jack Douglas Teixeira.  Will counsel please identify

 7    themselves for the record.

 8              MR. CASEY:  Good morning, Your Honor.  Jason Casey

 9    for the United States.

10              THE COURT:  Good morning.

11              MS. PELLEGRINI:  Good morning, Your Honor.  Nadine

12    Pellegrini for the United States.

13              THE COURT:  Good morning.

14              MS. CLARK:  Good morning, Your Honor.  Christina

15    Clark for the United States.

16              THE COURT:  Good morning.

17              MR. DOLAN:  Good morning, Your Honor.  Jared Dolan

18    on behalf of the United States.  With me at counsel table is

19    FBI Special Agent Nicholas Napoli.

20              THE COURT:  Good morning.

21              MR. BACHRACH:  Good morning, Your Honor.  Michael

22    Bachrach for the defendant, Jack Douglas Teixeira, seated to

23    my right.

24              THE COURT:  Good morning.

25              MR. KELLEY:  Good morning, Your Honor.  Brendan
</pre>

1    Kelley for Mr. Teixeira.

2             MR. FRANCO:  Good morning, Your Honor.  Allen

3    Franco for Mr. Teixeira.

4             THE COURT:  Good morning.

5             So I understand we're here for a Rule 11 hearing?

6             MR. BACHRACH:  That is correct, Your Honor.

7             THE COURT:  Ms. Marchione, if you could swear in

8    the defendant, please.

9             THE DEPUTY CLERK:  Yes, Your Honor.

10             Please rise.  Raise your right hand.

11             (Defendant duly sworn.)

12             THE DEPUTY CLERK:  Please state your name for the

13    record.

14             THE DEFENDANT:  Jack Douglas Teixeira.

15             THE COURT:  Mr. Teixeira, do you understand that

16    you are now under oath and that if you answer any of my

17    questions falsely, your answers may later be used against you

18    in another prosecution for perjury or making a false

19    statement?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  And at any time, if you need to, you

22    may consult with your counsel.

23             Mr. Teixeira, how old are you?

24             THE DEFENDANT:  I'm 22 years of age, Your Honor.

25             THE COURT:  And what education level have you

1    attained?

2              THE DEFENDANT:  A high school diploma, Your Honor.

3              THE COURT:  And as you stand here today, are you

4    under the influence of any drug or alcoholic beverage of any

5    kind?

6              THE DEFENDANT:  No, Your Honor.

7              THE COURT:  Have you taken any medicine,

8    prescription or otherwise, that could affect your ability to

9    understand these proceedings and to testify truthfully?

10             THE DEFENDANT:  No, Your Honor.

11             THE COURT:  Have you received any recent treatment

12   for any mental illnesses or psychological problems of any

13   kind?

14             THE DEFENDANT:  No, Your Honor.

15             THE COURT:  Have you received a copy of the

16   indictment, the written charges against you in this case?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  And you are charged in Counts 1

19   through 6 with willful retention and transmission of national

20   defense information in violation of 18 USC Section 793(e).

21             The classification level of the information at

22   issue in Counts 1 and Counts 3 through 6 is top secret

23   sensitive compartmented information.  The classification

24   level of information at issue in Count 2 is secret.

25             Do you understand the charges?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do you understand that you're

3    represented by counsel?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Have you fully discussed the charges

6    against you and the facts and circumstances of this

7    counsel -- of this case with your counsel?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And are you fully satisfied with the

10   counsel, representation, and advice given to you in this case

11   by your attorney?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  And to counsel, have you communicated

14   all formal offers from the prosecution to accept a plea on

15   terms and conditions that may be favorable to the accused?

16         MR. BACHRACH:  Yes, Your Honor.

17         THE COURT:  And to the government, pursuant to

18   Local Rule 116.2(b)(4), the government is required before any

19   plea to provide the defendant with a written summary of any

20   information in the government's possession that tends to

21   diminish the degree of the defendant's culpability or offense

22   level under the guidelines.

23         Has the government done so?

24         MR. CASEY:  We have, Your Honor.

25         THE COURT:  Thank you.

```
1                    And I understand that the defendant has entered
2         into a plea agreement, correct?
3                    MR. BACHRACH:  That's correct, Your Honor.
4                    THE COURT:  And I have been provided a copy of a
5         document.  It's dated February 28, 2024, and it appears to be
6         signed by you and Mr. Bachrach.  Is that your signature?
7                    THE DEFENDANT:  Yes, Your Honor.
8                    THE COURT:  And did you have an opportunity to
9         review this agreement with your attorney before you signed
10        it?
11                   THE DEFENDANT:  Yes, I did, Your Honor.
12                   THE COURT:  Does the plea agreement contain all of
13        the terms to which you have agreed?
14                   THE DEFENDANT:  Yes, it does, Your Honor.
15                   THE COURT:  Do you understand that this agreement
16        is the only agreement you have with the United States
17        government?
18                   THE DEFENDANT:  Yes, Your Honor.
19                   THE COURT:  Has anyone made any promises or
20        assurances to you that are not in the plea agreement?
21                   THE DEFENDANT:  No, Your Honor.
22                   THE COURT:  Has anyone made any threats or
23        pressured you in any way to persuade you to accept this
24        agreement?
25                   THE DEFENDANT:  No, Your Honor.
```

1          THE COURT:  So do you understand that this

2    agreement is being made pursuant to Federal Rule of Criminal

3    Procedure 11(c)(1)(C) and that if I accept this agreement, I

4    must include this agreed-upon disposition found in the

5    agreement?  Do you understand that?

6          THE DEFENDANT:  Yes, I do, Your Honor.

7          THE COURT:  And do you understand that I can reject

8    this agreed-upon disposition?

9          THE DEFENDANT:  Yes, I do, Your Honor.

10          THE COURT:  And do you understand that you may not

11    withdraw your plea of guilty regardless of where within the

12    agreed-upon range I sentencing you so long as I don't reject

13    the agreement?

14          THE DEFENDANT:  Yes, I do, Your Honor.

15          THE COURT:  And if I do reject the agreement, you

16    understand you may then withdraw your plea?

17          THE DEFENDANT:  Yes, I do, Your Honor.

18          THE COURT:  Has anyone attempted in any way to

19    force you to plead guilty in this case?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  Are you pleading guilty of your own

22    free will?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Do you understand that the offenses to

25    which you're pleading guilty are felonies?

1          THE DEFENDANT:  Yes, I do, Your Honor.

2          THE COURT:  Do you understand, if I accept your

3   plea, you'll be judged guilty of these offenses?

4          THE DEFENDANT:  Yes, I do, Your Honor.

5          THE COURT:  Do you understand that by being judged

6   guilty, you may lose valuable civil rights, including the

7   right to vote in many states, to hold public office, to serve

8   on a jury, and the right to possess a gun or any kind of

9   firearm or ammunition?  Do you understand that?

10          THE DEFENDANT:  Yes, I do, Your Honor.

11          THE COURT:  Are you a United States citizen?

12          THE DEFENDANT:  Yes, I am, Your Honor.

13          THE COURT:  So I'm going to turn now to the maximum

14   sentences and the disposition that the government has agreed

15   to recommend, or that the parties have agreed, to make sure

16   you understand these.

17          So Counts 1 through 6, each count by statute has a

18   maximum imprisonment of ten years, there's no mandatory

19   minimum, a maximum fine of $250,000, supervised release of

20   three years per count, and a special assessment that's $100

21   per count.

22          Do you understand those are the statutory maximum

23   sentences or maximum provisions?

24          THE DEFENDANT:  Yes, I do, Your Honor.

25          THE COURT:  Okay.  And the indictment also includes

1   forfeiture allegations under 18 USC Sections 981(a)(1)(C),

2   793(h), and 28 USC Section 2461(c), so that's forfeiting any

3   property derived from the proceeds of the offenses.

4           Is there also physical property at issue?

5           MR. CASEY:  There is, Your Honor.  It's addressed

6   in, I believe, paragraph 7 of the plea agreement.

7           THE COURT:  Okay.  So do you understand that the

8   indictment includes those forfeiture allegations?

9           THE DEFENDANT:  Yes, I do, Your Honor.

10          THE COURT:  Okay.  And then as to the agreed-upon

11  sentence, do you understand that the plea agreement contains

12  the parties' agreement regarding the offense level under the

13  guidelines, first, under sentencing guideline Section 2M3.2,

14  that the base offense level here is 35 because top secret

15  information was gathered; that is, information that, if

16  disclosed, reasonably could be expected to cause

17  exceptionally grave damage to national security; that there's

18  an agreement that the base offense level is increased by two

19  because you abused a position of trust; that there's an

20  agreement that the base offense level is increased by two for

21  willfully obstructing or impeding the administration of

22  justice with respect to the investigation or prosecution of

23  the instant offense of conviction and the conduct related to

24  the offenses of conviction are relevant conduct; that there's

25  an agreement that this is a single group of offenses because

1    they involve the same victim and are connected by the same

2    criminal objective or part of a common scheme; that there's a

3    three-level decrease for acceptance of responsibility, but

4    that's with an asterisk that the government may determine

5    that it doesn't agree to three before sentencing if certain

6    matters don't occur; and that there's a recognition that you

7    may be eligible for the safety valve depending on your -- if

8    there's any criminal history and your debriefing.

9            So assuming no criminal history, the parties have

10   agreed in the plea agreement to a range -- well, to a level

11   of 34 under the guidelines, calculated with acceptance of

12   responsibility; a range for the plea agreement of 132 months

13   at the bottom -- that's eleven years -- to 200 months at the

14   top, that's 16 years, eight months; and that's against a

15   backdrop where your base offense level depending on those

16   matters could be above or below that range, but the

17   agreed-upon range is the 132 months to 200 months.

18           And that the government is planning to recommend

19   the 200 months as we stand here today.

20           Do you understand all of those calculations and

21   agreements?

22           THE DEFENDANT:  Yes, Your Honor, I understand.

23           THE COURT:  And do you agree -- understand further

24   that you've agreed that you will not argue for a downward

25   departure; that is, for the sentence to be lower based on

1    specific factors in the sentencing guidelines, but you may

2    argue for a decrease, but no lower than the 121 months?  Do

3    you understand that?

4             THE DEFENDANT:  Yes, Your Honor, I understand.

5             MR. BACHRACH:  I'm sorry, Your Honor; no lower than

6    132 months, and that is what the defense --

7             THE COURT:  I'm sorry.  132.  Thank you.

8    Appreciate you --

9             132 months, that is the 11 years and that that is

10   the bottom of the range that you've agreed that you may argue

11   for.

12            Do you understand that?

13            THE DEFENDANT:  Yes, Your Honor, I understand.

14            THE COURT:  And all of this is coming to me as an

15   agreement between the parties, and I may reject that

16   agreement.  Do you understand that?

17            THE DEFENDANT:  Yes, Your Honor, I understand.

18            THE COURT:  And, again, unless I object to that

19   agreement, you understand that you may not withdraw your

20   guilty plea here?

21            THE DEFENDANT:  Yes, Your Honor, I understand.

22            THE COURT:  Okay.  I need to -- before we get to

23   that, I still need to go through a few more matters here.

24   We've talked about the guidelines.  I've talked about the

25   guidelines and how the levels have been agreed upon, but --

1    by the parties.

2              But in addition to that, I may independently reach

3    a different determination of what the guidelines are.  Do you

4    understand that?

5              THE DEFENDANT:  Yes, Your Honor, I understand.

6              THE COURT:  And I'm required -- I'm not required to

7    follow the guidelines, but I am required to consider the

8    guidelines in determining your sentence.  Do you understand

9    that?

10             THE DEFENDANT:  Yes, Your Honor, I understand.

11             THE COURT:  And do you understand that the

12   guidelines -- before I can calculate your guideline sentence,

13   the probation office will do a -- conduct a presentence

14   interview and investigation and prepare a presentence report

15   for me?  Do you understand that?

16             THE DEFENDANT:  Yes, Your Honor, I understand.

17             THE COURT:  And you'll have an opportunity to

18   challenge any of the facts reported in the presentence

19   report, but I need only find those facts to a preponderance

20   of the evidence, more likely true than not true.  Do you

21   understand that?

22             THE DEFENDANT:  Yes, Your Honor, I understand.

23             THE COURT:  Okay.  And do you understand, under the

24   guideline system, I'm required to review the guidelines,

25   properly calculate the guidelines; but I also have authority

1    to vary the guideline or vary or depart from the guideline

2    sentence and impose a sentence or determine a sentence that

3    is greater or lesser -- lesser than the guidelines call for?

4              Do you understand that?

5              THE DEFENDANT:  Yes, Your Honor, I understand.

6              THE COURT:  And do you understand, finally, that

7    what that means is that I have the authority to determine an

8    appropriate sentence up to the maximum sentences that I

9    described to you at the beginning, ten years per count, so

10   long as the sentence I impose is reasonable under the

11   circumstances; and that you may not withdraw your guilty plea

12   so long as the amount -- the sentence I determine falls

13   within the agreed-upon range of 132 to 200 months?

14             Do you understand that?

15             THE DEFENDANT:  Yes, Your Honor, I do.

16             THE COURT:  Okay.  The next thing I need to do is

17   to make sure you understand the trial rights that you have

18   that you'll be giving up if you plead guilty and I accept

19   your plea here.

20             Do you understand that you have the right to plead

21   not guilty to these offenses and to go to trial?

22             THE DEFENDANT:  Yes, Your Honor, I do.

23             THE COURT:  Do you understand that you have the

24   right to a trial by jury?

25             THE DEFENDANT:  Yes, Your Honor, I do.

1          THE COURT:  Do you understand that a jury is

2     composed of 12 jurors who must unanimously find beyond a

3     reasonable doubt that you committed the crime with which

4     you're charged before you may be found guilty?

5          THE DEFENDANT:  Yes, Your Honor, I do.

6          THE COURT:  Do you understand at trial you'd be

7     presumed to be innocent and the government would have to

8     prove your guilt beyond a reasonable doubt?

9          THE DEFENDANT:  Yes, Your Honor, I understand.

10         THE COURT:  Do you understand at trial you would

11    have the right to the assistance of counsel for your defense?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Do you understand you'd have the right

14    to see and hear all the witnesses against you and have them

15    cross-examined in your defense?

16         THE DEFENDANT:  Yes, Your Honor, I understand.

17         THE COURT:  Do you understand you'd have the right,

18    if you chose to exercise it, to testify and to put on

19    evidence in your defense?

20         THE DEFENDANT:  Yes, Your Honor, I do.

21         THE COURT:  Do you understand you'd have the right

22    to require witnesses to come to court to testify in your

23    defense?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Do you understand you'd have the right

1    to refuse to testify and refuse to put on evidence unless you

2    voluntarily elected to do so?

3              THE DEFENDANT:  Yes, Your Honor, I understand.

4              THE COURT:  You understand that if you decided not

5    to testify or not to put on any evidence, those facts could

6    not be used against you?

7              THE DEFENDANT:  Yes, Your Honor, I do understand.

8              THE COURT:  And do you further understand that by

9    entering a plea of guilty here today, if I accept your plea,

10   there will be no trial, and you will have waived or given up

11   your right to a trial as well as the rights that come with a

12   trial that I have just described?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Now, your plea agreement also contains

15   a waiver of appeal rights, and I need to make sure you

16   understand what your rights would be absent the plea

17   agreement and what you're giving up.

18             So do you understand that, but for the terms set

19   forth in the plea agreement, you may have been able to argue

20   in a future proceeding, either a direct appeal or a

21   collateral proceeding, that your conviction should be set

22   aside or reduced?

23             THE DEFENDANT:  Yes, Your Honor, I understand.

24             THE COURT:  And do you understand that, but for the

25   terms set forth in the plea agreement that waives your right

1    to appeal your sentence or seek a further reduced sentence,

2    any sentence that I impose could have been appealed by you on

3    direct appeal or challenged in a future proceeding,

4    collateral or otherwise?

5              THE DEFENDANT:  Yes, Your Honor, I understand.

6              THE COURT:  And do you further understand the

7    following appeal waiver provisions in your plea agreement:

8              First, that you will not challenge your conviction

9    on direct appeal or in any other proceeding, including a

10   separate civil lawsuit; and, second, that you will not

11   challenge any sentence I impose of 200 months or less or any

12   orders relating to forfeiture, fines, or supervised release

13   on direct appeal or in any other proceeding, including a

14   separate civil lawsuit?

15             Do you understand that?

16             THE DEFENDANT:  Yes, Your Honor, I do.

17             THE COURT:  Now, notwithstanding those waivers, you

18   do, like all defendants, reserve a right to claim ineffective

19   assistance of counsel in connection with the negotiation of

20   the plea or serious prosecutorial misconduct serious enough

21   to entitle you to have your conviction or sentence

22   overturned; but for those two very limited exceptions, you're

23   waiving your right to appeal.

24             Do you understand that?

25             THE DEFENDANT:  Yes, Your Honor, I understand.

1          THE COURT:  Okay.  The next thing I need to do is

2    to make sure you understand what the elements are here that

3    the government would have had to prove if the case were to go

4    to trial, and then I'm going to ask the assistant US attorney

5    about that evidence, and then I'm going to come back and ask

6    you if you have any disagreement with those facts.  Okay?

7          So under this particular provision,

8    18 USC Section 793(e), willful retention and transmission of

9    national defense information, if the case went to trial, the

10   government would have to prove that you had unauthorized

11   possession of, access to, control over any documents,

12   writings, books, photographs, et cetera, or any other

13   information relating to the national defense.

14         That this information was top secret information;

15   that is, information that if disclosed reasonably could be

16   expected to cause exceptionally grave damage to the national

17   security.  That's for the specific guideline enhancement that

18   has been agreed to here or -- no, that's for the

19   determination of base offense level at issue here.

20         You had reason to believe that this information

21   could be used to the injury of the United States or to the

22   advantage of a foreign nation.

23         That you willfully communicated, delivered,

24   transmitted, or caused to be communicated, delivered, or

25   transmitted or attempted to communicate, deliver, transmit,

1    or cause to be communicated, delivered, or transmitted to any

2    person not entitled to receive this information, or that you

3    willfully retained the same and failed to deliver it to

4    the -- to an officer or employee of the United States

5    entitled to receive it.

6          Do you -- do you understand that those are the

7    elements that the government would have to prove beyond a

8    reasonable doubt for you to be found guilty of these

9    offenses?

10          THE DEFENDANT:  Yes, Your Honor, I understand.

11          THE COURT:  Okay.  And any disagreement with those

12    elements from the government?

13          MR. CASEY:  No, Your Honor.  We agree.

14          THE COURT:  Okay.  So with that, from the

15    government, if you could please stand the factual basis for

16    the plea, what the government would be prepared to prove if

17    the case went to trial.

18          MR. CASEY:  Your Honor, if this case did go to

19    trial, the government would prove the following facts beyond

20    a reasonable doubt:

21          The defendant is a United States citizen who, prior

22    to his arrest in April 2023, resided in Dighton,

23    Massachusetts.  From September 2019 until April 2023, the

24    defendant was a member of the United States Air National

25    Guard assigned to Otis Air National Guard Base in

1    Massachusetts.

2           Between approximately January 2022 and his arrest

3    in April of 2023, the defendant served as an airman first

4    class with a title of Cyber Defense Operations Journeyman.

5    Specifically, the defendant's job was to provide IT support

6    to members of the 102nd Intelligence Wing, whose mission

7    included providing worldwide intelligence and combat support

8    to the United States military.

9           The defendant's job was to troubleshoot computer

10   workstations and help members of the intelligence wing

11   maintain access to the classified computer networks required

12   to fulfill their mission.  The defendant's workstation at all

13   relevant times was located in a sensitive compartmented

14   information facility, or SCIF, access to which was restricted

15   to personnel with an appropriate security clearance.

16          In order to access -- I'm sorry; did you have a

17   question?

18          THE COURT:  No.  I'm going to -- just because

19   there's so much information here, I'm going to stop you right

20   there; and I'm going to ask Mr. Teixeira -- I think we're

21   going to just back and forth here piece by piece.

22          So the first thing the government contends they

23   have evidence of is that, between January 2022 and

24   April 2023, you served as an airman first class.  You had a

25   position of -- a title of Cyber Defense Operations

1    Journeyman, and you had a job of providing IT support and

2    helping members of the 102nd Intelligence Wing, helping them

3    troubleshoot computer workstations, maintain access to

4    networks to be able to do that.

5              Any disagreement with those facts?

6              THE DEFENDANT:  No, Your Honor.

7              THE COURT:  And then the second thing the

8    government has started with here is where your workstation

9    was, that your workstation was located in a SCIF, a sensitive

10   compartmented information facility, where access was

11   restricted to people with an appropriate security clearance.

12             Any disagreement about that?

13             THE DEFENDANT:  No, Your Honor.

14             THE COURT:  Okay.  I'm going to go back to the

15   government and let you start talking about the clearance.

16             MR. CASEY:  Thank you, Your Honor.

17             So in order to access the SCIF where he worked and

18   as was required for his position, the defendant was granted a

19   top secret security clearance in July of 2021 and had access

20   to computer networks containing classified documents and

21   information, including information related to the national

22   defense, known as national defense information, which I'll

23   refer to sometimes as NDI.

24             The classification of NDI and other sensitive

25   information is governed by executive order.  Specifically,

1    under Executive Order 13526 and its various amendments,

2    information in any form may be classified if:  first, it is

3    owned by, produced by or for, or is under the control of the

4    United States government; second, the information falls

5    within one or more of the categories set forth in the

6    executive order, that is top secret, secret, or confidential;

7    and, third, the information is classified by an original

8    classification authority who determines that its unauthorized

9    disclosure reasonably could be expected to damage -- to cause

10   damage or result in damage to the national security.

11            Information may be classified as top secret if its

12   unauthorized disclosure reasonably could be expected to cause

13   exceptionally grave damage to the national security.

14   Information may be classified as secret if the unauthorized

15   disclosure of that information reasonably could be expected

16   to cause serious damage to the national security.

17            The evidence would prove that classified

18   information of any designation can only be shared with

19   persons determined by an appropriate US government official

20   to be eligible for access to that information and who possess

21   a need to know the information.

22            Among other requirements, in order for a person to

23   obtain a security clearance allowing that person access to

24   classified information, that person must agree to properly

25   protect classified information by not disclosing information

1    to persons not entitled to receive it, by not unlawfully

2    removing classified information from authorized storage

3    facilities, and by not storing classified information in

4    unauthorized locations.

5          Access to classified information can be further

6    restricted through compartmentation in what are known as

7    sensitive compartmented informations categories.  In general,

8    sensitive compartmented information, or SCI, is classified

9    information related to intelligence sources, methods, and

10   analytical processes that is subject to specific access

11   controls.

12         In addition to maintaining a top secret security

13   clearance, the evidence would prove that the defendant also

14   maintained access to SCI from July 2021 until the time of his

15   arrest, and I'll stop there.

16         THE COURT:  Okay.  I'm going to turn back to you.

17         The government contends that if the case went to

18   trial the evidence would be, first of all, there would be a

19   background about the requirements for classification of

20   national defense and other sensitive information; and that,

21   under that framework, information is classified by the -- by

22   the United States government, and it can be classified into

23   different categories, top secret, secret, or confidential.

24         And that a determination about the classification

25   is made by the authority doing the classification and that a

1    determination is based on essentially to the damage to the

2    national security.  And information here, the top secret

3    information allegations would refer to information where

4    unauthorized disclosure of the information reasonably could

5    be expected to cause exceptionally grave damage to the

6    national security.

7             So the government would have the evidence of this

8    framework and then that access to that information was

9    limited to designations, to people with appropriate

10   clearances, but also who not only had the clearance, but also

11   had a need to know, that they had a reason to access the

12   information.

13            And that in order to get a security clearance, the

14   person who's accessing that information would be required to

15   protect that information by not including it -- by not

16   providing it to people not entitled to receive it and to not

17   unlawfully remove it from the authorized facilities, storage

18   facilities, and not storing the material in unauthorized

19   locations.

20            Any disagreement with that framework or the

21   evidence relating to that?

22            THE DEFENDANT:  No, Your Honor.

23            THE COURT:  Okay.

24            MR. CASEY:  Your Honor, the evidence would also

25   show that the defendant knew at all relevant times that the

1    unauthorized disclosure of classified NDI was unlawful and

2    could be used to the injury of the United States or to the

3    advantage of a foreign nation.

4         In his SCI indoctrination memoranda, which the

5    defendant signed in July of 2021, the defendant acknowledged

6    the following, quote:  "I have been advised that the

7    unauthorized disclosure, unauthorized retention, or negligent

8    handling of SCI by me could cause irreparable injury to the

9    United States or could be used to advantage by a foreign

10   nation.  I hereby agree that I will never divulge anything

11   marked as SCI or that I know to be SCI to anyone who is not

12   authorized to receive it," end quote.

13        The defendant further acknowledged that the, quote,

14   "Briefing officer has made available Section 793, 794, 798,

15   and 952 of Title 18 United States Code so that I may read

16   them at this time if I so choose."  And I would note here,

17   Your Honor, that the, defendant here is charged under Section

18   793 of Title 18.

19        The defendant also signed multiple agreements

20   regarding the acceptable use of US government information

21   systems.  In one of the agreements that he signed, the

22   defendant said that he would, quote, "not post sensitive

23   systems, intelligence, or other nonpublic information from

24   JWICS to any social media site which would allow unauthorized

25   entities to obtain information that I am not authorized to

1    disseminate that can possibly be exploited."

2            And JWICS, the evidence would prove, is the Joint

3    Worldwide Intelligence Communications System, and it's the

4    highest level of classification -- classified computer

5    network available to the Department of Defense.

6            And finally, Your Honor, the evidence, at least

7    with respect to this portion of the factual proffer, would

8    prove that the defendant received periodic training regarding

9    the proper handling of classified information and was made

10   aware that the unauthorized disclosure of classified

11   information could be used to the injury of the United States

12   or to the advantage of a foreign nation.

13           THE COURT:  So did you understand what counsel just

14   described?

15           THE DEFENDANT:  Yes, Your Honor, I do.

16           THE COURT:  And in summary, if the case went to

17   trial, the government would come forward with memo- -- with

18   documents that you signed that he quoted here attesting to

19   your understanding and knowledge and what you had been

20   advised about disclosure, unauthorized disclosure, retention,

21   or handling of secure classified information.

22           And that you had -- you signed multiple agreements,

23   and you also attended multiple trainings regarding these --

24   proper handling of classified information, and also the

25   potential that classified -- unauthorized disclosure of

1    classified information could be used to the injury of the

2    United States or the advantage of a foreign nation.

3            Any dispute with that?

4            THE DEFENDANT:  No, Your Honor.

5            MR. CASEY:  Your Honor, despite the training that I

6    just described and the agreements that the defendant signed,

7    the evidence would show that beginning in approximately

8    January 2022 and continuing until approximately April of

9    2023, the defendant purposely removed classified documents

10    and information, including NDI, from the secure facility

11    where he worked without approval; that he retained that

12    information in an unauthorized location; and then

13    communicated, delivered, and transmitted the information

14    using the Internet to individuals who are not authorized to

15    receive it.

16            Audit data from a US government agency would

17    demonstrate that, beginning in approximately January of 2022,

18    the defendant conducted hundreds of searches on classified

19    computer networks, including JWICS and, in turn, accessed

20    hundreds of classified documents that were unrelated to his

21    duties as an IT specialist.

22            The defendant continued to conduct searches for and

23    review classified information and documents unrelated to his

24    duties even after he was admonished by his superiors on two

25    separate occasions to not take notes on classified

1    intelligence information and to stop conducting,

2    quote/unquote, deep dives into intelligence information.

3        Despite these admonishments, the evidence would

4    prove that the defendant removed classified information and

5    hundreds of classified documents, including documents

6    containing NDI, without authorization from the secure

7    facility where he worked and subsequently transmitted that

8    information to individuals who were not authorized to receive

9    it through an online social media platform called Discord

10   under the username TheExcaliburEffect.  And I'll note that

11   that's one word, TheExcaliburEffect, for the record.

12       Business records maintained by Discord would show

13   that subscriber information associated with that username

14   listed the defendant's name, his address, and his billing

15   information.

16       In addition, other Discord users who interacted

17   with TheExcaliburEffect on Discord both before and during the

18   unauthorized disclosures would testify that they observed

19   TheExcaliburEffect user in photos and videos that were posted

20   on Discord, that they observed that user posting what

21   appeared to be US government documents and information, and

22   they would identify TheExcaliburEffect user as the defendant.

23       The evidence would show that the defendant retained

24   and transmitted NDI and other classified information on

25   Discord in two ways.  First, accessing classified documents

1    using a classified computer workstation inside the secure

2    facility where he wording at Otis Air National Guard Base.

3            The defendant then transcribed portions of those

4    classified documents, that is he wrote the information down,

5    and he then removed those transcriptions from the secure

6    facility without authorization and subsequently posted the

7    classified texts into Discord, where it was visible to and

8    viewed by other users.

9            THE COURT:  Let me stop you there, and just as to

10   that last fact, that's transcribing the information and

11   removing it and subsequently posting it, is that an inference

12   of how it happened, or is there evidence that would be

13   presented at trial as to how those steps took place?

14           MR. CASEY:  Well, I've already described,

15   Your Honor, how his colleagues at -- at the Air National

16   Guard base observed him writing down information from

17   classified documents.  But, also, the records of Discord, I

18   think, would prove, perhaps by inference, but a very narrow

19   inference, that that is exactly what he was doing, that he

20   was writing down classified information and then typing it

21   into Discord.

22           THE COURT:  Okay.  Thank you.

23           MR. CASEY:  The second way, Your Honor, that he

24   transmitted NDI and other classified information was

25   according to print logs maintained by the Department of

1    Defense.  He essentially printed hundreds of documents

2    containing this classified information, including NDI, from

3    inside the secure facility where he worked.

4         The defendant then removed those documents that he

5    had printed from the secure facility without authorization

6    and posted images of the documents to Discord, where they

7    were visible to and viewed by other users.

8         The evidence would show that the defendant took

9    steps to conceal his unlawful disclosures according to the

10   print logs that I just mentioned, for example.

11        The primary computer and printer that the defendant

12   used to print classified information from inside the secure

13   facility were not located in his primary workspace or even on

14   the same floor as his primary workspace but, in fact, were

15   located in the basement of the secure facility in an isolated

16   area typically used by support personnel.

17        The print records would further reflect that the

18   defendant printed most of the classified documents during

19   hours when the facility was not fully staffed.

20        In total, audit data maintained by a US government

21   agency and print logs would establish that between

22   approximately January 2022 and April 2023, the defendant

23   accessed and printed hundreds of classified -- documents,

24   rather, classified as either secret or top secret that did

25   not relate to his duties as an IT specialist.

1          Records maintained by Discord and the testimony of

2    other Discord users would prove that the defendant posted

3    images of or information from those hundreds of documents on

4    Discord during that same time period.

5          THE COURT:  Okay.  Back to you, Mr. Teixeira.

6          So did you understand the summary there that the

7    assistant US attorney described?

8          THE DEFENDANT:  Yes, Your Honor, I do understand.

9          THE COURT:  And in summary, if the case went to

10   trial, the government has evidence that you conducted

11   searches of computer files on classified computer networks

12   during this period between January 2022 and April 2023; and

13   that you did these searches, you accessed hundreds of

14   documents that were classified as either secret or top

15   secret.

16         Those documents that you were accessing through

17   these searches didn't relate to your official duties as an IT

18   specialist; that some of them you didn't print out, but that

19   you copied information down onto some other paper or

20   something that you took out, but others, you printed out and

21   that at least some of the time you printed it at a remote

22   workspace, so away from where your immediate area was.

23         And it appears that the evidence the government

24   would have about your activities inside the secure location

25   are partially from the records of the computer themselves,

1    but also your -- there was -- on two separate occasions, your

2    superiors became aware of this and admonished this --

3    admonished you not to take notes out and not to conduct deep

4    dives.

5              Any disagreement with any of those facts?

6              THE DEFENDANT:  No, none at all, Your Honor.

7              THE COURT:  And then further, if the case went to

8    trial, the government has evidence linking you to the Discord

9    account, both from Discord, who has your name, home address,

10   and billing information related to the username here, and

11   also from other Discord users who had personal testimony of

12   what they observed of you posting this and observing you.

13             Any disagreement with any of those facts?

14             THE DEFENDANT:  No, Your Honor.

15             THE COURT:  And further, with regard to the

16   concealing of what you were doing, the government says that

17   the records would show that you printed most of the

18   classified documents during hours when the facility was not

19   fully staffed.

20             Any disagreement with that?

21             THE DEFENDANT:  No, Your Honor.

22             THE COURT:  Okay.

23             MR. CASEY:  Your Honor, I'm now going to describe

24   the evidence with respect to each count, and I'm happy to

25   pause after each count if the Court wants to inquire.

1          THE COURT:  Thank you.

2          MR. CASEY:  With respect to Count 1 of the

3    indictment, the evidence would prove that on a date in

4    November 2022, under TheExcaliburEffect username, the

5    defendant posted information on Discord concerning the

6    compromise by a foreign adversary of certain accounts

7    belonging to a US company.

8          An original classification authority, or OCA, would

9    testify that this information was classified as top

10   secret/SCI because unauthorized disclosure of the information

11   reasonably could be expected to cause exceptionally grave

12   damage to the national security.

13         Evidence would establish that the defendant copied

14   this information from a classified intelligence product that

15   had previously been created by one or more members of the US

16   intelligence community.

17         Audit records maintained by the intelligence

18   community would prove that the defendant accessed that

19   particular intelligence product on a date in November 2022

20   from inside the secure facility where he worked.

21         The evidence would prove that the Defendant removed

22   this information from the secure facility without

23   authorization and later that same day willfully posted the

24   information to Discord, where it was visible to other users

25   who are not authorized to receive it.

1          The evidence would prove that the defendant -- the

2     information posted by the defendant included national defense

3     information and that the defendant had reason to believe the

4     information could be used to the injury of the United States

5     or to the advantage of a foreign nation.

6          THE COURT:  And as to the evidence that would prove

7     that the defendant had reason to believe the information

8     could be used to the injury of the US or the advantage of a

9     foreign nation, is that by virtue of the information itself

10    or by his -- something said in the context of posting or

11    something else?

12         MR. CASEY:  Well, certainly, someone with his

13    training and experience would recognize that the information

14    itself had that potential; but his training, I think, told

15    him that documents with that classification could cause

16    exceptionally grave damage to the national security.

17         THE COURT:  And the document -- the documents at

18    issue in Count 1 were so marked?

19         MR. CASEY:  So Count 1 is actually information that

20    the defendant transcribed into Discord, so it's not an actual

21    image of a document.

22         THE COURT:  Thank you.

23         Back to you.  Count 1, so this is -- this one is

24    not one of the documents being printed, but this is

25    information that you took off documents.

1          And the government contends that this happened

2     November 2022, that you obtained this information when you

3     were inside the secure facility where you worked, that the

4     information was created by members of the US intelligence

5     community, and that the information concerned the compromise

6     by a foreign adversary of some accounts belonging to a US

7     company.

8          Any disagreement with either my summary or what the

9     government attorney described about this incident?

10         THE DEFENDANT:  No, Your Honor.

11         THE COURT:  And just to be clear, you posted this

12    information on Discord under the username you were using,

13    TheExcaliburEffect, correct?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Okay.

16         MR. CASEY:  Your Honor, I'm told by my colleagues

17    that perhaps you're asking whether the underlying document in

18    Count 1 was marked as -- according to its classification, and

19    it was.

20         THE COURT:  Okay.  And I think that's an important

21    point.  Let me -- so what you -- what you transcribed

22    didn't -- wasn't marked classified, but the source that you

23    used to get that information was marked classified, and you

24    knew it was classified, correct?

25         THE DEFENDANT:  Yes, Your Honor.

1          MR. CASEY:  Your Honor, with respect to Count 2,

2    the evidence would prove that on a specific date in

3    January 2023, the defendant posted information on Discord

4    under TheExcaliburEffect username concerning the provision of

5    equipment to Ukraine, how the equipment would be transferred,

6    and how it would be used upon receipt.

7          An original classification authority would testify

8    that the information was classified as secret because

9    unauthorized disclosure of the information reasonably could

10   be expected to cause serious damage to the national security.

11         The evidence would further establish that the

12   defendant copied this information from an intelligence

13   product that had previously been created by a member of the

14   US intelligence community.

15         Audit records maintained by the intelligence

16   community would prove that the defendant accessed this

17   particular intelligence product from a classified workstation

18   inside the secure facility where he worked.

19         Later that same day, after removing the information

20   from the secure facility without authorization, the defendant

21   willfully posted information contained within the

22   intelligence product to Discord, where it was visible to

23   other users who are not authorized to receive the

24   information.

25         The evidence would prove that the information

1    posted by the defendant included national defense information

2    and that the defendant had reason to believe it could be used

3    to the injury of the United States or the advantage of a

4    foreign nation.

5           THE COURT:  And back to you.  This is now regarding

6    Count 2.  Any disagreement with the facts as recited by the

7    assistant US attorney?

8           THE DEFENDANT:  No, Your Honor.

9           THE COURT:  And briefly, this count concerns

10   activity by you in January of 2023.  And it's, again,

11   information, rather than documents, that you wrote down, took

12   down, and -- but that that information was classified as

13   secret.

14          And I take it, again, was marked that way?

15          MR. CASEY:  Correct.

16          THE COURT:  And that this information concerned, in

17   January 2023, the provision of equipment to Ukraine, how the

18   equipment would be transferred, and how it would be used upon

19   receipt once it got to Ukraine; and you then took that

20   information down and then posted it on Discord under

21   TheExcaliburEffect username.

22          Any disagreement with those facts?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  And that information -- just to be

25   explicit here about the timing, this is during the war that

1    is ongoing in Ukraine; and so you had reason to believe the

2    information could be used to the advantage of a foreign

3    nation, correct?

4              THE DEFENDANT:  Yes, Your Honor.

5              MR. CASEY:  Your Honor, with respect to Counts 3,

6    4, 5, and 6, the evidence would prove that between

7    approximately January 2023 and April 2023, the defendant

8    posted photographs on Discord under TheExcaliburEffect

9    username depicting the following four government documents:

10             The first document described the status of the

11   Russia-Ukraine conflict to include troop movements on a

12   particular date; the second document discussed a plot by a

13   foreign adversary to target United States forces abroad and

14   discussed in part where and how the attack on US forces would

15   occur; the third document described Western deliveries of

16   supplies to the Ukrainian battlefield, including foreign

17   perceptions of the deliveries; and the fourth document

18   described a shift in foreign and economic policy of a

19   particular foreign government and the actions that country

20   took in an effort to repair its relationship with the

21   United States, to the perceived detriment of a separate

22   foreign country.

23             An original classification authority would testify

24   that the information contained in each of these four

25   documents was classified as top secret/SCI because

1  unauthorized disclosure of the information reasonably could

2  be expected to cause exceptionally grave damage to the

3  national security.

4      Audit records maintained by the intelligence

5  community would prove that the defendant accessed and printed

6  each of these four documents from inside a classified

7  workstation in the secure facility where he worked.  The

8  defendant thereafter removed each document from the secure

9  facility without authorization and willfully posted an image

10  of each document to Discord, where it was visible to other

11  users who are not entitled to receive it.

12      The evidence would also prove that the classified

13  document described in Count 6 of the indictment was found

14  during a search of the defendant's iCloud account in April of

15  2023.

16      THE COURT:  Thank you.

17      Did you understand the facts recited or the

18  evidence recited by the assistant US attorney?

19      THE DEFENDANT:  Yes, Your Honor, I did.

20      THE COURT:  Okay.  And this is as to Counts 3, 4,

21  5, and 6; and those were four documents at issue that were

22  all classified as top secret/SCI.  Any disagreement about

23  that?

24      THE DEFENDANT:  No, Your Honor.

25      THE COURT:  And what the government contends the

1  evidence would show is that you printed these documents out

2  in the secure facility, removed them from the secure

3  facility, and then posted --

4          I suppose, photographs?

5          MR. CASEY:  Correct.

6          THE COURT:  -- posted photographs of these

7  documents on Discord, again, under your -- TheExcaliburEffect

8  username.

9          Any disagreement with that?

10         THE DEFENDANT:  No, Your Honor.

11         THE COURT:  And the government contends that this

12 all happened between January 2023 and April 2023; that the

13 first document described the status of the Russia-Ukraine

14 conflict, including troop movements on a particular date.

15         The second document discussed a plot by a foreign

16 adversary to target US forces abroad and discussed in part

17 where and how the attack on the United States forces would

18 occur.

19         The third document described Western deliveries of

20 supplies to the Ukrainian battlefield, including foreign

21 perceptions of the delivery.

22         And the fourth document described a shift in

23 foreign and economic policy of a particular foreign

24 government and actions that country took in an effort to

25 repair its relationship with the US, to the detriment of a

1    separate foreign country.

2              Any disagreement with those, that that's what those

3    documents contained?

4              THE DEFENDANT:  No, Your Honor.

5              THE COURT:  And any -- any disagreement -- again, I

6    think I've asked you this -- but that each of those documents

7    was classified as top secret/SCI because unauthorized

8    disclosure of the information reasonably could be expected to

9    cause exceptionally grave damage to the national security.

10             Any disagreement with that?

11             THE DEFENDANT:  No, Your Honor.

12             THE COURT:  Okay.

13             MR. CASEY:  Your Honor, in addition to the

14   nondisclosure agreement that the defendant signed and the

15   trainings he received, which I've already described, evidence

16   concerning the defendant's communications on Discord would

17   prove that the defendant knew that his conduct was unlawful.

18             In one conversation on Discord from November 2022,

19   the defendant was asked by another user whether the

20   information he was sharing was classified; and in response,

21   the defendant said, quote, "Everything I've been telling you

22   guys up to this point has been classified.  This isn't

23   different.  I have plausible deniability and none of them

24   know anything incriminating about me.  No one has a point of

25   contact to my work, no one knows where I work, and no one

1    knows how to identify me.  I've thought of that," end quote.

2          In another conversation from December 2022, the

3    defendant acknowledged that his online posts were, quote,

4    "breaking a bunch of UD regs," end quote, referring to

5    unauthorized disclosure regulations.  The defendant went on

6    to say, "IDGAF," meaning I don't give an -- expletive --

7    "what they say I can and can't share."  He also said, "All

8    the shit I've told you guys about I'm not supposed to," end

9    quote.

10          Finally, the evidence would prove that the

11    defendant took steps to conceal his unlawful disclosures

12    between early April 2023 when the disclosures first became

13    public and the defendant's arrest on April 13, 2023.

14          Records maintained by Discord would prove that the

15    defendant instructed other Discord users to delete their

16    conversations with the defendant and that approximately five

17    days before his arrest, the defendant himself changed his

18    Discord username and deleted the entire contents of one of

19    the Discord servers that he managed where he had been posting

20    classified documents and information, including NDI.

21          The evidence would also show that during this time,

22    the defendant attempted to destroy and did destroy his iPad

23    and several other electronic devices and that he subsequently

24    discarded several of those devices in a dumpster outside the

25    home where he was living.

1           And those are the facts that the government would

2      rely on.

3           THE COURT:  Okay.  Last section -- any

4      disagreements with the facts as recited by the assistant US

5      attorney?

6           THE DEFENDANT:  No, Your Honor.

7           THE COURT:  And in summary, the government would

8      have further evidence that you knew that you were prohibited

9      from disclosing this information based on the statements that

10     you made that he read and quoted and then the steps that you

11     took afterward when the disclosure became known, the steps

12     that you took to delete your account and destroy the computer

13     equipment.

14          Any disagreement with any of those facts?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  Are you then, in fact, guilty of the

17     counts charged?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Counsel, any reason the Court should

20     not take the change of plea?

21          MR. BACHRACH:  No, Your Honor.

22          MR. CASEY:  No, Your Honor.

23          THE COURT:  Ms. Marchione, if you could please take

24     the change of plea.

25          THE DEPUTY CLERK:  Yes, Your Honor.

 1              Mr. Teixeira, you are charged in an indictment with

 2      Counts 1 and 2, willful retention and transmission of

 3      national defense information, all in violation of Title 18

 4      United States Code Section 793(e); and Counts 3 through 6,

 5      willful retention and transmission of national defense

 6      information, all in violation of Title 18 United States Code

 7      Section 793(e).

 8              You have previously pleaded not guilty to these

 9      charges.  Do you now wish to change your plea?

10              THE DEFENDANT:  Yes, ma'am.

11              THE DEPUTY CLERK:  How do you now plead to

12      Counts 1, 2, 3, 4, 5, and 6?  Guilty or not guilty?

13              THE DEFENDANT:  Guilty.

14              THE DEPUTY CLERK:  Thank you.

15              THE COURT:  The Court finds that the defendant is

16      fully competent and capable of entering an informed plea;

17      that he's aware of the nature of the charges and the

18      consequences of the plea; and that the plea of guilty is a

19      knowing and voluntary plea supported by an independent basis

20      in fact, containing each of the essential elements of the

21      offenses charged.

22              Since this is a (C) plea, it is my usual practice

23      to defer acceptance of the plea until I have reviewed the

24      presentence report and determined whether I'm able to

25      sentence within the agreed-upon disposition.  So I will defer

1    acceptance of the plea, but I have made the finding that all

2    of the required elements are there.

3            So with that, you may be seated.

4            MR. BACHRACH:  Thank you, Your Honor.

5            THE COURT:  The last step here is to talk again

6    about the presentence report.  That will be prepared by the

7    probation office to assist me in sentencing.  You'll be asked

8    to give information for the report.  Your attorney may be

9    present if you wish.

10            Have you set up an appointment yet with probation?

11            MR. BACHRACH:  We have, Your Honor, April 9th; and

12    one or more of us will be present for that.

13            THE COURT:  Thank you.

14            So it's important that the report is accurate.  It

15    will affect not only what sentence you receive, but also what

16    happens to you after you're sentenced.  It affects what

17    prison you may be sentenced to and what happens there, so you

18    should review it carefully.  And even minor mistakes in the

19    report should be brought to your counsel's attention and to

20    my attention.

21            You and your counsel will have the opportunity to

22    speak on your behalf at time of sentencing.

23            Do we have a date for sentencing?

24            THE DEPUTY CLERK:  Yes, Your Honor.  I have Friday,

25    September 27, 2024, at 11 a.m.

```
 1              THE COURT:  My usual scheduling order requires
 2     briefs to be -- sentencing briefs to be filed a week in
 3     advance.  On this schedule, where you have a lot of time and
 4     I have a fairly hectic September, I'd like the briefs due
 5     earlier.  Is there any problem with getting those in more
 6     than the usual time?
 7              MR. BACHRACH:  Would two weeks be sufficient,
 8     Your Honor?
 9              THE COURT:  I think two weeks, that would work.  So
10     let's have briefs --
11              MR. CASEY:  Certainly, works for the government.
12              THE COURT:  -- two weeks beforehand.
13              So I refer you to probation.
14              Anything else we need to address today?
15              MR. CASEY:  No, Your Honor.  Thank you.
16              MR. BACHRACH:  No, Your Honor.  Thank you very
17     much.
18              THE COURT:  You're remanded to the custody of the
19     marshals, and I will see everyone in September.
20              Thank you.
21              THE DEPUTY CLERK:  We are in recess.
22              (Court in recess at 12:02 p.m.)
23
24
25
```

**CERTIFICATE OF OFFICIAL REPORTER**

1

2

3

4          I, Robert W. Paschal, Registered Merit Reporter and

5     Certified Realtime Reporter, in and for the United States

6     District Court for the District of Massachusetts, do hereby

7     certify that pursuant to Section 753, Title 28, United States

8     Code, the foregoing pages are a true and correct transcript

9     of the stenographically reported proceedings held in the

10    above-entitled matter and that the transcript page format is

11    in conformance with the regulations of the Judicial

12    Conference of the United States.

13

14                           Dated this 28th day of March, 2024.

15

16

17

18

19                           /s/ Robert W. Paschal

20                           _____

21                           ROBERT W. PASCHAL, RMR, CRR
                             Official Court Reporter

22

23

24

25