UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JACK DOUGLAS TEIXEIRA,<br><br>Defendant | CRIMINAL No.23-10159-IT |

**GOVERNMENT'S SENTENCING MEMORANDUM**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PROCEDURAL BACKGROUND ........................................................................................... 2

Offense Conduct ....................................................................................................................... 2

The Pre-Sentence Report ......................................................................................................... 6

RECOMMENDATION ............................................................................................................ 6

      A.     *The Nature and Circumstances of the Offense* ....................................................... 7

      B.     *The History and Characteristics of the Defendant* ................................................. 9

      C.     *The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense* .. 11

      D.     *The Need to Avoid Unwarranted Sentencing Disparities Among Defendants* ..... 13

      E.     *The Need to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant* ....................................................... 16

CONCLUSION ....................................................................................................................... 17

# **TABLE OF AUTHORITIES**

### CASES

*Haig v. Agee*,
  453 U.S. 280 (1981) ................................................................................................ 12

*United States v. Ford*,
  288 F. App'x 54 (4th Cir. 2008) .............................................................................. 7

*United States v. Lucarell*,
  2023 WL 3756191 (6th Cir. 2023) ......................................................................... 11

*United States v. Zuk*,
  874 F.3d 398 (4th Cir. 2017) ................................................................................. 10

### STATUTES, RULES AND REGULATIONS

18 U.S.C. § 793 ................................................................................................................ 2, 15

18 U.S.C. § 793(e) ........................................................................................................... 7, 14

18 U.S.C. § 794 .................................................................................................................. 15

Fed. R. Crim. P. 11(c)(1)(C) ............................................................................................. 1-2

Fed. R. Crim. P. 11(c)(3)(A) ................................................................................................ 2

### SENTECING GUIDELINES

USSG § 5K2.14 .................................................................................................................. 13

USSG § 2M3.2 ..................................................................................................................... 6

USSG § 2M3.2(a) ................................................................................................................. 6

USSG § 3B1.3 ...................................................................................................................... 6

USSG § 3C1.1 ...................................................................................................................... 6

USSG § 3E1.1 ...................................................................................................................... 6

### OTHER AUTHORITIES

Executive Order 13526 ........................................................................................................ 5

ii

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Jack Douglas Teixeira perpetrated one of the most significant and consequential violations of the Espionage Act in American history. The harm the defendant caused to the national security from his disclosures of national defense information is extraordinary. When the defendant was granted a Top Secret security clearance in the course of his enlistment with the United States Air National Guard ("USANG"), he acknowledged the harm that the unauthorized disclosure of classified information could cause to the national security of the United States. More broadly, as both a member of the United States Armed Forces and a clearance holder, the defendant took an oath to defend the United States and to protect its secrets—secrets that are vital to U.S. national security and the physical safety of Americans serving overseas.

Teixeira violated his oath, almost every day, for over a year. The defendant's repeated criminal conduct—in complete disregard of his oath, trainings, signed agreements, and admonitions to cease and desist reviewing classified information unrelated to his duties—was a profound breach of trust that had enormous consequences.

As more fully described in the Government's classified sentencing submission, the documents and information Teixeira posted to social media are highly classified and contain vital national defense information. By posting intelligence products on the social media platform Discord to feed his own ego and impress his anonymous friends, Teixeira caused exceptionally grave damage to the national security of the United States. The scope of his betrayal is breathtaking. The amount of damage he caused is immeasurable.

For the reasons discussed herein, and in the Government's classified submission, the Court should accept the plea agreement pursuant to Rule 11(c)(1)(C) and sentence Teixeira to 200 months imprisonment.

PROCEDURAL BACKGROUND

Teixeira was arrested by the Federal Bureau of Investigation on April 13, 2023, and, the next day, was charged by complaint with violating 18 U.S.C. § 793. In May 2023, a grand jury returned an indictment charging Teixeira with six counts of willfully retaining and transmitting national defense information ("NDI"), in violation of 18 U.S.C. § 793. (Doc. No. 48). On February 28, 2024, the parties executed a plea agreement pursuant to Rule 11(c)(1)(C) ("the Plea Agreement") in which the parties agreed that the appropriate sentence for the defendant's crimes was between 132-200 months imprisonment and three years of supervised release. (Doc. No. 130). On March 4, 2024, Teixeira entered a guilty plea to each of the six counts charged in the indictment. (Doc. No. 131). Pursuant to Federal Rule of Criminal Procedure 11(c)(3)(A), the Court deferred acceptance of the plea agreement pending preparation of a written Presentence Report ("PSR").

*Offense Conduct*

Teixeira enlisted with the United States Air National Guard in September 2019. Until his arrest in 2023, he served with the 102d Intelligence Wing as a Cyber Defense Operations Journeyman. His primary duty was to troubleshoot the classified workstations that his fellow airmen used to complete the intelligence mission of the 102d. Because this duty would necessitate exposure to classified information, Teixeira was granted a Top Secret security clearance with Sensitive Compartmented Information access. Information may be classified as Top Secret ("TS") if the unauthorized disclosure of the information reasonably could be expected to cause exceptionally grave damage to the national security. Sensitive Compartmented Information ("SCI") is even further restricted classified information related to intelligence sources, methods, and analytical processes that is subject to specific access controls.

Teixeira received extensive training on the handling of classified information, the damage disclosure of the information could cause, and the criminal penalties he could face for willfully transmitting national defense information. In his SCI indoctrination memoranda, which Teixeira signed in July 2021, Teixeira acknowledged the following: "I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the U.S. or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it." In March 2022, just after he began disclosing classified information on Discord, Teixeira completed a refresher course on the "Unauthorized Disclosure of Classified Information and Controlled Unclassified Information." Certificate of Completion – Unauthorized Disclosure of Classified Information and Controlled Unclassified Information (Exhibit 3), Doc. No. 143-3. During that course, he was again advised that divulging classified information "places our troops, our intelligence operations, and our technological advantages over our foes at risk." Student Guide – Unauthorized Disclosure of Classified Information and Controlled Unclassified Information (Exhibit 4), Doc. No. 143-4 at 1. In other words, Teixeira was trained, and retrained, about the danger of disclosing TS//SCI information. But Teixeira placed his own interests over those of the troops and the intelligence operations he was supposed to support.

Despite his training and in violation of the many non-disclosure agreements he had signed, in January 2022 Teixeira began removing classified information from the Sensitive Compartmented Information Facility ("SCIF") at Otis Air National Guard Base and posting it on Discord. Teixeira accomplished this in one of two ways. First, Teixeira manually transcribed portions of classified documents and removed those transcriptions from the SCIF without authorization. Teixeira then posted the classified text in a Discord chat room. Second, Teixeira

printed hundreds of documents containing classified information using an isolated and seldom-used printer inside the SCIF, removed the documents from the SCIF without authorization, and posted images of the documents on Discord.

Teixeira fully understood that his actions were unlawful. As set forth in the PSR—and as he learned over the course of multiple trainings—Teixeira knew he was violating federal law when he posted classified national defense information on Discord. PSR ¶ 27. Teixeira's own contemporaneous statements also clearly establish that he understood the significant consequences he would—and should—face if caught. On March 15, 2022, an associate of Teixeira asked if he could post information regarding troop losses. Teixeira responded, "If I want to go to jail for the rest of my life yeah." Teixeira noted that the documents would be "TS//NOFORN//FVEY."[1] Someone else in the chat noted that even though he/she knew someone in the intelligence community he/she would not ask that person for information because "they sworn [sic] an oath to keep top secret stuff secret lol." Teixeira responded, "Not an oath, an NDA . . . The oath is *just* the defense of America against all threats and the following of orders." (emphasis added). Teixeira clarified, "Look I feed info almost verbatim from where I read stuff, so to me that gives me ambiguity. Leaking docs tho? That's just me asking to be caught. Again Chelsea Manning[2] is the perfect example." Declaration of FBI Special Agent Luke Church (Exhibit 2), Doc. No. 143-2 at 2. Almost a year later, while still disclosing classified information, Teixeira continued to brag

---

[1] "TS" stands for Top Secret. "NOFORN" stands for not releasable in any form to foreign governments, foreign nationals, foreign organizations, or non-U.S. citizens. "FVEY" means that the information would be releasable to one of the U.S. Government's "Five Eyes" partners, which includes the United Kingdom, Canada, Australia, and New Zealand.

[2] Chelsea Manning served as an intelligence analyst in the U.S. Army. In 2010, she unlawfully disclosed thousands of classified documents which were later publicly released. Manning was ultimately court-martialed and convicted of multiple charges, including multiple violations of the Espionage Act.

about his access to sensitive national defense information. In one such conversation on January 4, 2023, another Discord user told Teixeira, "Maybe you should start a blog, that way you have an organized place to post it all." Teixeira responded, "shooting myself in the back of the head twice isn't something im fond of. None of this is public information and making a blog would be the equivalent of what Chelsea manning did." The user responded, "Better be careful then." Teixeira responded, "I am." Declaration of FBI Special Agent Luke Church, Doc. No. 34-1 at 4.

When Teixeira's conduct was discovered and became a national news story, he blatantly obstructed justice in multiple ways in an attempt to avoid apprehension. Teixeira instructed associates on Discord to delete electronic evidence and not cooperate with law enforcement. Teixeira changed his Discord username and deleted the entire contents of at least one of the Discord servers where he had posted classified documents and information. Teixeira also destroyed his iPad and other electronic devices, and subsequently discarded some of these electronic devices in a dumpster outside his home.

Because of the sensitivities of the specific harms to national security, the full scope and impacts of Teixeira's criminal conduct are more fully described and quantified in the Government's classified sentencing memorandum. However, some of the harm caused by Teixeira's conduct that can be discussed publicly is described in the attached declaration of Frank Kendall III. Mr. Kendall is the current Secretary of the United States Air Force. With respect to the scope of the information, according to Secretary Kendall, Teixeira's disclosures related to multiple categories of classified information described in Executive Order 13526, which describes classified information, "including military plans, foreign government information, intelligence activities, sources and methods, foreign relations, and vulnerabilities and capabilities of systems." Declaration of Hon. Frank Kendall, 26th Secretary of the Air Force (Exhibit 1), Doc. No. 143-1 at

2. He also discussed—to the extent possible in an unclassified document—the impact of the defendant's crime. Secretary Kendall stated that the damage caused by Teixeira's leaks was "immediate and enduring." *Id*. Indeed, according to Secretary Kendall, the harms from the defendant's disclosures "will continue to impact the U.S. national security not just for weeks and years, but for decades to come." *Id*. at 3.

*The Pre-Sentence Report*

The probation office has prepared a PSR which tracks the calculation of the sentencing guidelines set forth in the Plea Agreement. The applicable guideline is USSG § 2M3.2. The base offense level is 35, because the information and documents that Teixeira disclosed were Top Secret. USSG § 2M3.2(a). Teixeira received a two-level role enhancement because he abused a position of public trust to facilitate the offense—that is, he committed the offenses by abusing his Top Secret clearance and unlawfully leveraging his ability to access classified computer systems. USSG § 3B1.3. Teixeira also received an additional two-level enhancement for obstruction of justice because he instructed others to delete their online conversations with him and he, himself, destroyed evidence. USSG § 3C1.1. Teixeira has no criminal record and, thus, received a two-level reduction as a "zero-point" offender. Teixeira is also entitled to a three-level reduction for acceptance of responsibility. USSG § 3E1.1. With a total offense level of 34 and a criminal history category of I, the applicable guideline sentencing range is 151-188 months imprisonment.

RECOMMENDATION

Teixeira is responsible for engaging in one of the most significant leaks of classified documents and information in United States history, which resulted in "exceptionally grave and long-lasting damage to the national security of the United States." Doc. No. 143-1 at 1. The parties and probation agree that the advisory guidelines sentencing range is 151-188 months

6

imprisonment. And yet, that range does not capture the significance and severity of Teixeira's criminal conduct. Indeed, if the offense conduct was limited to Count One of the Indictment, that is, a single instance of transmitting Top Secret National Defense Information, there would be no change to the guidelines sentencing range because the applicable guideline does not account for the quantity of Top Secret information unlawfully disclosed. But Teixeira's criminal conduct goes far beyond the six unlawful disclosures charged in the Indictment.

After *United States v. Booker*, the sentencing guidelines are advisory; they provide the starting point for the Court's reference. Ultimately, the Court must determine a sentence that is sufficient but not greater than necessary to satisfy the statutory purposes of sentencing. Here, a guideline sentence is insufficient to meet those purposes. The guidelines do not adequately capture the seriousness of Teixeira's conduct or the harm he caused to national security.

*The Nature and Circumstances of the Offense*

The nature of the offense is extraordinarily serious. Teixeira's violations of the Espionage Act consisted of not only removing and retaining classified information but also purposefully and profligately transmitting that classified national defense information to others, including foreign nationals. This conduct is far more significant than retention alone. While unauthorized retention results in an unacceptable risk that national defense information will be released to strangers and adversaries, transmission offenses like the defendant's ensure that it will. *See United States v. Ford*, 288 F. App'x 54, 61 (4th Cir. 2008) (affirming sentencing where court recognized that the active transmission of classified national defense information should be punished more harshly than retention).

Further, considering the nature of the information and where he posted it (to the Internet), Teixeira acted "with reason to believe [such information] could be used to the injury of the United

7

States or to the advantage of any foreign nation." 18 U.S.C. § 793(e). Understanding the risks associated with posting classified information to the Internet hardly requires any training. But as discussed above, the defendant's trainings and signed agreements reflect his express awareness that he was not permitted to disclose classified information and that such information could harm the United States. One such agreement specifically addressed social media use. That agreement, which the defendant signed just six months before he started posting classified information to Discord, stated, "I **will not** post sensitive systems, intelligence, or other non-public information from JWICS to **ANY** social media site which would allow unauthorized entities to obtain information that I am not authorized to disseminate that can possibly be exploited." Doc. No. 86-4 at 4. Yet, time and again, the defendant "repeatedly and egregiously" violated his signed agreements and disregarded the potential harm that could result from his actions. Doc. No. 143-1 at 2.

The specific nature of that harm—as discussed in greater detail in the Government's classified submission—is also significant and warrants a substantial sentence. As just one example, in January 2023, Teixeira posted information concerning "the provision of equipment to Ukraine, how the equipment would be transferred, and how it would be used upon receipt." Indictment ¶ 16. Teixeira posted that information in the midst of Russia's war against Ukraine. According to Secretary Kendall, in so doing, Teixeira exposed intelligence that "put the lives of allies and partners at risk to potential adversary attack." Doc. No. 143-1 at 4. That risk of harm resulted from the disclosure of the national defense information charged in Count Two alone. In the aggregate, the defendant's criminal conduct over the course of more than a year "critically and negatively impacted" the Department of Defense's mission, endangered his fellow soldiers, other citizens, and allied governments throughout the world. *Id*.

The circumstances of the offense also support the Government's recommendation. Teixeira systematically and methodically stole classified national defense information and posted it on Discord to satisfy his own ego—even after multiple warnings that could and should have caused him to stop. Teixeira was admonished on three separate occasions by his superiors to cease and desist viewing classified information unrelated to his duties. Teixeira was undeterred. Members of Teixeira's own online community repeatedly warned him of the dangers associated with leaking the information. Yet Teixeira was again undeterred. His criminal conduct was not the result of a momentary lapse of judgment. It was not a crime of opportunity. Rather, for nearly fourteen months the defendant spent his time at work meticulously collecting and preparing to disseminate Top Secret information and documents. He lived a life of deception that was designed to obfuscate his daily betrayal of the oath he took and the promises he made to the United States. The defendant did all this knowing full well that it was illegal, that it was harmful to the United States, and that the information could and would likely be used to benefit foreign adversaries.

But the defendant's deception did not stop there. Once the defendant knew he would be caught, he took steps to conceal his disclosures by deleting evidence and encouraging others to do the same. For example, Teixeira told another user that "[i]f anyone comes looking, don't tell them shit," told him to "delete all messages," and to pass the message on to other users. Doc. No. 19-8 at 6. Meanwhile, the defendant destroyed his electronics, including his desktop computer and iPad, the latter of which was found smashed in a dumpster outside of his home. Notwithstanding his efforts, Teixeira could not delete all evidence of his unlawful disclosures of classified information, especially as images of classified information foreseeably became widely distributed around the globe.

*The History and Characteristics of the Defendant*

The defendant's personal history and characteristics support the Government's recommendation. The defendant is a high-school graduate with no criminal history and no history of substance abuse. Unlike many defendants who appear before this Court, he comes from a supportive family. At the time of his arrest, he was enrolled in college, and he held a full-time job in a complex field that required him to maintain a Top Secret security clearance. Simply put, prior to this case, the defendant was on his way to a successful career and life.

In an attempt give "context" to Teixeira's conduct, he hired a specialist in Autism Spectrum Disorder ("ASD") for the purpose of assessing whether the defendant has ASD. Dr. Elizabeth Roberts prepared and submitted a report of her findings, some of which were incorporated into the PSR. Given her specialty and the timing of her assessment it is unsurprising that Dr. Roberts reached the conclusion she was hired to reach. But for reasons that are perhaps obvious, a post-arrest diagnosis of mild, high-functioning ASD is of questionable relevance in these proceedings, and the Court should review Dr. Roberts's report and conclusions with a critical eye. *See United States v. Zuk*, 874 F.3d 398, 410 (4th Cir. 2017) (reversing sentence as substantively unreasonable where district court based substantial downward variance on post-arrest ASD diagnosis). The reliability and utility of Dr. Roberts's findings are even more suspect considering Teixeira has had multiple psychological assessments throughout his life prior to this case, none of which resulted in a diagnosis of ASD.

But even taken at face value, Dr. Roberts's report provides little insight regarding the factors that are material to sentencing. A diagnosis of autism plainly does not change the nature of the offense, absolve Teixeira of responsibility for his criminal conduct, or even mitigate his conduct in any meaningful way. Whatever developmental or social difficulties Teixeira may have

10

experienced, his decision to illegally disclose national defense information and put the lives of other people at risk was a volitional choice that he made knowingly, willfully, and with full awareness of the consequences time and time again.  Indeed, in December 2022, Teixeira acknowledged, "I'm breaking a ton of UD [unauthorized disclosure] regs.  IDGAF [I don't give a fuck] what they say I can or can't share.  All of the shit I've told you guys I'm not supposed to."  Doc. No. 34-1 at 4.

Moreover, the defendant does not suffer from an intellectual disability that prevents him from knowing right from wrong.  Indeed, Dr. Roberts conceded the defendant had the ability to easily "think in abstract terms," and had a "clear understanding of both the wrongfulness and illegality of his behavior."  In other words, the defendant had the ability to understand and indeed, understood, the wrongfulness of his behavior.  A *post hoc* diagnosis of autism neither excuses nor mitigates the defendant's actions.  And without more, the bare diagnosis of ASD is simply not relevant and should be disregarded.  *See United States v. Lucarell*, 2023 WL 3756191 (6th Cir. 2023) (affirming thirty-year sentence despite autism diagnosis because "based on the evidence before the district court, there was nothing specific about autism that causes people to commit crimes and the vast majority of individuals with [autism] do not commit crimes.") (cleaned up).

Dr. Roberts's report is also notable for what it does *not* say.  While Dr. Roberts recognizes Teixeira's "strict moral code," she ignores completely his unsettling attraction to violence and his history of racist and antisemitic remarks.  Virtually every day, Teixeira discussed committing horrific acts of violence with his friends:  bombing schools, conducting assassinations, supporting ISIS, and "culling the weak minded."  Doc. No. 19-8.  This history—which is laid out in the Government's exhibits submitted in support of pretrial detention, Judge Hennessey's detention

order, and this Court's opinion affirming that order—says far more about who the defendant is than Dr. Roberts' eleventh-hour diagnosis.

*The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

An above-guidelines sentence is necessary to provide just punishment and appropriately reflect the seriousness of the offense. As the Supreme Court has noted, "[i]t is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981) (citations omitted). The Government is limited in what it can say in an unclassified setting regarding the seriousness of the defendant's offense. However, the Government's classified submission and the multiple classified declarations from other U.S. Government agencies set out in detail the harms that have already occurred and the harm that the United States will continue to endure as a consequence of the defendant's actions. But at an unclassified level, the Government can confirm that the defendant caused enduring and exceptionally grave damage to the U.S. national security.

When he was granted a security clearance, Teixeira was entrusted to protect intelligence that contributed to the safety and security of the nation. As explained by Secretary Kendall, when the defendant joined the USANG, he took an oath to defend the Constitution against "all enemies, foreign and domestic." Doc. No. 143-1 at 4. However, through his actions, the defendant did not defend the Constitution or the country. He instead allowed the United States's most significant adversaries to have access to a trove of the country's most closely guarded intelligence, the disclosure of which "critically and negatively impacted the Department's mission success and the U.S. national security." *Id*.

Although other examples are provided in the Government's classified submission, with respect to the documents charged in the Indictment, the seriousness of the offense is abundantly

12

clear in Count Four.  The document that was charged in Count Four was a Top Secret document containing Sensitive Compartmented Information that "discussed a plot by a foreign adversary to target United States forces abroad and discussed, in part, where and how to the attack on United States forces would occur."  PSR ¶ 25.  Even at an unclassified level, the harm from disclosing that the U.S. had intelligence on an adversary's plans to harm U.S. servicemembers should be apparent.  Indeed, according to Secretary Kendall, Teixeira's disclosure of that document alone negatively "impacts [the DoD's] ability to protect other military forces by providing our adversaries insight into the sources and methods we use to inform our protection of those forces."  Doc. No. 143-1 at 2.  When combined with the full scope of the defendant's conduct, that negative impact multiplies exponentially.

The sentencing guidelines recognize that an accurately calculated advisory guidelines range may be insufficient in a case such as this.  Specifically, U.S.S.G. § 5K2.14 provides that an upward departure is appropriate if national security was significantly endangered.  As discussed in Secretary Kendall's declaration, and the multiple classified declarations appended to the Government's classified submission, that is exactly what Teixeira did—he significantly endangered national security.  The sentence imposed should accurately reflect the damage he caused.

*The Need to Avoid Unwarranted Sentencing Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct*

Teixeira is one of the most prolific leakers of classified national defense information in the history of this country.  Indeed, Teixeira's conduct is so rare that comparison to other criminal defendants using Judicial Sentencing Information ("JSIN") data is impossible.  PSR ¶ 104.

Looking at cases under the Espionage Act more generally, the Government's recommended sentence appropriately measures Teixeira's culpability.  The defendant's case is

most closely analogous to that of former Central Intelligence Agency ("CIA") employee Joshua Schulte, who was recently sentenced to 480 months' imprisonment, 400 of which concerned violations of the Espionage Act and related offenses. Schulte was charged in connection with his theft of an arsenal of intelligence-gathering cyber tools from the CIA and dissemination of that information to WikiLeaks. As was the case here, once transmitted to WikiLeaks, the information was made available across the Internet, including to each of America's adversaries. Like the defendant, Schulte was a young man at the time of his crimes. Like the defendant, Schulte had signed multiple non-disclosure agreements, had taken multiple trainings, and knew that his conduct was unlawful. And like the defendant, Schulte's own hubris and ego led him to disregard those trainings and unlawfully transmit a trove of classified information to be published on the Internet. Like Schulte's sentence, the defendant's sentence should reflect the seriousness of his crime.

The nature of Teixeira's conduct is also more serious than many cases that are prosecuted under 18 U.S.C. §793(e) where individuals retain, but do not transmit, national defense information. For example, in *United States v. Edward McLean*, 3:22-cr-00115-TJC (M.D. Fl.), authorities found a flash drive in McLean's residence that contained approximately 150 documents containing national defense information classified at the Secret level, and 50 documents containing national defense information classified as Confidential. McLean received the statutory maximum sentence under 18 U.S.C. § 793(e)—120 months—for his retention of documents classified at the Secret and Confidential levels.[3] *See also United States v. Christopher Glenn*, 9:14-cr-80031-KAM (S.D. Fla.) (imposing statutory maximum sentence of 120 months pursuant to 18 U.S.C. § 793(e)

---

[3] McLean was also sentenced to 160 months for distributing child sexual abuse material. His sentences are running concurrently.

where defendant pleaded guilty to removing national defense information classified at the Secret level from a Department of Defense network and storing those documents on removable media in his home).[4]  Similarly, in *United States v. Harold Martin*, 17-cr-00069-MJG (D. Md) a former contractor with the NSA was charged with unlawfully retaining a large amount of Top Secret information.  Martin was sentenced to 108 months imprisonment.

The scope of Teixeira's conduct distinguishes him from other individuals prosecuted under 18 U.S.C. § 793 that both retained and transmitted national defense information.  For example, in *United States v. Reality Winner*, 17-cr-034 (JRH) (S.D. Ga.) the defendant printed and mailed to a media outlet a single intelligence report.  Winner was sentenced to 63 months imprisonment.  Here, as discussed above and in the Government's classified submission, the defendant's conduct far exceeds a single intelligence report.

Functionally, the consequences of Teixeira's actions are much more akin to 18 U.S.C. § 794, which prohibits the delivery of national defense information to a foreign government with the specific intent to harm the United States or aid a foreign power or reason to believe it would do so.  For example, in *United States v. Jareh Dalke*, 22-cr-313 (D. Co.), a former NSA employee attempted to provide Top Secret information to an individual he believed was a Russian agent.  Dalke was sentenced to 262 months' imprisonment.

Teixeira may not have had the specific intent to harm the United States—although, as discussed above, he *knew* his unlawful disclosure of the classified information would likely harm the United States—but in light of the *scope* of his conduct, the harm he caused is comparable to the harms caused by those who violate 18 U.S.C. § 794.  When Teixeira sent national defense

---

[4] Glenn was subsequently sentenced to life in prison after a federal jury convicted him of sexually exploiting and trafficking in minors, while working overseas.

15

information to hundreds of individuals on Discord, including foreign nationals, the defendant knowingly exposed U.S. secrets in a manner that he knew could—and did—proliferate. And through his actions, the defendant ultimately provided national defense information to our allies and adversaries across the world. This is not speculation; Teixeira discovered that his disclosures were circulating when a friend saw them on pro-Russian telegram. Doc. No. 19-8 at 5. Seen against the backdrop of other prosecutions under the Espionage Act, the Government's recommendation is balanced in light of Teixeira's conduct and does not create unwarranted sentencing disparity.

*The Need to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant*

A 200-month sentence, as set forth in the plea agreement will provide adequate deterrence as to Teixeira and provide a reasonable amount of protection from future criminal activity. But the Court is also obligated to consider the issue of general deterrence, which is particularly important as applied to convictions under the Espionage Act. Here again, a sentence within the guidelines is insufficient in light of the magnitude of Teixeira's actions. Trust is essential to the effective functioning of the Intelligence Community. There must be significant consequences when that trust is breached. Especially in an era of social media where the Government's secrets can be shared around the world with the click of a mouse, the Court's sentence must send a message that reinforces the importance of faithfully honoring promises to safeguard the secrets of our nation.

CONCLUSION

The government recommends that the Court sentence Teixeira to 200 months of incarceration.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:  /s/ Jared C. Dolan
NADINE PELLEGRINI
JARED C. DOLAN
JASON CASEY
Assistant United States Attorneys

MATTHEW G. OLSEN
Assistant Attorney General

/s/ Christina A. Clark
CHRISTINA A. CLARK
Trial Attorney
National Security Division

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

/s/ Jared C. Dolan
JARED C. DOLAN
Assistant United States Attorney

Date: October 29, 2024